# A

THE AMERICAN INSTITUTE OF ARCHITECTS

Bond No. 999900

AIA Document A312

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Noresco, LLC
One Research Drive, Suite 400C
Westborough, MA 01581

SURETY (Name and Principal Place of Business):
Lumbermens Mutual Casualty Company
1 Kemper Drive
Long Grove, IL 60049-0001

OWNER (Name and Address):
Rhode Island Department of Mental Health, Retardation and Hospitals
600 New London Avenue
Cranston, RI 02920-3041

CONSTRUCTION CONTRACT
Date: May 1,2001
Amount: Twenty-Seven Million Five Hundred Fifty Thousand Nine Hundred Nineteen and 00/100 ($27,550,919.00)
Description (Name and Location): Howard Center Cogeneration Project - Design and Construction Agreement, Cranston, RI

BOND
Date (Not earlier than Construction Contract Date): May 1,2001
Amount: Twenty-Seven Million Five Hundred Fifty Thousand Nine Hundred Nineteen and 00/100 ($27,550,919.00)
Modifications to this Bond: ☒ None ☐ See Page 6

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
Noresco, LLC
Signature: *[signature]*
Name and Title: Michael J. Provenc...
Senior Vice Pr...
(Any additional signatures appear on page 6)

SURETY
Company: (Corporate Seal)
Lumbermens Mutual Casualty Company
Signature: *[signature]*
Name and Title: Leslie L. Rudat, Attorney-in-Fact

(FOR INFORMATION ONLY—Name, Address and Telephone)
AGENT or BROKER:
Marsh USA Inc.
Six PPG Place, Suite 300
Pittsburgh, PA 15222
(412) 552-5000

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: ______________________ | | Signature: ______________________ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

KEMPER

Home Office: Long Grove, IL 60049

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, corporations organized and existing under the laws of the State of Illinois, having their principal office in Long Grove, Illinois, (hereinafter collectively referred to as the "Company") do hereby appoint

Nancy M. Kunold, Karen L. Jansen, Christine A. Hartung, Pamela L. Nunez, Leslie L. Rudat, Elena Zunic, Marjorie A. Altemus and Elizabeth Hertzberg of Pittsburgh, Pennsylvania (EACH)******************************

their true and lawful agent(s) and attorney(s)-in-fact, to make, execute, seal, and deliver during the period beginning with the date of issuance of this power and ending on the date specified below, unless sooner revoked for and on its behalf as surety, and as their act and deed:

Any and all bonds and undertakings ****************

EXCEPTION: NO AUTHORITY is granted to make, execute, seal and deliver any bond or undertaking which guarantees the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

This appointment may be revoked at any time by the Company.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal office in Long Grove, Illinois.

This Power of Attorney is executed by authority of resolutions adopted by the Executive Committees of the Boards of Directors of the Company on February 23, 1988 at Chicago, Illinois, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the Executive Committee of the Boards of Directors of the Company at a meeting duly called and held on the 23rd day of February, 1988:

"VOTED, That the signature of the Chairman of the Board, the President, any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to resolution adopted by the Executive Committee of the Board of Directors on February 23, 1988 and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company."

In Testimony Whereof, the Company has caused this instrument to be signed and their corporate seals to be affixed by their authorized officers, this August 10, 1999.

Attested and Certified:

Lumbermens Mutual Casualty Company
American Motorists Insurance Company
American Manufacturers Mutual Insurance Company

Robert P. Hames, Secretary

by

J. S. Kemper, III, Exec. Vice President

SEP-10-02 TUE 14:47 RI ADM DIV OF PURCHASING FAX NO. 4012226387 P.03/11

STATE OF ILLINOIS } ss
COUNTY OF LAKE

I, Irene Klewer, a Notary Public, do hereby certify that J. S. Kemper, III and Robert P. Hames personally known to me to be the same persons whose names are respectively as Exec. Vice President and Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, Corporations organized and existing under the laws of the State of Illinois, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seals and delivered the said instrument as the free and voluntary act of said corporations and as their own free and voluntary acts for the uses and purposes therein set forth.

"OFFICIAL SEAL"
Irene Klewer
Notary Public, State of Illinois
My Commission Expires Jan. 28, 2002

My commission expires 1-28-02

Irene Klewer, Notary Public

CERTIFICATION

I, J.K. Conway, Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, do hereby certify that the attached Power of Attorney dated August 10, 1999 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said J. S. Kemper, III and Robert P. Hames, who executed the Power of Attorney as Executive Vice President and Secretary respectively were on the date of the execution of the attached Power of Attorney the duly elected Executive Vice President and Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company on this

May 1, 2001

J. K. Conway, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

FK 0362 6-96
Power of Attorney - Term

Printed in U.S.A.

SEP-10-02 TUE 14:48 RI ADM DIV OF PURCHASING FAX NO. 4012228387 P.04/11