**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ADP MARSHALL, INC., a Division of Fluor NE, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendants. | C.A. No. 07-129-ML |

**DEFENDANTS NORESCO, LLC AND LUMBERMENS MUTUAL CASUALTY COMPANY'S FIRST AMENDED COUNTERCLAIMS AGAINST ADP MARSHALL, INC.**

Defendants, NORESCO, LLC and Lumbermens Mutual Casualty Company (collectively "Defendants"), hereby assert the following amended counterclaims against the Plaintiff, ADP Marshall, Inc.:

**PARTIES**

1. ADP Marshall, Inc., a division of Fluor NE, Inc. ("ADPM"), is an Arizona corporation authorized to do business in the State of Rhode Island, with a principal place of business in Pawtucket, Rhode Island.

2. NORESCO, LLC ("NORESCO") is a Delaware limited liability company authorized to do business in the State of Rhode Island.

3. Lumbermens Mutual Casualty Company ("Lumbermens") is an Illinois surety company authorized to do business in Rhode Island.

## FACTS

**Prime Contract between NORESCO and the State of Rhode Island**

4. On or about September 25, 2000, NORESCO entered into an agreement with the State of Rhode Island (the "State"), Department of Mental Health, Retardation and Hospitals (the "Prime Contract") to, *inter alia*, perform certain construction work with respect to the energy cogeneration facility at the Pastore Centre in Cranston, Rhode Island (the "Facility").

5. Lumbermens issued Payment Bond number 99900 with respect to the Facility. See Exhibit A hereto.

6. The Payment Bond listed NORESCO as principal and Rhode Island Department of Mental Health, Retardation and Hospitals as oblige.

7. In submitting its bid to the State for the Prime Contract, NORESCO dealt exclusively with ADPM and relied upon ADPM to estimate the construction cost of the Facility. Upon information and belief, NORESCO's bid for the Prime Contract was accepted based upon the estimate developed by ADPM.

8. After NORESCO's bid had been submitted to the State, ADPM informed NORESCO that its cost of labor increased, and, as a result, ADPM's cost estimate would not provide sufficient funds for the Facility's construction.

9. As a result of the increase in ADPM's labor costs, ADPM resolved with NORESCO to "value engineer" the Facility so that it could be completed for the bid amount.

**Subcontract between ADPM and NORESCO**

10. Notwithstanding the fact that design documents were not yet complete, on or about March 22, 2002, ADPM and NORESCO executed an agreement which governed

ADPM's work on the Facility as general contractor (the "Subcontract"). See Exhibit B hereto.

11. ADPM materially breached various terms and conditions of the Subcontract, including, but not limited to:

a. failing to appoint well qualified, experienced personnel to perform work on the Facility;

b. repeatedly removing or replacing project managers without notice and approval from NORESCO;

c. failing to properly supervise ADPM's employees and subcontractors;

d. failing to obtain a certificate of occupancy for the Facility;

e. failing to minimize interference with the State's operations during construction;

f. failing to provide NORESCO with accurate and timely project schedules and progress reports;

g. failing to identify significant subcontractors to NORESCO in advance;

h. failing to make all subcontracts consistent with and subject to the terms of the Subcontract;

i. failing to observe safe work practices and, in doing so, jeopardizing the safety of other contractors and State employees at the site;

j. failing to produce "as built" drawings to NORESCO;

k. failing to timely achieve Mechanical Readiness and Readiness for Testing;

l. failing to complete the Facility;

m. failing to pay ADPM's subcontractors in accordance with the terms and conditions of the subcontracts between them;

n. failing to indemnify NORESCO from claims brought by ADPM subcontractors, as required by the Subcontract; and,

o. failing to comply with the requirements of Section 6.1.1 of the Subcontract.

12. As a direct consequence of ADPM's breach of the Subcontract, NORESCO and Lumbermens suffered significant damages.

**ADPM Payment and Performance Bonds**

13. Pursuant to the Subcontract, ADPM procured Payment and Performance Bonds from St. Paul and Fidelity (number 400SP8413-02/8642263), which listed ADPM as principal and NORESCO as obligee ("ADPM Bonds"). See Exhibit C hereto.

14. In the Payment Bond, ADPM agreed to pay for all labor materials and equipment furnished for use in the performance of the Facility and agreed to indemnify NORESCO and hold NORESCO harmless from claims, demands, liens or suits by any person or entity making a claim for payment for labor, materials and equipment furnished for use in the performance of the construction of the Facility.

15. In connection with construction of the Facility, ADPM subcontracted the performance of certain of its responsibilities under the Subcontract to various entities, including, but not limited to, Weststar Associates, Inc., R.P. Iannuccillo & Sons Construction Company, Northeast Steel Corporation, Inc., Process Construction Management, Inc., D'Ambra Construction Company, Inc., Hydrochem Industrial Services, Inc., Arden Engineering Constructors, LLC, Unique Metal Works, Inc. and Atlantic Contracting Specialties, LLC (collectively the "Subcontractors").

16. Upon information and belief, ADPM refused to pay the Subcontractors for labor, materials or equipment furnished by them for use in the performance of the construction of the Facility.

17. As a result, the Subcontractors sued NORESCO and/or Lumbermens in Providence Superior Court for payment for labor, materials or equipment furnished by them for use in the performance of the construction of the Facility.

18. NORESCO demanded that ADPM indemnify NORESCO and hold NORESCO harmless from the Subcontractors' claims.

19. ADPM refused to honor its contractual obligation to indemnify NORESCO and hold NORESCO harmless from the Subcontractors' claims.

20. As a result of ADPM's refusal to honor their obligations under the ADPM Bonds, NORESCO and Lumbermens incurred significant fees and expenses in connection with the defense and resolution of the majority of the Subcontractors' claims, including, but not limited to, the payment of approximately $774,000 in settlement of all but one of the Subcontractors' claims.

**COUNT I – BREACH OF CONTRACT**
**(Breach of the Subcontract)**

21. NORESCO and Lumbermens hereby repeat and incorporate by reference Paragraphs 1 through 20 above.

22. ADPM materially breached the Subcontract between it and NORESCO in regards to the construction of the Facility.

23. As a result of ADPM's breach, NORESCO and Lumbermens suffered and continue to suffer damages.

WHEREFORE, NORESCO and Lumbermens demand judgment in their favor against ADPM in an amount to be proven at trial, plus costs, interest, and reasonable attorney's fees.

**COUNT II – BREACH OF CONTRACT**
**(ADPM Payment Bond)**

24. NORESCO and Lumbermens hereby repeat and incorporate by reference Paragraphs 1 through 23 above.

25. In the ADPM Bonds, ADPM agreed to pay for all labor materials and equipment furnished for use in the performance of the Facility and agreed to indemnify NORESCO and hold NORESCO harmless from claims, demands, liens or suits by any person or entity making a claim for payment for labor, materials and equipment furnished for use in the performance of the construction of the Facility.

26. The Subcontractors sued NORESCO and/or Lumbermens in Providence Superior Court for payment for labor, materials or equipment furnished by them for use in the performance of the construction of the Facility.

27. NORESCO and Lumbermens have fulfilled all legal conditions precedent under the ADP Bonds to make a proper demand that ADPM indemnify NORESCO and hold it harmless regarding the Subcontractors' claims.

28. ADPM failed and refused to honor ADPM's contractual obligations to indemnify NORESCO and hold it harmless with respect to the Subcontractors' claims.

29. As a result of ADPM's failure and refusal to honor their contractual obligations, NORESCO and Lumbermens have suffered damages in an amount to be determined at trial.

WHEREFORE, NORESCO and Lumbermens demand judgment in their favor against ADPM in an amount to be proven at trial, plus costs, interest, and reasonable attorney's fees.

## COUNT III – ATTORNEYS' FEES

30. NORESCO and Lumbermens hereby repeat and incorporate by reference Paragraphs 1 through 29 above.

31. There is no justifiable dispute in either law or fact which excuses ADPM's material breach of the Subcontract or failure to fulfill its obligations under the ADPM Bonds.

WHEREFORE, NORESCO and Lumbermens demand that they be awarded their reasonable attorney's fees pursuant to R.I.G.L. § 9-1-45.

## COUNT IV – SPECIFIC PERFORMANCE

32. NORESCO and Lumbermens hereby repeat and incorporate by reference Paragraphs 1 through 31 above.

33. ADPM breached § 3.4 of the Subcontract by failing to secure and submit to NORESCO all required approvals and certificates for the Facility.

34. ADPM breached § 3.32 of the Subcontract by failing to provide complete record drawings ("as-built drawings") of the Facility to NORESCO.

35. ADPM breached § 3.33 of the Subcontract by failing to provide to NORESCO full sets of operational and maintenance manuals and equipment warranty information for the equipment installed in the Facility.

36. The Facility cannot be fully completed until ADPM remedies the breaches set forth above.

37. NORESCO cannot fulfill its obligations to the State under the Prime Contract absent ADPM's specific performance of its obligations under the Subcontract.

38. Money damages would not adequately remedy ADPM's breaches.

39. The terms of the Subcontract unambiguously require ADPM to perform as set forth below.

38. Failure to order specific performance by ADPM would cause unreasonable hardship to NORESCO.

WHEREFORE, NORESCO and Lumbermens demand that ADPM be ordered to specifically perform under the Subcontract by securing and providing to NORESCO forthwith the following:

a) Reproducible as-built drawings for all areas and aspects of the Facility, including, but not limited to the electrical distribution system, electrical termination details for panel board schedules, motor control center and switchboard, any and all underground of subsurface work location and elevation;

b) A certificate of inspection and approval by a professional engineer for the CECO-brand building structure;

c) A certificate of inspection and approval by the Fire Marshall for the Facility's fire alarm system;

d) A complete set of operational and maintenance manuals and equipment warranty information for all equipment at the Facility; and,

e) A valid Certificate of Occupancy for the Facility.

Date: June 18, 2007

**NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,**

By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
Brian J. Lamoureux (#6211)
**BROWN RUDNICK BERLACK ISRAELS LLP**
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

*Of Counsel:*

Cheryl B. Pinarchick
**BROWN RUDNICK BERLACK ISRAELS LLP**
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 Fax

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Andrew J. Tine, Esq.
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Fl.
Bristol, RI 02809

/s/ Brian J. Lamoureux
Brian J. Lamoureux