## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ADP MARSHALL, INC., a Division of Fluor NE, Inc., | ) ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | C.A. No. 07-129-ML |
| v. | ) ) | |
| NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendants/Counterclaim-Plaintiffs/ Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

NORESCO, LLC ("Noresco") and Lumbermens Mutual Casualty Company ("Lumbermens") (collectively, "Defendants") submit this Memorandum in support of their Objection to Plaintiff's Motion for Leave to Amend Complaint. Defendants object to Plaintiff's ("ADPM") Motion for Leave to Amend Complaint on the grounds that (1) ADPM does not, and indeed cannot, plead the elements necessary to establish a prima facie case for interference with contractual relations and (2) ADPM cannot make the requisite showing to establish causation. Accordingly, amendment of the Complaint to add the proposed Count VII is futile, and the Motion for Leave to Amend the Complaint should be denied.

## I.     **Factual Background**

On or about September 25, 2000, Noresco and the State of Rhode Island

Department of Mental Health, Retardation and Hospitals (the "State") entered into a

contract for the construction and renovation of an energy cogeneration facility at the

Pastore Centre in Cranston, Rhode Island (the "Project").   Lumbermens acted as

Noresco's surety on the Project and issued a payment bond with respect to the Project.

On or about March 22, 2002, Noresco and ADPM executed an agreement

pursuant to which ADPM became the Project's general contractor (the "Agreement").   A

true and accurate copy of the Agreement is attached hereto as <u>Exhibit A</u>.   Pursuant to the

Agreement, ADPM was to be paid by Noresco in accordance with a Not-to Exceed

Drawdown Schedule and Milestone Schedule.   <u>See</u> <u>Exhibit A</u> at § 6.2.

The Agreement contemplated that ADPM would use subcontractors to complete

the majority of the work for which ADPM was responsible under the Agreement.

Section 2.1 of the Agreement expressly provides that "[a]ll subcontracts shall be subject

to and consistent with, and require the [s]ubcontractors to satisfy, all applicable terms and

conditions of this Agreement."   Notwithstanding, ADPM failed to include key

contractual provisions of the Agreement into its subcontracts with the subcontractors and,

as a result, the scope of work set forth in the subcontracts in many instances fell short of

the scope of work for which ADPM was responsible under the Agreement.

Consequently, ADPM's subcontractors submitted change order requests for scopes of

work that were within the scope of work required by the Agreement.   ADPM then simply

added its own mark-up to the Change Order Requests and passed them on to Noresco.

Noresco, however, rightfully refused to issue change orders on the grounds that the

Change Order Requests were for work ADPM was otherwise responsible for under the Agreement.

Further compounding the issues presented by ADPM's failure to flow down the requisite scope of work to its subcontractors, the subcontracts, in breach of § 2.1 of the Agreement, provided for progress payments and contained "pay when paid" provisions. Based upon the "pay when paid" provisions, ADPM disavowed its obligation to pay the subcontractors for the work in the rejected Change Order Requests unless and until Noresco issued change orders and paid ADPM. As a result, various subcontractors filed actions against Noresco and/or Lumbermens in Rhode Island Superior Court, seeking payment for work performed on the Project under their respective subcontracts with ADPM (the "Subcontractor Actions").[1] ADPM and/or its sureties (St. Paul Fire and Marine Insurance Company and Fidelity and Deposit Company of Maryland) were also parties to the Subcontractor Actions.

Pursuant to § 14.1 of the Agreement, ADPM was obligated to indemnify, defend and hold harmless Noresco in the Subcontractor Actions. However, rather than indemnifying and defending Noresco, ADPM filed cross-claims against Noresco and Lumbermens in the Subcontractor Actions. As a result, Noresco and Lumbermens were forced to defend the Subcontractor Actions at their own expense. However, because

---

[1] The Subcontractor Actions are as follows: Arden Engineering Constructors, LLC v. Lumbermens Mutual Casualty Company, et al., Superior Court of Providence County, C.A. No. 04-1208; Hydrochem Industrial Services, Inc. v. Lumbermens Mutual Casualty Company et al., Superior Court of Providence County, C.A. No. 2004-1992; Unique Metal Works, Inc. v. Lumbermens Mutual Casualty Company et al., Superior Court of Providence County, C.A. No. 04-2821; Process Construction Management, Inc. v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 04-3378; Northeast Steel Corporation, Inc. v. Lumbermens Mutual Casualty Company, et al., Superior Court of Providence County, C.A. No. 05-983; R.P. Iannuccillo & Sons Construction Company v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-0984; Atlantic Contracting and Specialties, LLC v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-1161; Weststar Associates, Inc. v Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-1698; D'Ambra Construction Company, Inc. v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-4197.

Noresco had a duty to defend and indemnify Lumbermens against the Subcontractor

Actions, Noresco ultimately bore financial responsibility for all of the Defendants'

expenses in defending the Subcontractor Actions and for any judgment entered in those

cases against the Defendants.

Initially, Noresco vigorously defended the Subcontractor Actions on behalf of

itself and Lumbermens.  However, on April 6, 2005, the Court in the Subcontractor

Action styled Hydrochem Industrial Services, Inc. v. Lumbermens Mutual Casualty

Company, et al., Superior Court of Providence County, C.A. No. 2004-1992, granted

summary judgment in favor of Hydrochem Industrial Services, Inc. against

Lumbermens.[2]  In its decision, the Court expressly found that, regardless of what

defenses Noresco had against Hydrochem's claims:

> The plaintiff [Hydrochem] has established that it is entitled to the
> payment under Rhode Island General Laws Section 34-28-30.
> Lumbermens issued a bond for the project.  The plaintiff worked
> on the building as part of its construction...  Furthermore, the
> plaintiff brought suit against Lumbermens within the one-year
> limitations period included on the bond.  The plaintiff, therefore, is
> entitled to relief under Rhode Island General Laws Section 34-28-
> 30.

Exhibit B, at 11-12.  Based upon the Hydrochem Decision, it became apparent to

Noresco and Lumbermens that it was likely Lumbermens would be required to pay the

various other subcontractor claims as well.  As result, Noresco and Lumbermens began to

explore the possibility of settling the Subcontractor Actions.  Between 2005 and 2007,

the Defendants settled all of the subcontractors' claims against them in the Subcontractor

---

[2] A true and accurate copy of the transcript of the Court's Decision rendered on the Plaintiff's Motion for Summary Judgment is attached hereto as Exhibit B (the "Hydrochem Decision").

Actions, agreeing to make payments totaling approximately $840,000 (the "Subcontractor Settlements").[3]

In connection with the Subcontractor Settlements, Noresco and Lumbermens filed motions to dismiss the various subcontractors' claims against them in the Subcontractor Actions.  Not only was ADPM aware of the ongoing settlement discussions, it opposed the Defendants' motions to dismiss in several cases[4] on the grounds that, *inter alia*, it had not had an opportunity to review the settlement agreements and such agreements would "affect material and substantial rights of ADPM going forward."  See Exhibit C, at p. 1. At the Court's direction, Noresco and Lumbermens provided copies of the subcontractor settlement agreements to ADPM.  Thereafter, *over ADPM's continued objection*, the Court approved the Defendants' payments to the subcontractors by granting the Defendants' motions to dismiss.  True and accurate copies of the orders granting the motions to dismiss are attached hereto as Exhibit D.

---

[3] Additionally, Noresco incurred attorneys' fees and expenses in excess of $300,000 in defending and resolving the Subcontractor Actions, including defending against ADPM's meritless cross-claims and litigating ADPM's objections to Noresco payments to subcontractors who were owed money and whom ADPM failed to pay.

[4]  ADPM filed identical objections to Noresco and Lumbermens motions to dismiss the plaintiff's complaints in the following cases:  Process Construction Management, Inc. v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 04-3378; R.P. Iannuccillo & Sons Construction Company v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-0984; and D'Ambra Construction Company, Inc. v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-4197.  A true and accurate copy of *Defendants, ADP Marshall, Inc., St. Paul Fire and Marine Insurance Company and Fidelity and Deposit Company of Maryland's Objection  to Noresco and Lumbermens Motion to Dismiss* is attached hereto as Exhibit C.  In the case styled Northeast Steel Corporation, Inc. v. Lumbermens Mutual Casualty Company, et al., Superior Court of Providence County, C.A. No. 05-983, ADPM filed a brief opposition to Noresco and Lumbermens motion to dismiss which simply adopted and attached the opposition filed in the Process Construction, R.P. Iannuccillo, and D'Ambra cases.

III.   **Argument**

A.   Standard for Granting Leave to Amend

As ADPM aptly asserts in its motion, the court must consider the substantive merits of a proposed amendment in deciding whether leave to amend is appropriate. Foman v. Davis, 371 U.S. 178, 182 (1962).  The court has the discretion to deny a motion to amend "if it believes, as a matter of law, amendment would be futile." Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 792 (1st Cir. 1994).  See also Kemper Ins. v. Federal Express, 252 F.3d 509, 515 (1st Cir. 2001).  Accordingly, the court need not grant leave to amend a pleading if the amendment asserts a plainly defective claim "upon which relief patently could not be granted." Montaup Elec. Co. v. Ohio Brass Corp., 561 F.Supp. 740, 750 (D.R.I. 1983), citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co., Inc., 608 F.2d 28, 42 (2d Cir. 1979); Bricker v. Crane, 468 F.2d 1228, 1233 (1st Cir.); Breier v. Northern Cal. Bowling Proprietors' Ass'n, 316 F.2d 787, 790 (9th Cir. 1963).  See also Valdan Sportswear v. Montgomery Ward & Co., 591 F.Supp. 1188 (D.C.N.Y. 1984); Messelt v. Sec. Storage Co., 11 F.R.D. 342, 344 (Del. 1951) ("[A]n amendment may not be permitted if it is obviously and palpably insufficient as a matter of law."); Wright & Miller, Federal Practice and Procedure, V. 6, § 1487 (Courts may deny a motion for leave to amend if the proposed amendment "advances a claim or defense that is legally insufficient on its face.")

The test for determining the futility of a proposed amendment is whether the amendment would survive a motion to dismiss or a motion for summary judgment.  See, e.g., Glick v. Koenig, 766 F.2d 265 (7th Cir. 1985); Bruno Wine & Spirits, Inc. v. Guimarra Vineyards, 573 F.Supp. 337 (D. Wis. 1983); Pan-Islamic Trade Corp. v. Exxon

Corp., 632 F.2d 539 (5th Cir.), overruled in part on other grounds, Church of Scientology

Flag Serv. v. City of Clearwater, 2 F.3d 1514 (11th Cir. 1993); Eria v. Texas Eastern

Transmission Corp., 377 F.Supp. 344 (D.C.N.Y. 1974); Wright & Miller, Federal

Practice and Procedure, V. 6, § 1487.  If the amendment could not survive such a motion,

leave to amend should be denied.  Id.  Here, for the reasons set forth below, ADPM's

proposed Count VII cannot survive a motion to dismiss or motion for summary judgment.

Accordingly, the Motion to Amend the Complaint should be denied.

      B.     **ADPM Has Not, And Cannot, Establish A Prima Facie Case For Interference With Contractual Relations.**

In order to establish a prima facie case for interference with contractual relations

the Plaintiff must allege and prove (1) the existence of a contract; (2) the alleged

wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages

resulting therefrom.  Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000).

Additionally, "aggrieved parties must allege and prove not only that the putative

tortfeasors intended to do harm *to the contract* but that they did so without the benefit of

any legally recognized privilege or other justification." Belliveau Bldg. Corp., 763 A.2d

at 627 (emphasis added).  ADPM's proposed Count VII pleads neither that Noresco

intended to do harm to the subcontracts between ADPM and the subcontractors, nor that

Noresco did so without justification.  The reason for the absence of these required

pleadings is that there is in this case no factual basis for them.  As a result, proposed

Count VII is defective on its face.

The sum and substance of ADPM's allegations with respect to Noresco's

interference with the various agreements between ADPM and the Subcontractors is that

Noresco "knowingly interfered with the Subcontractor Agreements by making direct payment to the various subcontractors with improper motives or means." See ¶47 of the proposed First Amended Complaint.   ADPM alleges that Noresco's improper motive for resolving the Subcontractor Actions and paying the Subcontractors was avoidance of paying ADPM's mark-up on the Change Order Requests, not interference with ADPM's contractual relationship with its subcontractors.  See ¶48 of the proposed First Amended Complaint.  Such allegation is insufficient on its face to maintain an action for interference with contractual relations.  See Western Mass. Blasting Corp. v. Metropolitan Prop. and Cas. Ins. Co., et al., 783 A.2d 398, 402 (R.I. 2001) (allegation that plaintiff was harmed by defendant's interference with plaintiff's contractual relations with a third party is insufficient to maintain claim for interference with contractual relations where the plaintiff failed to allege that the defendant acted with the intent to disrupt plaintiff's contractual relationship).  Furthermore, in essence, ADPM is arguing that Noresco tortiously interfered with its own contract with ADPM.  Of course, there is no such cause of action for tortious interference with one's own contract.  See Robertson Stephens, Inc. v. Chubb Corp., 473 F.Supp.2d 265, 275 (D.R.I. 2007) ("it is well-settled that a party cannot tortiously interfere with its own contract"), citing URI Cogeneration Partners L.P. v. Board of Governors For Higher Education, 915 F.Supp. 1267, 1289 (D.R.I. 1996).

Moreover, even if proposed Count VII could be fairly read to allege that Noresco paid the subcontractors with the intent to interfere with ADPM's contractual relationships (which the Defendants expressly deny), ADPM's proposed Count VII is still defective on its face because ADPM fails to allege that Noresco did so without the benefit of any

legally recognized privilege or other justification. See Belliveau Bldg. Corp., 763 A.2d at 627.

ADPM did not (and cannot) allege the prima facie element of lack of justification because Noresco was, in fact, legally justified in settling the Subcontractor Actions and paying the Subcontractors on behalf of itself and Lumbermens. Noresco was entirely justified in resolving the Subcontractor Actions and paying the Subcontractors where: (1) ADPM's failure to incorporate certain provisions into its agreements with the Subcontractors resulted in the Subcontractors suing Noresco and Lumbermens; (2) ADPM refused to satisfy its obligations under the Agreement to indemnify and defend Noresco against such claims and instead filed cross-claims against Noresco and Lumbermens; (3) Noresco had an obligation to defend and indemnify Lumbermens in connection with the Subcontractor Actions; (4) ADPM never contended in any of the objections it filed in the Subcontractor Actions or any of the extended hearings thereon that any Subcontractor was not owed what Noresco proposed to pay; and, most importantly, (5) the Hydrochem Decision made clear that whatever defenses Noresco might have to subcontractors' claims, Lumbermens was very likely going to have to pay such claims. Noresco's justification is further substantiated by the fact that the Court in the Northeast Steel Corporation, Inc., Process Construction, R.P. Iannuccillo, and D'Ambra cases dismissed those subcontractors' claims against Noresco and Lumbermens *over ADPM's objection that the settlements affected ADPM's "material and substantive rights going forward."* Thus, it is impossible for ADPM to plead that Noresco acted without justification. ADPM cannot establish a prima facie case for interference with contractual relations. See id. See also Henslee, Monek & Henslee v. D.M. Cent. Transp.,

870 F. Supp. 764, 767 (D. Mich. 1994) ("Settling a lawsuit is a legitimate business reason" shielding a party from liability from interference with contractual relations), citing Formall, Inc. v. Community Nat'l Bank of Pontiac, 166 Mich. App. 772, 780 (1988) ("Defendants motivated by legitimate personal and business reasons are shielded from liability" against a claim for interference with contractual relations.); Paparone v. Bankers Life & Cas. Co., 496 So. 2d 865, 868 (Fla. App. 986) (ruling that purported interference with a contract due to settlement of an action was of no consequence because a defendant in a lawsuit was "entitled to settle the lawsuit to protect its own interests."), citing McIntosh, et al v. Harbour Club Villas Condo. Ass'n, Inc., et al., 468 So. 2d 1075, 1079-1080 (Fla. App. 1985).[5]

      C.      ADPM Cannot Make The Requisite Showing To Establish Causation.

In order to succeed on an interference with contractual relations claim under Rhode Island law, ADPM must prove either (1) "but for" Noresco's alleged interference, it would not have suffered damages; or (2) "it is reasonably probable that but for the interference" it would not have suffered damages. APG, Inc. v. MCI Telecomm. Corp., 436 F.3d 294, 304 (1st Cir. 2006) (affirming trial court's grant of summary judgment in favor of the defendants on a claim for intentional interference with contractual relations), citing Mesolella v. City of Providence, 508 A.2d 661, 671 (R.I. 1986). "Reasonably probable" in this context is construed to be a high level of probability which "depends on evidence that is 'reasonably definite and is neither speculative nor remote.'" APG, Inc.,

---

[5] "Rhode Island courts favor the settlement of disputes outside of the litigation process." Ross-Simons or Warwick, Inc. v. Baccarat, Inc., 182, F.R.D. 386, 394 (D.R.I. 1998), citing Homar, Inc. v. North Farm Assocs., 445 A.2d 288, 290 (R.I. 1982). See also Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987) ("As any litigator or judge can attest, the best case is a settled case.")

436 F.3d at 304 quoting <u>Palazzi v. State</u>, 319 A.2d 658, 662 (R.I. 1974). As a matter of law, ADPM cannot meet its burden of proof as to causation.

ADPM's claim for damages arising out of the alleged interference with the subcontracts is essentially limited to the mark-up it claims it otherwise would have received on the Change Order Requests.[6] <u>See</u> ¶¶ 48 of the proposed First Amended Complaint. Thus, in order to establish causation, ADPM must prove that but-for the Defendants' payments to the subcontractors under the Subcontractor Settlements, there is a high probability Noresco would have paid ADPM the mark-ups on the Change Order Requests. Where Noresco has refused to pay the Change Order Requests because the work reflected therein was included in ADPM's scope of work under its Agreement with Noresco, the likelihood that Noresco would have paid ADPM for the Change Orders but-for the Subcontractor Settlements can be described as nothing other than speculative or remote. Therefore, ADPM cannot make the requisite showing to establish causation and amendment of the Complaint to add Count VII would be futile. <u>APG, Inc.</u>, 436 F.3d at 304.

## IV.   <u>Conclusion</u>

The Motion for Leave to Amend the Complaint should be denied because (1) ADPM does not, and indeed cannot, plead the elements necessary to establish a prima

---

[6] ADPM also alleges that its damages include some amorphous financial exposure from the subcontractors based upon the Defendants' failure to obtain releases for ADPM from the subcontractors. Notably, ADPM has not alleged that, despite the passage of nearly two years since the subcontractors' claims in the Subcontractor Actions were dismissed, it has received a single claim from any subcontractor. Such is a claim is specious, speculative and patently insufficient to establish damages. <u>See Petrarca v. Fid. and Cas. Ins. Co.</u>, 884 A.2d 406, 410-411 (R.I. 2005), citing <u>Brito v. Capone</u>, 819 A.2d 663, 666 (R.I. 2003) (party opposing summary judgment cannot rest on "bare allegations" to create factual dispute over damages); <u>General Accident Ins. Co. of Am. v. Cuddy</u>, 658 A.2d 13, 17-18 (R.I. 1995) (merely stating that damages exist without proof thereof is not sufficient to survive summary judgment); <u>White v. LeClerc</u>, 468 A.2d 289, 290 (R.I. 1983) ("damages must rest upon legally competent evidence and may not be the product of speculation or conjecture.")

facie case for interference with contractual relations; and (2) ADPM cannot make the

requisite showing to establish causation.  Accordingly, amendment of the Complaint to

add the proposed Count VII is futile.


                              **NORESCO, LLC and LUMBERMENS**
                              **MUTUAL CASUALTY COMPANY,**
                              By their Attorneys,


                               /s/ Brian J. Lamoureux
                              William M. Dolan III (#4524)
                              wdolan@brownrudnick.com
                              Brian J. Lamoureux (#6211)
                              blamoureux@brownrudnick.com
                              **BROWN RUDNICK BERLACK ISRAELS LLP**
                              121 South Main Street
                              Providence, RI 02903
                              (401) 276-2600
                              (401) 276-2601 Fax

Dated:  January 7, 2008


                              *Pro Hac Vice:*
                              Cheryl B. Pinarchick
                              cpinarchick@brownrudnick.com
                              **BROWN RUDNICK BERLACK ISRAELS LLP**
                              One Financial Center
                              Boston, MA 02111
                              (617) 856-8200
                              (617) 856-8201 Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

Andrew J. Tine, Esq.
atine@tinelaw.com
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Fl.
Bristol, RI  02809


/s/ Brian J. Lamoureux _____

# 1535840 v1 - 080908/0004