# EXHIBIT B

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, S.C. SUPERIOR COURT

HYDROCHEM INDUSTRIAL SERVICES, INC. :
:
:
VS. :
: # PC 2004-1992
:
:
:
:
LUMBERMENS MUTUAL CASUALTY CO., :
ST. PAUL FIRE & MARINE INSURANCE :
CO., FIDELITY & DEPOSIT COMPANY :
OF MARYLAND :

Transcript of **Decision**
rendered on the **Plaintiff's Motion for Summary Judgment rendered** by
**Ms. Justice Judith C. Savage**
in the Providence County Superior Court on
**Wednesday, April 6, 2005 (P.M. Session)**
in the above-entitled matter.

**APPEARANCES**:

ROGER LeBOEUF, ESQUIRE.........FOR THE PLAINTIFF

CHRISTOPHER O'CONNOR, ESQUIRE...FOR THE DEFENDANT

GEOFFREY W. MILLSOM, ESQUIRE

**C E R T I F I C A T E**

I, LISA L. KELLY, do hereby certify that the succeeding pages, 1-15, inclusive, are a true, accurate and complete transcript of my stenographic notes taken before **MS. JUSTICE JUDITH C. SAVAGE** in the Providence County Superior Court in the matter of **Hydrochem Industrial Services, Inc., v. Lumbermens Mutual Casualty Co., St. Paul Fire & Marine Insurance Co., Fidelity & Deposit Company of Maryland; #PC 2004-1992.**

Said transcript contains the **Decision** rendered on the **Plaintiff's Motion for Summary Judgment** in the above-entitled matter on **Wednesday, April 6, 2005 (P.M. Session).**

**LISA L. KELLY,**
**Certified Court Reporter**

**WEDNESDAY, APRIL 6, 2005**

**(P.M. SESSION)**

THE CLERK: Your Honor, the next case is 04-1992, Hydrochem vs. Lumbermens.

THE COURT: Good afternoon. Could counsel, please, state their names for the record.

MR. LeBOEUF: Roger LeBoeuf for plaintiff, Hydrochem.

MR. O'CONNOR: Chris O'Connor for Hydrochem, as well as St. Paul Fire & Marine.

THE COURT: Are we missing anyone?

MR. O'CONNOR: Mr. Millsom.

THE COURT: Have you seen him?

MR. O'CONNOR: I have not seen or heard from him. I can make a quick telephone call. May I make a quick telephone call?

THE COURT: Was he given notice?

THE CLERK: Sure, he was. He indicated he'd be here.

THE COURT: I am going to proceed. The transcript can be ordered, if necessary.

MR. O'CONNOR: That is fine.

THE COURT: This is an action to recover money on a payment bond. The instant conflict arises from an agreement between the plaintiff HydroChem, a company that

provides industrial cleaning services and Arden Engineering. In June 2003, the plaintiff submitted a proposal to Arden for the pre-operational degreasing of three boilers on the Pastore Center Cogeneration Project. The proposal contained a base price of $22,984.00 based upon an estimated forty-eight hours of service time with certain additional unit prices if more hours of service were required. **(Urso Affidavit Exhibit A.)** Arden issued a Purchase order giving the plaintiff the authority to proceed with the degreasing operations. The purchase order had an attached addendum with additional terms and conditions. Payment terms were included in the addendum as "net thirty days from the date of invoice." **(Urso Affidavit Exhibit B).**

Arden was a subcontractor for Fluor NE, Inc., doing business as ADP Marshall. ADP Marshall was a subcontractor to Noresco, LLC, the general contractor on the project. The project owner was the Rhode Island Department of Mental Health, Retardation and Hospitals. Lumbermens Casualty Insurance Company, as surety, issued a labor and material payment bond for the project, with Noresco listed as the principal and MHRH listed as the owner. **(Plaintiff's Exhibit A.)** St. Paul Fire & Marine Insurance Company and Fidelity and Deposit Company of Maryland, as sureties, issued one payment and one

performance bond for the project with ADP Marshall listed as the principal and Noresco listed as the obligee. **(Plaintiff's Exhibit B).**

In Section 2.1 of the ADP Marshall-Noresco contract, ADP Marshall agreed that all subcontracts between it and its subcontractors would be "subject to and consistent with, and require the subcontractors to satisfy, all applicable terms and conditions of the ADP Marshall-Noresco contract." **(Carleton Affidavit's Exhibit 2, Section 2.1).** Pursuant to the contract, ADP Marshall was "expected to follow the startup check lists and procedures provided by the Noresco pre-purchase equipment vendors." **(Carleton Affidavit's Exhibit 2, Attachment XVII.)** "In lieu of those check lists and procedures ADP Marshall shall follow check lists similar to those provided in Attachment XVII for: (1) pumps; (2) fans; and (3) piping." (Id.) Lumbermens alleges that ADP Marshall was responsible for the installation, preparation for start-up and start-up assistance of boilers and the Heat Recovery Steam Generators purchased by Noresco for the project and that the procedures for the start-up were set forth in manuals published by the manufacturers. It further contends that the start-up checklists and procedures called for a "boil out" procedure to be performed prior to start-up. **(Lumbermens**

**Memorandum at 4 (citing Carleton Affidavit's Exhibit 4).**

The plaintiff began its degreasing operations on July 1, 2003 and completed the work on July 14 2003. **(Urso affidavit Paragraph 6.)** On August 6, 2003, the plaintiff sent Arden a detailed invoice for $35,651.00. **(Urso Affidavit Exhibit C).** To this date, Arden has refused or is unable to pay the plaintiff the amount due. The plaintiff began this instant action on April 14, 2004 on the Lumbermens Bond. On June 17, 2004, the plaintiff amended its complaint to include suit on the St. Paul/ Fidelity Bond. The plaintiff has since entered into an "Advancement and Claim Prosecution Agreement" with ADP Marshall and St. Paul/Fidelity. Under the agreement, ADP Marshall and St. Paul/Fidelity have agreed to cooperate in the prosecution of the plaintiff's claim on the Lumbermens bond "because Noresco has never paid ADP Marshall for the services provided by the plaintiff." **(Defendant's Reply Memorandum at 2).** The plaintiff, in turn, has agreed to dismiss its claim on the St. Paul/ Fidelity bond with prejudice. Consequently, in its reply brief, the plaintiff "hereby" withdrew its motion for summary judgment against defendants St. Paul/Fidelity. The plaintiff seeks $35,651.00 as promised in its contract with Arden, plus interest, costs and reasonable attorneys' fees.

The plaintiff has filed a motion for summary judgment against Lumbermens, along with a supporting memorandum and exhibits. The plaintiff also has provided the Court with an affidavit of Gene Urso, Operations Manager for the plaintiff for the project and a duly authorized agent of record for the plaintiff and exhibits. Lumbermens has filed an objection, along with supporting memorandum. Lumbermens has provided the Court with an affidavit of Wade Carleton, the Vice President of Construction at Noresco. The plaintiff has filed a reply memorandum. After oral argument on March 8, 2005, Lumbermens provided the Court with a letter and case law supporting its theory that its bond is secondary to the St. Paul/Fidelity bond. The plaintiff responded with a letter distinguishing the case law provided by Lumbermens, and also provided the Court with an exhibit from The Law of Payment Bonds and a copy of the Dismissal Stipulation of claim by plaintiff against St. Paul/ Fidelity.

The plaintiff urges this Court to grant its motion for summary judgment because, pursuant to Rhode Island General Laws Section 34-28-30, Lumbermens issued labor and material payments bonds, the plaintiff provided labor and material in the amount of $35,651.00 to the project, the plaintiff was not paid, and the plaintiff filed suit

within the timeframes set forth on the bonds.

Lumbermens objects to the motion, arguing that the plaintiff is not entitled to summary judgment because the plaintiff's work on the project was rejected by Noresco for failing to meet with the requirements of the construction contract. Additionally, Lumbermens argues that the plaintiff did not comply with the terms of the bond with regard to notice of its claim. Finally, Lumbermens argues that the Lumbermens bond is secondary to the St. Paul/Fidelity bond; therefore, Lumbermens cannot be held liable unless and until the St. Paul/ Fidelity bond is unable to satisfy the plaintiff's claim.

Rhode Island Generals Law Section 34-28-30 states: "If any bond is given to secure payment for work done or material furnished on account of the construction, erection, alteration or reparation of any building, the bond shall enure to the benefit of any person who does any work in the construction, erection, alteration or reparation thereof,...and the person doing the work or furnishing the materials may bring suit in his or her own name on the bond against any party thereto,...notwithstanding the fact that he or she is not a party a party to the bond...,and, further, notwithstanding the fact that he or she did not know of or rely on the bond or give any notice to the surety on

the bond...." **Rhode Island Generals Laws, Section 34-28-30.** To recover on a bond pursuant to this section, the statute requires a plaintiff to demonstrate: (1) the existence of a bond that "secures payment for work done or materials furnished on account of the construction, alteration or reparation of any building"; and (2) that plaintiff did work or furnished materials either "in the construction, erection, alteration or reparation" of the building. (**Id.**) Additionally, the plaintiff must file suit within any statute of limitation period stated in the bond. **Vaudreuil v. Nelson Engineering and Construction Company, 121 R.I. 418, 421 399 A.2d 1220, 1222 (1979).**

Lumbermens argues that the plaintiff is not entitled to recovery under Rhode Island General Laws Section 34-28-30 because the statute does not give the plaintiff any more rights than what is provided for the plaintiff under the common law of surety. Thus, Lumbermens argues the plaintiff cannot recover because the work done by the plaintiffs was not the required work specified under the ADP Marshall-Noresco contract. Additionally, Lumbermens argues that the plaintiff did not meet a condition subsequent to recovery under the bond, because the plaintiff neither timely notified Lumbermens of its claim nor submitted a proof of claim to Lumbmermens.

Furthermore, Lumbermens argues that the plaintiff must exhaust the funds in the St. Paul/Fidelity bond before it can seek payment under the Lumbermens bond because the St. Paul/Fidelity bond was issued to ADP Marshall, protecting Noresco from liability, and the Lumbermens bond was issued to Noresco, protecting MHRH from liability.

The first question is whether Rhode Island General Laws Section 34-28-30 changes the common law of suretyship, thereby giving the plaintiff a right of recovery. Lumbermens argues that the statute merely codifies the common law right to bring an action under a bond and gives the plaintiff no further rights. The plaintiff argues that the statute supercedes the common law, giving protection to subcontractors who are not in privity with the General Contractor.

The Rhode Island Supreme Court has stated that the legislature enacted Rhode Island General Laws Section 34-28-30 with the intent to provide a remedy for a supplier of labor or materials to recover on a bond, in addition to other statutory remedies. **Providence Electric Company v. Donatelli Building Company**, 116 R.I. 340, 346, 356 A.2d 483, 486 (1976). In **Providence Electric**, the Supreme Court, in upholding the lower court's ruling, noted that the trial justice "concluded

that it was the intention of the Legislature to establish a remedy contrary to the existing common law but in addition to and independent of Chapter 28 of Title 34 (Mechanics' Lien Law) since under Section 30, no notice of intention to claim a lien need be filed by the claimant to pursue his remedy thereunder." Id. at 344, **356 A.2d at 485** (emphasis added). This Court agrees that the statute works to provide a remedy that was not recognized at common law prior to its enactment and such remedy is, in fact, contrary to the common law of surety. The plaintiff thus does not need to meet the common law of surety requirements before it can recover under the Lumbermens bond.

Lumbermens next argues that the plaintiff cannot recover under the statute because the plaintiff did not perform the required work under the ADP Marshall-Noresco contract and that Noresco rejected the plaintiff's work in a timely fashion. Furthermore Lumbermens contends that the statute requires the plaintiff to show that its labor or materials were performed without objection. The plaintiff has established, and Lumbermens does not dispute, that Arden, a subcontractor for ADP Marshall, hired the plaintiff to perform a degreasing on the boilers in the project. Lumbermens also does not disagree that the plaintiff performed and completed the

requested procedure of degreasing. Lumbermens argues that Noresco is not bound to pay for the plaintiff's work because the required procedure under the ADP Marshall-Noresco contract was a "boil out," a procedure that it argues is significantly different from a degreasing. Once it discovered the problem and ADP Marshall did not correct the problem, Noresco contacted the manufacturer to perform the correct procedure and backcharge ADP Marshall accordingly.

Lumbermens claims that it does not have to pay for the provided procedure because it "properly rejected" the work of the plaintiff; however that rejection was directed at Arden and not the plaintiff. Arden was the entity responsible for contracting for the correct procedure. Furthermore, the contract between the plaintiff and Arden specifically stated that the plaintiff "shall not be bound by any provision in (Arden's) contract with its customer (ADP Marshall) which is in addition to or <u>inconsistent</u> with any provision in the Contract/Addendum between (the plaintiff) and (Arden)." **(Urso Affidavit's Exhibit B)** (emphasis added). The plaintiff, therefore, was not bound by the provision in the ADP Marshall-Noresco contract or the ADP Marshall-Arden contract requiring a boil out procedure instead of a degreasing. Further, the

United States District Court for the District of Rhode Island has stated that "a construction contractor who has followed plans or specifications furnished by the contractee and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results, at least after the work is completed, solely from the defective or insufficient plans or specifications." **305 F.Supp. 650, 672 (D.R.I. 1969).** Additionally, Rhode Island General Laws Section 34-28-20 does not require the plaintiff's materials or labor to be accepted before it is entitled to payment, nor will this Court read such a requirement into the statute. Lumbermens argues that the language of Rhode Island General Laws, Section 34-28-30, that "the bond shall enure to the benefit of any person who does any work," does not guarantee payment to the subcontractor. "Enure" means "to take effect, to come into use." **Black's Law Dictionary 842 (8th Ed. 2004).** Replacing the definition in the statute, it would read "the bond shall take effect to the benefit of any peson who does any work." Consequently, if the plaintiff is able to meet the requirements of the statute, it is entitled to recovery under the bond.

The plaintiff has established that it is entitled to the payment under Rhode Island General Laws Section

34-28-30. Lumbermens issued a bond for the project **(Plaintiff's Exhibit A)**. The plaintiff worked on the building as part of its construction by degreasing three boilers at the project's site. **(Urso Affidavit Exhibit B.)** Furthermore, the plaintiff brought suit against Lumbermens within the one-year limitations period included on the bond. The plaintiff, therefore, is entitled to relief under Rhode Island General Laws Section 34-28-30.

The final question before this Court with respect to this motion for summary judgment is whether the existence of a St. Paul/Fidelity bond precludes this Court from finding liability on the Lumbermens bond.

Lumbermens argues that the St. Paul/Fidelity bond protects Noresco from any claims that subcontractors may have against it, and it is only when that bond is exhausted that the Lumbermens bond will be accessible. At oral argument on March 8, 2005, this Court asked Lumbermens to provide authority to buttress this proposition. At that time, Lumbermens essentially indicated that its proposition was supported by "logic." By letter to this Court after oral argument, Lumbermens then submitted a 1976 case from the Superior Court of New Jersey, **A & P Sheet Metal Company v. Edward Hansen, Inc.**, **357 A.2d 37 (N.J. Super. 1976)**, and also referred this

Court to the Restatement of Security provisions cited therein. The case law and restatement, however, do not support the proposition put forth by Lumbermens.

Lumbermens has provided no authority that supports removing liability from one bonding company when another company exists that may be primarily responsible for paying the debts of a subcontractor. In **A & P Sheet Metal Company v. Edward Hansen, Inc.**, **357 A.2d 37 (N.J. Super. 1976)**, and in all of the cases cited therein, the courts held both bonding companies liable to the claimant, and the only issue before the court was the treatment of cross-claims between two bonding companies. **357 A.2d at 38** (deciding allocation of liability as between sureties); **see American Casualty Company v. Brezina Construction Company**, **295 F.2d 603, 605 (8th Cir. 1961)** (deciding whether bond of subcontractor indemnified general contractor and, therefore, general contractor's surety). The authority provided by Lumbermens is inapposite because a court allocating responsibility and liability between two bonding companies in no way suggests any removal of liability (which is joint and several) on the part of either bonding company. Furthermore, the Rhode Island General Laws seem to support this proposition because Section 34-28-30 states that "any bond given to secure payment for work done or

materials furnished...shall enure to the benefit of any person who does any work in the construction, erection, alteration or reparation." (Emphasis added). The General Laws does not distinguish among bonds of different levels to establish liability, but instead appear to allow for joint and several liability.

Here, there is not before the Court, at this juncture, a determination of liability on the part of two bonding companies that might give rise and a question of allocation of liability or indemnity between the two under the authorities cited by Lumbermens.

This Court thus finds that Lumbermens has not sustained its burden under Rule 56 to demonstrate the existence of any material fact to preclude a finding of summary judgment. Consequently, as plaintiff has proven its entitlement to judgment as a matter of law, summary judgment will enter for the plaintiff pursuant to its motion as stated.

If I could have a form of order. Welcome --

MR. MILLSOM: I apologize, your Honor. The fault was mine. I wish I could give you a good excuse.

THE COURT: Well, the transcript will be available if you want to know more than what you do.

MR. LeBOEUF: One question regarding entry of final judgment pursuant to rule 54(b), there being no just

reason for delay.

THE COURT: Any objection to that?

MR. MILLSOM: No.

THE COURT: Rule 54(b) judgment may enter.

MR. LeBOEUF: Thank you. A second question I had in this motion also requested attorneys fees and I offer to submit a affidavit in support of the attorney's fees at a later date. I just wanted to --

THE COURT: Is the attorney fee request being made pursuant to 9-1-45?

MR. LeBOEUF: Correct.

THE COURT: Any objection to that?

MR. MILLSOM: Yes.

THE COURT: I don't see that you have a claim under that statute for attorney's fees.

MR. LeBOEUF: Okay.

THE COURT: Judgment may enter in the principal amount as stated, plus interest and costs.

MR. LeBOEUF: Thank you.

MR. O'CONNOR: Thank you, your Honor.

MR. MILLSOM: Thank you, your Honor.

(END OF ABOVE-ENTITLED MATTER HEARD ON SAID DATE)

(COURT RECESSED AT 2:48 P.M.)