**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ADP MARSHALL, INC., a division of Fluor NE, Inc.,<br>Plaintiff,<br><br>v.<br><br>NORESCO, LLC and LUMBERMEN'S MUTUAL CASUALTY COMPANY,<br>Defendants. | ) | C.A. No.: 07-129 ML |

**PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff ADP Marshall, Inc. ("Plaintiff") hereby responds to Defendant NORESCO, LLC and Defendant Lumbermen's Mutual Casualty Company's (collectively "Defendants") Objection to Plaintiff's Motion for Leave to Amend Complaint. Plaintiff responds to Defendants' Objection to Plaintiff's Motion for Leave to Amend Complaint and states that: (1) Plaintiff has pled the elements necessary to establish a prima facie case for interference with contractual relations; and (2) Plaintiff need only, and indeed has, alleged causation which can be proven under a cognizable legal theory. Wherefore, amendment of the Complaint to add a seventh Count for interference with contractual relations is not futile, and Plaintiff's Motion for Leave to Amend the Complaint should be granted.

## I. FACTUAL BACKGROUND

On September 25, 2000, NORESCO and the State of Rhode Island Department of Mental Health, Retardation and Hospitals entered into a design and construction

agreement (the "Prime Contract") in relation to a cogeneration facility to be located at the Pastore Center, 600 New London Avenue, Cranston, Rhode Island (the "Project"). Noresco's surety on said Project was Lumbermen's Mutual Casualty Company ("Lumbermens"). Lumbermens issued a payment bond for the Project.

On March 22, 2002 Noresco entered into an agreement with Plaintiff to perform specific procurement and construction in relation to the Facility (the "ADPM Contract"). In order to carry out the terms of the ADPM Contract, Plaintiff retained subcontractors to complete the majority of work contemplated in the ADPM Contract ("Subcontractor Agreements"). During the course of performance under the terms of the ADPM Contract, numerous modifications, change orders and increases in the scope of work contemplated in the ADPM Contract were made which caused Plaintiff to incur additional costs. Said costs resulted from Noresco's failure to timely and properly perform its work under the Prime contract and its failure to provide Plaintiff with information pursuant to the ADPM Contract. Further, Noresco failed to pay Plaintiff for the work performed under the ADPM Contract, its increases in scope, and for additional costs incurred from general conditions and expenditures resulting from delay.

As a result of Noresco's failure to pay Plaintiff for work performed, increases in scope, and for other expenses incurred by delay, and as a result of Noresco's failure to issue change orders to Plaintiff, Plaintiff did not pay its subcontractors under the terms of the Subcontractor Agreements. Accordingly, various subcontractors filed actions against Noresco, Lumbermens, and Plaintiff and its sureties ("Subcontractor Lawsuits"). Over the objections of Plaintiff, Noresco and Lumbermens intentionally interfered with the Subcontractor Agreements, settling all of the Subcontractor Lawsuits by making payment

to the Subcontractors directly with improper motive and/or means. As a result, Plaintiff now seeks to amend the Complaint to add a cause of action for interference with contractual relations.

## II. ARGUMENT

### A. STANDARD FOR GRANTING LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) provides in relevant part that leave to amend a pleading "shall be freely given when justice so requires [.]" F.R.C.P. Rule 15(a). Federal Courts have continually interpreted this rule to manifest a "liberal amendment policy." United States ex rel. Rost v. Pfizer, Inc., 111507 FED1, 06-2627 (1st Cir. 2007) *cting* O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004); See also Wilson v. Mendon, 294 F.3d 1, 7 n. 16 (1st Cir. 2002); Mills v. Maine, 118 F.3d 37, 53 (1st Cir. 1997); and USM Corp. v. GKN Fasteners Ltd., 578 F.2d 21, 23 (1st Cir. 1978). The acceptable grounds for denial of a motion for leave to amend typically involve undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). Whenever leave to amend is requested before the end of discovery and neither party has moved for summary judgment, the issue of "futility" in bringing a motion for leave to amend should be analyzed under the liberal standards of an F.R.C.P. Rule 12(b)(6) motion. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). Under these circumstances, an "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Hatch Jr v. RI Dept for Children & Families, 274 F.3d 12, 19 (1st Cir. 2001) *citing* Rose v. Hartford

Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir. 2000). For the reasons set forth below, Plaintiff's proposed Count VII, interference with contractual relations, should survive a motion to dismiss. Consequently, Plaintiff's Motion for Leave to Amend its Complaint should be granted.

## B. ADP MARSHALL, INC. CAN, AND HAS, ESTABLISHED A PRIMA FACIE CASE FOR INTERFERENCE WITH CONTRACTUAL RELATIONS.

A prima facie showing of interference with contractual relations requires a plaintiff to allege and demonstrate (1) the existence of a contract; (2) knowledge of said contract by the interfering party; (3) intentional interference; and (4) resulting damages. Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000) *citing* Smith Development Corp. v. Bilow Enterprises, Inc., 112 R.I. 203, 211 (1973). Defendants wrongfully assert in their Opposition that Plaintiff did not plead in its proposed Amended Complaint that "Noresco intended to do harm to the subcontracts between [Plaintiff] and the subcontractors [.]" Such an assertion by the Defendants is clearly unfounded in light of the explicit language within Plaintiff's proposed Amended Complaint which repeatedly alleges variations of the phrase "knowing interference [.]" See ¶ 47 and 48 of Plaintiff's proposed Amended Complaint. The pleading is sufficient as to "intent" because "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and [because] the purpose of pleading is to facilitate a proper decision on the merits." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993) *citing* Conley v. Gibson, 355 U.S. 41, 48 (1957). Defendants assertions that Count VII of Plaintiff's proposed Amended Complaint not survive the applicable standard of review because Plaintiff used the word

"knowing" rather than "intentionally" is semantics with little basis in the law. Even in Rule 9 situations that require increased particularity in pleading matters, courts have held that "intent... and other condition of mind may be averred generally." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). Indeed, courts have stated that as a matter of public policy, such general averments, like the one presently under review by this Court, are acceptable in order to prevent parties from expending "resources unduly on motions to dismiss based on insufficiencies that are cured readily by amendment." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855 at 865. Defendants' Opposition appears to fall squarely within the notion of expending resources "unduly."

Given the Federal Courts' liberal approach to notice pleading, the Federal Courts' liberal approach to pleading intent even in matters requiring pleading with specificity, and given the public policy supporting the use of liberal pleading standards, Plaintiff has met the pleading requirement for "intent" by its use of the word "knowingly" and that "intent" which can be inferred in Count VII of its proposed Amended Complaint.

Likewise, Defendants have taken an unfounded stance arguing that Plaintiff has simply alleged Noresco tortiously interfered with the ADPM Contract, when in fact, Plaintiff's proposed Amended Complaint states clearly: "NORESCO knowingly *interfered with the Subcontractor Agreements* by making payment to the various subcontractors of ADPM[.]" See ¶ 47 of Plaintiff's proposed Amended Complaint (emphasis added). Count VII of Plaintiff's proposed Amended Complaint does not allege interference with Noresco's own contract with ADPM. See Count VII of Plaintiff's proposed Amended Complaint. Defendants' unsupported argument is merely a last ditch effort to prevent the Amendment of Plaintiff's Complaint in the face of the liberal

amendment policy. See O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004); See also Wilson v. Mendon, 294 F.3d 1, 7 n. 16 (1st Cir. 2002); Mills v. Maine, 118 F.3d 37, 53 (1st Cir. 1997); and USM Corp. v. GKN Fasteners Ltd., 578 F.2d 21, 23 (1st Cir. 1978).

More so, Defendants' argument that Plaintiff's proposed Count VII is defective on its face for failing to allege that Noresco interfered with the Subcontractor Agreements without the benefit of any legally recognizable privilege or other justification is simply an inaccurate interpretation of case precedent. The Defendants, in their Objection to Plaintiff's Motion for Leave to Amend Complaint, cite to Belliveau Bldg. Corp. v. O'Coin as requiring the Plaintiff to allege that Noresco interfered with the Subcontractor Agreements without a legally recognized privilege or other valid justification. Defendants' interpretation of Belliveau is simply wrong. Belliveau does not stand for the proposition that Plaintiff must allege Noresco interfered in such a way without privilege or justification to do so. Rather, the burden of proof with respect to justification or privilege in interfering with contractual relations rests clearly with the Defendant as an affirmative defense. See Mills, M.D. v. C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003) (where the Supreme Court of Rhode Island cited to Belliveau when stating that the defendant bears the burden of proving justification for interfering with contractual relations); See also New England Dry Association v. Rhode Island Housing and Mortgage Finance Corp., 893 F.Supp. 1180, 1192 (D.R.I. 1995). A myriad of Rhode Island opinions entered subsequent to Belliveau consistently list the Prima Facie elements of tortiuos interference with contractual relations as (1) the existence of a contract; (2) knowledge of said contract by the interfering party; (3) intentional interference; and (4)

damages resulting there from; without mention of a duty on Plaintiff's behalf to allege lack of privilege or justification. Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 906 (R.I. 2002); Mills, M.D. v. C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003); Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Company, 783 A.2d 398, 401 (R.I. 2001); and Avila v. Newport Grand Jai Alai, LLC, 2007 RISC 2006-299 (2007). Accordingly, Plaintiff is not required to allege as a prima facie element within Count VII of its proposed Amended Complaint that Noresco interfered with the Subcontractor Agreements of Plaintiff *without the benefit of any legally recognizable privilege or justification.*

Irrespective of whether Plaintiff is required to allege Noresco interfered *without the benefit of any legally recognizable privilege or justification*, such can be inferred. It is undisputed that allegations made in notice pleading jurisdictions are to be construed liberally. See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 64 (1st Cir. 2004). More so, at the pleading stage, "courts are to "presum[e] that general allegations embrace those specific facts that are necessary to support [a] claim." See Dubois v. United States Dept. of Agriculture, 102 F.3d 1273, 1281 (1st Cir. 1996) *citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, (1992). In this instance, Plaintiff has alleged that "Despite NORESCO's knowledge of the terms of the Subcontractor Agreements requiring ADPM to make payment to various subcontractors, NORESCO knowingly interfered with the Subcontractor Agreements by making payment to the various subcontractors of ADPM with improper motive or means." See ¶ 47 of Plaintiff's proposed Amended Complaint. Under the liberal auspices of notice pleading in the Federal Rules of Civil Procedure, paragraph 47 of Plaintiff's proposed Amended

Complaint infers, and thereby provides, sufficient notice that Defendant does not have justification nor a lawful privilege which would bar Plaintiff's claim of intentional interference with contractual relations.

## C. PLAINTIFF NEED NOT MAKE A SHOWING TO DEFINITIVELY ESTABLISH CAUSATION AT THIS JUNCTURE

As stated *supra*, whenever leave to amend is requested before the end of discovery and neither party has moved for summary judgment, the issue of "futility" in bringing a motion for leave to amend should be analyzed under the liberal standards of a F.R.C.P. Rule 12(b)(6) motion. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). When considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the district court will not grant such a motion unless it appears to a certainty that the plaintiff could not recover under any set of facts. See Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976); See also Gonzalez-Bernal v. United States, 907 F.2d 246, 248 (1st Cir. 1990). Accordingly, the only issue currently before this Court is whether Plaintiff's assertions that "[a]s a result of NORESCO's knowing interference with the Subcontractor Agreements, ADPM has been damaged[]", under any cognizable theory, would allow Plaintiff to recover against Noresco under a claim of Interference with Contractual Relations. Because there are a myriad of potentially viable legal theories by which Plaintiff may demonstrate damages stemming from Noresco's interference with contractual relations, including but not limited to, Noresco's avoidance of mark-ups on increases in scope which Noresco would have otherwise had to pay Plaintiff. As such, there is no question with respect to causation.

## III. CONCLUSION

Because Plaintiff has pled the elements required to establish a prima facie case for its claim of interference with contractual relations, and because Plaintiff need only, and has alleged causation which can be proven under a cognizable legal theory, this Court should grant Plaintiff leave to amend its Complaint.

Plaintiff,
ADP Marshall, Inc.,
By its attorneys,

Andrew J. Tine (#6756)
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Floor
Bristol, RI 02809
(401) 396-9002 – Tel.
(401) 396-9479 - Fax

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of January 2008 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

William M. Dolan, III
wdolan@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS, LLP**
121 South Main Street
Providence, RI 02903

Brian J. Lamoureux
blamoureux@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS, LLP**
121 South Main Street
Providence, RI 02903

Cheryl B. Pinarchick
cpinarchick@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS, LLP**
121 South Main Street
Providence, RI 02903

/s/ Andrew J. Tine_______