**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ADP MARSHALL, INC., a Division of Fluor NE, Inc.,<br><br>Plaintiff/Counterclaim-Defendant,<br>v.<br><br>NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendants/Counterclaim-Plaintiffs/ Third-Party Plaintiffs,<br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Third-Party Defendants. | C.A. No. 07-129-ML |

**DEFENDANTS' SUR-REPLY IN RESPONSE TO PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendants NORESCO, LLC ("Noresco") and Lumbermens Mutual Casualty Company ("Lumbermens") (collectively, "Defendants") hereby respond to *Plaintiff's Reply in Response to Defendants' Objection to Plaintiff's Motion for Leave to Amend Complaint* ("Plaintiff's Reply") because (1) the "liberal" legal standard upon which Plaintiff's Reply is premised is no longer applicable after Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) and (2) rather than respond to the Defendants' objection substantively, Plaintiff's Reply mischaracterizes numerous of Defendants' arguments advanced therein.

## I. Plaintiff's Proposed Amendment is Futile Under the *Twombly* Standard.

Plaintiff's Reply relies almost exclusively upon the proposition that "the issue of 'futility' in bringing a motion for leave to amend should be analyzed under the liberal standards of an F.R.C.P. Rule 12(b)(6) motion." Plaintiff's Reply, at 3. However, on May 21, 2007, the United States Supreme Court abrogated the liberal Rule 12(b)(6) pleading standard in favor of the more stringent requirement that claims asserted demonstrate "plausibility" of success. Twombly, 127 S. Ct. at 1965-1966. In fact, the Court expressly stated that the liberal pleading standard upon which the Plaintiff here relies "has earned its retirement" and "is best forgotten." Twombly, 127 S. Ct. at 1969. Thus, after Twombly, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (finding that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). See also Pascale Serv. Corp. v. International Truck and Engine Corp., et al, 2007 U.S. Dist. LEXIS 73339 at *10 (D.R.I. 2007) citing Twombly 127 S. Ct. at 1964-1965. (Dismissing claim for tortious interference with contractual relations because "[a]lthough the Plaintiff does assert the necessary legal elements of tortious interference as against [the Defendant], the Verified Complaint is devoid of facts supporting that claim.")

ADP Marshall, Inc.'s ("ADPM" or "Plaintiff") Proposed Count VII is nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Simply alleging that "NORESCO knowingly interfered with the Subcontractor Agreements by making direct payments to the various subcontractors of

ADPM with improper motives or means," Plaintiff's Proposed Amended Complaint, ¶ 47, is insufficient.[1] Pascale Serv. Corp. v. International Truck and Engine Corp., et al, supra, at *11, quoting DM Research, Inc. v. College of Am. Pathologists, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) ("Although a plaintiff must set forth a legal basis for his claims, the 'complaint must allege facts that establish all of the elements of the claim asserted.' … 'Bald assertions, subjective characterizations and legal conclusions are insufficient.'") Accordingly, the amendment of the complaint to add Proposed Count VII is futile.

## II. Plaintiff's Reply Mischaracterizes Defendants' Objections.

Plaintiff's Reply mischaracterizes Defendant's objections to Plaintiff's request for leave to amend its Complaint, and entirely misses the point. ADPM recognizes – as it must – that it cannot recover for tortious interference where the alleged interference occurred with respect to ADPM's *own* contract with Noresco. Accordingly, Plaintiff's Reply only tells half of its story by focusing solely on proposed paragraph 47 of its Complaint, which alleges that Noresco acted wrongfully by paying ADPM's subcontractors. ADPM utterly fails to mention the very next proposed paragraph (48), where ADPM lays out the ultimate conclusion that forms the basis for Noresco's alleged liability:

[1] ADPM argues that Defendants' differentiation between "knowledge" and "intent" "is semantics with little basis in the law." Plaintiff's Reply, at 5. However, there can be little dispute that there is a legal distinction between the two. "It is necessary … to distinguish between producing a result intentionally and producing it knowingly. … [T]here may be knowledge without intention, the consequences being foreknown as the inevitable concomitant of that which is desired, but being itself an object of repugnance rather than desire, and therefore not intended." John Salmond, *Jurisprudence* 380-381 (10th ed. 1947).

> **48. By interfering with said contractual arrangements by making direct payments to subcontractors, NORESCO knowingly avoided paying ADPM markup, fees and/or general conditions which were contractually due to ADPM as the general contractor for work performed by its subcontractors.**

It is this paragraph – 48 – that exposes the fatal flaw in ADPM's position. In a glaring concession, ADPM's use of the phrase "which were *contractually* due to ADPM" exposes its attempt to dress up its breach of contract claim as tortious interference. The harm that ADPM bemoans is *contractual* harm. By ignoring paragraph 48 in its Reply, ADPM tries to divert the Court's attention from ADPM's real claim here: that Noresco's payments to ADPM's subcontractors were somehow wrongful, *and* that these payments allegedly deprived ADPM of its *contractual* right (with Noresco) to mark-up those payments. This is a breach of contract claim, plain and simple, and ADPM has no tortious interference claim.

ADPM has similarly failed to allege that Noresco's payments to subcontractors were not legally privileged or justified. While ADPM disputes that a prima facie allegation of lack of justification is required,[2] there can be no doubt that ADPM's proposed claim for tortious interference with contractual relations fails if Noresco was justified in resolving the lawsuits filed by ADPM's subcontractors against the Defendants

---

[2] Plaintiff's Reply asserts that Defendants' "interpretation of Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622 (D.R.I. 2000)] is simply wrong." Plaintiff's Reply, at 6. There is little interpretation necessary where the Belliveau opinion contains the language quoted in Defendants' Memorandum: "aggrieved parties must ***allege*** and prove not only that the putative tortfeasors intended to do harm to the contract but that they did so without the benefit of any legally recognized privilege or other justification." Belliveau Bldg. Corp., 763 A.2d at 627 (emphasis added). See also Pascale Service Corp., 2007 U.S. Dist. LEXIS 73339 at *11, n.7 (D.R.I. 2007) citing Belliveau Bldg. Corp., 763 A.2d at 627 (In bringing a claim for interference with contractual relations, Rhode Island law *requires* that a plaintiff must assert that the defendant "intentionally, and without legitimate cause, business purpose, or privilege, interfered with said contract.")

and paying the subcontractors. Therefore, even if it is true that ADPM's proposed claim "infers, and thereby provides, sufficient notice that Defendant does not have justification…" Plaintiff's Reply, at 8, under Twombly, ADPM must aver facts which demonstrate the plausibility of its proposed Count VII. See, Twombly, 127 S. Ct. at 1964-1965 (Plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") ADPM has not pled – and cannot plead – that Noresco lacked a legally recognizable privilege or justification for resolving the subcontractor lawsuits and paying the Subcontractors, and therefore proposed Count VII is futile.

Finally, Plaintiff's Reply argues that ADPM is not required to establish causation in its proposed Count VII. The Twombly Court disagrees. Citing the familiar standard explicitly rejected by the Twombly Court, ADPM asserts that its proposed Count VII should not be rejected "unless it appears to a certainty that the plaintiff could not recover under any set of facts." Plaintiff's Reply, at 8, citing Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976). The "myriad of potentially viable legal theories by which Plaintiff may demonstrate damages," Plaintiff's Reply, at 8, are described in ADPM's proposed Count VII as "ADPM markup [sic], fees and/or general conditions," Plaintiff's Proposed Amended Complaint, ¶ 48, and "expos[ure] financially to certain subcontractors for an unknown amount," Plaintiff's Proposed Amended Complaint, ¶ 49. Unfortunately for ADPM, Twombly now requires plaintiffs to plead *facts* that establish the plausibility of its legal theories. Merely alleging that a "myriad" of such theories "may demonstrate damages" no longer suffices. Defendants' Memorandum demonstrates that there is no plausible basis in law or fact for these purported damages, and therefore

the mere mention of them in ADPM's proposed Count VII is insufficient under Twombly. See, Twombly, 127 S. Ct. at 1964-1965 ("Factual allegations must be enough to raise a right to relief above the speculative level...")

## III. Conclusion

There can be little doubt that the pleading standard prescribed by Bell Atl. Corp. v. Twombly must be applied to Plaintiff's Motion to Amend Its Complaint. For all the reasons set forth above and in Defendants' Objection to Plaintiff's Motion to Amend Its Complaint, ADPM's proposed Count VII has not, and cannot, meet the heightened Twombly standard. Rather than require the Defendants to further litigate a futile claim, Plaintiff's Motion to Amend Its Complaint should be denied, because "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 127 S. Ct. at 1966, quoting 5 C. Wright & A. Miller, Federal Practice and procedure, §1216, 233-234 (3d ed. 2004).

**NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,**
By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
wdolan@brownrudnick.com
Brian J. Lamoureux (#6211)
blamoureux@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS LLP**
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

Dated: January 28, 2008

*Pro Hac Vice:*
Cheryl B. Pinarchick
cpinarchick@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS LLP**
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Andrew J. Tine, Esq.
atine@tinelaw.com
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Fl.
Bristol, RI 02809

____________________________________

# 1537853 v1 - 080908/0004