UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ADP MARSHALL, INC., a division of Fluor, NE, Inc., Plaintiff, | : | |
| v. | : | CA 07-129 ML |
| NORESCO, LLC, and LUMBERMENS MUTUAL CASUALTY COMPANY, Defendants. | : | |

**MEMORANDUM AND ORDER**
**DENYING MOTION TO AMEND**

Before the Court is Plaintiff's Motion for Leave to Amend Complaint (Document ("Doc.") #19) ("Motion to Amend" or "Motion"). Defendants NORESCO, LLC ("Noresco"), and Lumbermens Mutual Casualty Company ("Lumbermens") (collectively, "Defendants") have filed an objection to the Motion. See Defendants' Objection to Plaintiff's Motion for Leave to Amend Complaint (Doc. #21) ("Objection"). A hearing was held on January 30, 2008. For the reasons stated herein, the Motion is denied.

**Background**

On September 25, 2000, Noresco and the State of Rhode Island Department of Mental Health, Retardation and Hospitals entered into a design and construction agreement (the "Prime Contract") in relation to a cogeneration facility (the "Facility") to be located at the Pastore Center in Cranston, Rhode Island (the "Project"). See Plaintiff's Reply in Response to Defendants' Objection to Plaintiff's Motion for Leave to Amend Complaint ("Plaintiff's Reply") at 1-2. Noresco's surety on the Project was Lumbermens, and Lumbermens issued a payment bond for the Project. See id. at 2.

On March 22, 2002, Noresco entered into an agreement with Plaintiff ADP Marshall, Inc. ("Plaintiff" or "ADPM"), to perform certain procurement and construction in relation to the Facility (the "ADPM Contract"). See id. The scope of the work to be performed under the ADPM Contract was less than the scope of the work performed under the Prime Contract. See Complaint (Doc. #1) ¶ 10.

In order to carry out the terms of the ADPM Contract, Plaintiff entered into various agreements with subcontractors ("Subcontractor Agreements") to complete the majority of the work contemplated in the ADPM Contract. See Plaintiff's Reply at 2. During the course of performance of the ADPM Contract, there were numerous modifications, change orders, and increases in the scope of the work contemplated in the ADPM Contract which caused Plaintiff to incur additional costs. See id. Plaintiff alleges that these costs were the result of Noresco's failure to: a) perform its work under the Prime Contract properly and on a timely basis and b) provide information to Plaintiff pursuant to the ADPM Contract on a timely basis. See id.; see also Complaint ¶ 12.

Noresco failed to fully pay Plaintiff for work performed under the Prime Contract. See Complaint ¶¶ 13-16. In particular, Noresco failed to pay Plaintiff for work and costs attributable to increases in the scope of the Prime Contract and to Noresco's failure to complete its own work and to provide information and direction to Plaintiff. See Plaintiff's Reply at 2. As a result of Noresco's failure to pay Plaintiff and to issue change orders[1] to Plaintiff, Plaintiff did not pay the

[1] A "Change Order" as defined in the ADPM Contract is "a written order executed in accordance with Article 7 hereof revising the Work, the time of performance, or the Fixed Price or any other aspect of this Agreement and which complies with the requirements of Article 7 of this Agreement." Defendants' Memorandum in Support of Objection to

subcontractors under the terms of the Subcontractor Agreements. See id. Various subcontractors then sued Noresco, Lumbermens, and Plaintiff and its sureties in the state superior court ("Subcontractor Lawsuits"). See id.; Defendants' Memorandum in Support of Objection to Plaintiff's Motion for Leave to Amend Complaint (Doc. #22) ("Defendants' Mem.") at 3.

On April 6, 2005, the Providence Superior Court granted a motion for summary judgment against Lumbermens in one of the Subcontractor Lawsuits. See Defendants' Mem. at 4 (citing Hydrochem Indus. Servs., Inc. v. Lumbermens Mut. Cas. Co., et al., Superior Court of Providence County, C.A. No. 2004-1992). Based on this decision, Lumbermens and Noresco concluded that it was likely Lumbermens would be required to pay the other subcontractors claim. See id., Exhibit ("Ex.") B (Transcript of Decision). Accordingly, between 2005 and 2007, Defendants settled all the subcontractors' claims against them in the Subcontractor Lawsuits, agreeing to make payments totaling approximately $840,000.[2] See Defendants' Mem. at 4-5.

Plaintiff filed the instant action against Defendants in this Court on April 6, 2007. See Docket. The claims against Noresco are based on breach of contract (Count I), book account (Count III), unjust enrichment (Count IV), and quantum meruit (Count V). See Complaint (Doc. #1). Plaintiff also seeks attorneys' fees from Noresco (Count VI). Plaintiff's claim against Lumbermens is based on its failure to make payment under the payment bond after Noresco failed to pay invoices submitted

---

Plaintiff's Motion for Leave to Amend Complaint (Doc. #22) ("Defendants' Mem."), Exhibit ("Ex.") A (ADPM Contract) at 2-3.

[2] Noresco had a duty to defend and indemnify Lumbermens against the Subcontractor Lawsuits. See Defendants' Mem. at 4. Thus, Noresco ultimately bore financial responsibility for all of Defendants' expenses in defending the Subcontractor Lawsuits and for any judgments entered in those cases against Defendants. See id.

by Plaintiff for labor and materials in connection with the Project (Count II).

By the instant Motion to Amend, Plaintiff seeks to add a claim against Noresco for tortious interference with contractual relations (Count VII). See Motion at 1. Specifically, Plaintiff alleges that Noresco knowingly interfered with the Subcontractor Agreements by making direct payments to the subcontractors "with improper motives or means." Proposed First Amended Complaint ("PFAC") ¶ 47.

**Law**

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleadings once as a matter of course before a responsive pleading is served. Otherwise, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 51 (1st Cir. 1998)(quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 at 611 (2d ed. 1990)); see also Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) ("Consent to file amended pleadings 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), unless the amendment would be futile or reward undue delay.").

"In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d at 126. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)(alteration in original)(internal quotation marks and citations omitted); see also Clark v. Boscher, ___ F.3d. ___, 2008 WL 250297, at *3 (Jan. 31, 2008)(stating that to survive Rule 12(b)(6) dismissal, a plaintiff's well-pleaded facts must possess enough heft to show that plaintiff is entitled to relief)(citing Twombley, 127 S.Ct. at 1959). "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level ...." Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004) (hereinafter "Wright & Miller")). "'[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action,[]' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (quoting Wright & Miller)(first four alterations in original)(footnote omitted). However, Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. Id. A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely. Id.

## Discussion

Defendants object to the Motion on two grounds. First, Defendants assert that Plaintiff has not pled the elements necessary to establish a prima facie case for interference with contractual relations. See Defendants' Mem. at 1. Second, Defendants contend that Plaintiff cannot make the requisite showing to establish causation. See id. Accordingly, Defendants

maintain that the amendment of the Complaint to add the proposed Count VII is futile and that, therefore, the Motion should be denied. See id.

**I. Sufficiency of Proposed Count VII**

In order to establish a prima facie case of tortious interference with contractual relations, the aggrieved party must show: 1) the existence of a contract; 2) the alleged wrongdoer's knowledge of the contract; 3) his intentional interference; and 4) damages resulting therefrom. Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000); see also Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003); Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 906 (R.I. 2002); W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co., 783 A.2d 398, 401 (R.I. 2001). Defendants, citing the Belliveau opinion, argue that Plaintiff's proposed Count VII is deficient because it pleads neither that Noresco intended to do harm to the contracts between Plaintiff and the subcontractors nor that Noresco did so without justification. See Defendants' Mem. at 7. Defendants posit that "[t]he reason for the absence of these required pleadings is that there is in this case no factual basis for them." Id.

**A. Intentionally vs. Knowingly**

Responding to this argument, Plaintiff contends that it has met the pleading requirement for "intent' by Plaintiff's use of the word "knowingly"[3] and that "intent" can be inferred in Count

---

[3] Paragraph 47 of the Proposed First Amended Complaint ("PFAC") alleges:

> 47. Despite NORESCO's knowledge of the existence of the Subcontractor Agreements and the payment terms and relationship between ADPM and its subcontractors, NORESCO **knowingly interfered** with the Subcontractor Agreements by making direct payment to the various subcontractors of ADPM with improper motives or means.

PFAC ¶ 47 (bold added).

VII of the PFAC. See Plaintiff's Reply at 5. Plaintiff argues that such inference is warranted "[g]iven the Federal Courts' liberal approach to notice pleading, the Federal Courts' liberal approach to pleading intent even in matters requiring pleading with specificity, and ... the public policy supporting the use of liberal pleading standards ...." Id. Plaintiff asserts that Noresco's claim that the pleading is deficient "because Plaintiff used the word 'knowing' rather than 'intentionally' is semantics with little basis in the law." Id. at 4-5. Plaintiff also argues that as a matter of public policy general averments, like the one in proposed Count VII, "are acceptable in order to prevent parties from expending 'resources unduly on motions to dismiss based on insufficiencies that are cured readily by amendment.'" Id. at 5 (quoting Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993)).

To the extent Plaintiff contends that there is no real difference between alleging that an act is done "knowingly" and alleging that it is done "intentionally," the Court has doubts that such contention is correct. See Garth v. Davis, 470 F.3d 702, 717 (7th Cir. 2006)(Rovner, J., dissenting)(noting the "distinction between intentionally and knowingly"); State v. Ganal, 917 P.2d 370, 400 (Haw. 1996)("*The difference between acting intentionally ... and knowingly ... is narrow but nonetheless distinct*. The distinction lies in the fact that intent is characterized by a conscious object to engage in certain conduct or cause a certain result whereas knowledge is characterized by an awareness that conduct is of a certain type or that a certain result will almost certainly obtain.")(quoting Commentary to Haw. Rev. Stat. § 702-206 (1985))(alterations in original); see also W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co., 783 A.2d at 402 ("To state a claim for intentional interference with contract when one insurer seeks reimbursement

from another with respect to a settled claim, the insured **must specifically allege that the insurer** seeking reimbursement ... **intended to disrupt the contractual relationship** of the insured ... and its insurer ... by submitting a reimbursement claim that lacked any colorable basis.")(bold added); id. (noting that plaintiff's complaint failed to allege that defendant intentionally interfered with plaintiff's contractual relationship with third party; id. (observing that plaintiff alleged "only that, in seeking reimbursement from [third party], [defendant] had harmed [plaintiff]").

Plaintiff cites Rule 9(b) for the proposition that "intent ... and other condition of mind may be averred generally," Plaintiff's Mem. at 5 (quoting Fed. R. Civ. P. 9(b))(alteration in original), and appears to suggest that the Rule supports Plaintiff's contention that an allegation that "Noresco knowingly interfered ...," PFAC ¶ 47, is equivalent to an allegation that "Noresco intentionally interfered," see Plaintiff's Reply at 5. The Court finds such suggestion unpersuasive. The fact that the Rule identifies "[m]alice, intent, knowledge ...," Fed. R. Civ. P. 9(b), as separate conditions of the mind suggests to this Court that there is a difference between doing an act "intentionally" and doing it "knowingly." Nevertheless, if this were the only failing of Plaintiff's proposed Count VII, the Court would either deny the Motion without prejudice or grant it with the direction that Plaintiff supply the missing allegation. However, as discussed hereafter, other deficiencies require that the Motion be denied.

**B. Absence of Privilege or Justification**

Plaintiff disputes that it is required to allege that Noresco interfered in the Subcontractor Agreements without the benefit of any legally recognizable privilege or other justification. See Plaintiff's Reply at 6. Plaintiff contends

that Defendants have misinterpreted Belliveau and asserts that the case "does not stand for the proposition that Plaintiff must allege Noresco interfered in such a way without privilege or justification to do so." Id. However, it is Plaintiff which appears to have misread Belliveau. The opinion plainly states that "to establish a prima facie case of intentional interference with contract, **aggrieved parties must allege** and prove not only that the putative tortfeasors intended to do harm to the contract but **that they did so without the benefit of any legally recognized privilege or other justification**." Belliveau, 763 A.2d at 627 (bold added). After making such a showing, the alleged offenders then "have the opportunity — and the burden — to prove that the contractual interference was indeed justified." Id. Thus, while the burden of proof on this issue falls on the alleged offender(s), the aggrieved party is still required to allege that the interference was not privileged or justified. Accordingly, Plaintiff's proposed Count VII is deficient because it fails to allege that Noresco's interference with the Subcontractor Agreements was "without the benefit of any legally recognized privilege or other justification."[4] Id.

---

[4] Plaintiff argues alternatively that the lack of any legally recognized privilege or justification can be inferred. See Plaintiff's Reply at 7. Given that Plaintiff alleges that Noresco interfered with the Subcontractor Agreements by making payments to the subcontractors, see PFAC ¶¶ 47-48, and that Defendants represent that the reason for making the payments was to settle the lawsuits which the subcontractors had brought against Defendants, see Defendants' Mem. at 4, the Court declines to draw such inference. There is case law holding that such payments are privileged or justified. See Henslee, Monek & Henslee v. D.M. Cent. Transp., Inc., 870 F.Supp. 764, 768 (E.D. Mich. 1994)(holding that because defendants in settling a lawsuit were acting to further legitimate business interests, they were not liable to Plaintiff for tortious interference with business relations); id. (stating that "[s]ettling a lawsuit is a legitimate business reason because there is a strong public policy in favor of settling lawsuits prior to trial"); Paparone v. Bankers Life & Casualty Co., 496 So.2d 865, 868 (Fla. Dist. Ct. App. 1986)(holding that defendant in a lawsuit was entitled to settle the lawsuit to

**II. Causation**

An even greater impediment to the Motion, however, is Plaintiff's inability to establish causation. Under Rhode Island law, Plaintiff must prove either that "but for" Noresco's interference Plaintiff would not have suffered injury or that "it is reasonably probable that but for the interference [Plaintiff] would not have been injured." APG, Inc. v. MCI Telecomms. Corp., 436 F.3d 294, 304 (1st Cir. 2006). The injury which Plaintiff alleges it sustained in proposed Count VII is: 1) that Noresco avoided paying Plaintiff "markup, fees and/or general conditions which were contractually due to ADPM as the general contractor for work performed by its subcontractors," PFAC ¶ 48, and 2) that Plaintiff has been "exposed financially to certain subcontractors for an unknown amount, given NORESCO'S failure to obtain releases in favor of ADPM for payments made directly by NORESCO to those subcontractors," id. ¶ 49.

With regard to the first alleged injury, to the extent that Plaintiff is entitled to markup, fees and/or other consideration from Noresco, that entitlement is based on rights arising from the ADPM Contract — not the Subcontractor Agreements. Thus, Plaintiff cannot show that it sustained this injury as a result of Noresco's alleged tortious interference with the Subcontractor

---

protect its own interests and was not liable for tortious interference with a real estate commission agreement even if the settlement caused harm to plaintiff who alleged such tortious interference); see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 394 (D.R.I. 1998)("Rhode Island courts favor the settlement of disputes outside of the litigation process."); cf. Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987)("We ... laud[] the prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation. As any litigator or judge can attest, the best case is a settled case.").

Agreements.[5] Moreover, even if Plaintiff's right to the markup, fees, etc., were somehow dependant upon the Subcontractor Agreements, Plaintiff would still have to prove that but for Defendants' payments to the subcontractors, there is a high probability that Noresco would have paid Plaintiff the markup, fees, etc. See APG, Inc. v. MCI Telecomms. Corp., 436 F.3d at 304 (construing "reasonably probable" requirement under Rhode Island law "to be a high level of probability — at least more likely than not — given the 'but for' starting point of the inquiry"). Given Defendants' representation that "Noresco has refused to pay the Change Order Requests because the work reflected therein was included in ADPM's scope of work under [the ADPM Contract] ...," Defendants' Mem. at 11, the Court agrees that the likelihood that Noresco would have paid Plaintiff for the Change Order Requests "but for" Noresco's payments to subcontractors is speculative or remote. Accordingly, the Court rejects Plaintiff's contention that the injury alleged in paragraph 48 of the PFAC was caused by Defendants' payments to the Subcontractors.

As for the claim that Plaintiff has been exposed financially because Noresco failed to obtain releases from the subcontractors in favor of Plaintiff, this contention suffers from two flaws. First, Plaintiff's exposure to subcontractor claims was not caused by Defendants' payments to the subcontractors. It was caused by Plaintiff's failure to pay the subcontractors, and such

---

[5] The Court is compelled to agree with Defendants' observation, at least as to this injury, that Plaintiff, in essence, is arguing that Noresco tortiously interfered with its own contract with Plaintiff. Such interference is a legal impossibility. See Robertson Stephens, Inc. v. Chubb Corp., 473 F.Supp.2d 265, 275 (D.R.I. 2007) (stating that "it is well-settled that a party cannot tortiously interfere with its own contract")(citing URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ., 915 F.Supp. 1267, 1288-89 (D.R.I. 1996)).

exposure existed prior to Defendants' payments to the subcontractors. Thus, Plaintiff cannot show that "but for" Defendants' payments to the subcontractors, there is a high probability that Plaintiff would not have had this financial exposure. See APG, Inc. v. MCI Telecomms. Corp., 436 F.3d at 304. Second, at the Court's direction, Defendants have submitted copies of the settlement agreements which have been designated as Defendants' Hearing Ex. 1. After reviewing these documents, the Court concludes that the possibility that Plaintiff has been exposed financially by virtue of Noresco's settlement of the Subcontractor Lawsuits is, at most, remote and speculative. Thus, this second claim of injury also fails.

Plaintiff appears to assert that if Noresco's interference with the Subcontractor Agreements caused Plaintiff to be damaged "under any cognizable theory ...," Plaintiff's Reply at 8, Plaintiff is not required to plead the injury or damages with any degree of specificity or particularity, see id. (stating that "there are a myriad of potentially viable legal theories by which Plaintiff may demonstrate damages stemming from Noresco's interference with contractual relations, including but not limited to, Noresco's avoidance of mark-ups on increases in scope which Noresco would have otherwise had to pay Plaintiff"). The Court disagrees. Plaintiff is required to plead that he suffered damages as a result of Defendants' alleged interference with the Subcontractor Agreements. Belliveau, 763 A.2d at 627, Mills v. C.H.I.L.D., Inc., 837 A.2d at 721. If the damages which Plaintiff alleges (i.e., Noresco's avoidance of markups, etc., and Plaintiff's exposure to subcontractor claims, see PFAC ¶¶ 48-49) could not have resulted from the interference with the Subcontractor Agreements, Plaintiff has failed to adequately plead a claim for tortious interference with contractual relations.

To the extent that Plaintiff contends that a complaint for tortious interference with contractual relations may aver damages generally without specifying the nature of those damages, the Court rejects such contention. See Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")(alteration in original); id. at 1969 (holding that rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief "has earned its retirement" and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard").

**Summary**

Plaintiff's proposed Amended Complaint is deficient because it fails to allege that Noresco intentionally interfered with the Subcontractor Agreements and that Noresco did so without justification. More significantly, Plaintiff is unable to establish that Noresco's alleged interference with the Subcontractor Agreements caused the damages about which Plaintiff complains. Even if those damages were caused by Defendants' actions in settling the Subcontractor Lawsuits, Noresco's action is settling such lawsuits was privileged and cannot be the basis for a claim of tortious interference with contractual relations. Accordingly, Plaintiff's attempt to add a claim for tortious interference with contractual relations is futile.

**Conclusion**

In short, Plaintiff's proposed Amended Complaint, which seeks to add a count for tortious interference with contractual relations, fails to state a claim upon which relief can be granted. Accordingly, the Motion to Amend is DENIED as futile.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 6, 2008