UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADP MARSHALL, INC., a Division of Fluor NE, Inc.,<br><br>Plaintiff/Counterclaim-Defendant,<br>v.<br><br>NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendants/Counterclaim-Plaintiffs/ Third-Party Plaintiffs,<br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Third-Party Defendants. | C.A. No. 07-129-ML |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION TO EXTEND THE DEADLINE FOR EXPERT WITNESS DISCLOSURES REQUIRED BY FED. R. CIV. P. 26(a)(2)**

## I. Introduction

Defendants NORESCO, LLC ("Noresco") and Lumbermens Mutual Casualty Company ("Lumbermens") (collectively "Defendants") submit this memorandum in support of their Objection to Plaintiff ADP Marshall, Inc.'s ("ADP") Motion to Extend the Deadline for Expert Witness Disclosures Required by Fed. R. Civ. P. 26(a)(2) ("ADP's Motion").

By the Motion, ADP seeks a six-week extension of time for the disclosure of its expert witnesses on the limited grounds that (i) the parties agreed to engage in early dispute resolution on November 14, 2007 and ADP therefore waited to serve its written

discovery upon the Defendants and (ii) the parties agreed to a thirty (30) day extension of time to respond to written discovery. By seeking an extension on such limited grounds, ADP apparently hopes to divert attention from its inexplicable and longstanding failure to procure and identify an expert essential to any effort to prove delay and other claims that first arose more than four (4) years ago. These same claims were also asserted by ADP in cases filed in the Superior Court of Providence County beginning in 2004. In those cases and in this case, ADP had more than ample time and opportunity to take any discovery necessary to the identification and retention of an expert witness. That ADP has been more than dilatory in the investigation and preparation of claims that have existed and been known to ADP for years is no basis for extension of time to identify an expert.

Moreover, ADP has, or should have, in its possession the factual information necessary for an expert to evaluate its claims. ADP's assertion that it requires factual information from the Defendants in order to prepare its expert disclosure is therefore specious. Finally, any further delay in the prosecution and resolution of ADP's claims will prejudice the Defendants.[1]

## II. **Factual Background**

This case arises from a September 25, 2000, construction and renovation contract between Noresco and the State of Rhode Island Department of Mental Health, Retardation and Hospitals (the "State") related to an energy cogeneration facility at the

---

[1] The deadline for filing Defendants' Objection to ADP's Motion is Monday, February 25, 2008. On Friday, February 22, 2008, counsel for the Defendants initiated a telephone conference with counsel for ADP regarding deficiencies in ADP's responses to Noresco's written discovery requests. During that telephone conference, ADP's counsel divulged for the first time that ADP's expert had become unavailable because of health reasons, but that ADP did not think it appropriate to include disclosure of that fact in the Motion. Although Defendants' counsel have no reason to doubt the veracity of that statement and would undoubtedly recommend to their clients that they consider consenting to an extension of time on that basis, assuming it could be reasonably verified, the statement does not appear in the Motion and Defendants therefore felt compelled to file this Objection.

Pastore Centre in Cranston, Rhode Island (the "Project").[2] On or about March 22, 2002, Noresco and ADP executed an agreement pursuant to which ADP became the Project's general contractor (the "Agreement"). (A true and accurate copy of the Pastore Center Cogeneration Project Procurement and Construction Agreement Between Noresco, LLC and ADP Marshall, Inc. is attached hereto as Exhibit A.)

Under the Agreement, ADP was responsible for overseeing the day-to-day work on the Project, maintaining the Project schedules and ensuring that the various Milestone Deadlines set forth in the Agreement were met. The majority of the work on the Project was performed by subcontractors retained by ADP. However, when ADP refused to pay many of its subcontractors for work they performed, various ADP subcontractors brought claims against ADP, Noresco and/or Lumbermens in Rhode Island Superior Court, seeking payment for work performed on the Project under their respective subcontracts with ADP ("Subcontractor Cases").

On or about March 4, 2004, Arden Engineering Constructors, LLC ("Arden"), one of the primary subcontractors retained by ADP on the Project, filed the first of the Subcontractor Cases.[3] On or about April 22, 2004, ADP filed cross-claims against Noresco and Lumbermens in the Arden Action. (A true and accurate copy of ADP's Answer to Arden's Amended Complaint and Cross-Claims is attached hereto as Exhibit B.) ADP's numerous cross-claims can essentially be whittled down to: (i) damages arising from delays allegedly caused by Noresco; and (ii) damages arising from an alleged failure by Noresco to approve change orders relating to the scope of the Project.

---

[2] Lumbermens acted as Noresco's surety on the Project and issued a payment bond with respect to the Project.

[3] Arden Engineering Constructors, LLC v. Lumbermens Mutual Casualty Company, et al., Superior Court of Providence County, C.A. No. 04-1208 ("Arden Action").

By ADP's own admission, at least some portion of its delay claim dates as far back as *2002*. Between July 19, 2004 and April 27, 2005, ADP filed cross-claims in four (4) other Subcontractor Cases, all containing allegations identical to those in the Arden Action.[4]

On or about June 22, 2004, Arden noticed the deposition of Noresco's Vice President of Construction, Wade Carleton. At that deposition, counsel for ADP examined Mr. Carleton regarding construction delays and Noresco's rejection of change orders submitted by ADP. *In the 2 ½ years that the Subcontractor Cases were pending, that is the only discovery ADP took in advancement of its claims.*[5]

Some seven (7) months after ADP's cross-claims in the Subcontractor Cases were dismissed, and on the cusp of the expiration of the statute of limitations on certain of its claims, ADP re-filed the claims alleged in the Subcontractor Cases in the present action on April 6, 2007. (Compare the Arden Action cross-claim at Exhibit B, ¶¶ 9, 12 with ¶¶ 11-13 of ADP's present complaint, a true and correct copy of which is attached hereto at Exhibit C.) The parties exchanged initial disclosures on July 27, 2007. At any point thereafter ADP could have propounded discovery upon the Defendants, but it did not. Instead, ADP again elected to sit on its heels and do nothing in pursuit of its claim.

On September 7, 2007, the Court held a Rule 16 Conference at which time the Court established the pre-trial schedule, including expert disclosures, without objection

---

[4] ADP filed cross-claims containing identical allegations in the following actions: Unique Metal Works, Inc. v. Lumbermens Mutual Casualty Company et al., Superior Court of Providence County, C.A. No. 04-2821; Process Construction Management, Inc. v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 04-3378; Northeast Steel Corporation, Inc. v. Lumbermens Mutual Casualty Company, et al., Superior Court of Providence County, C.A. No. 05-983; R.P. Iannuccillo & Sons Construction Company v. Lumbermens Mutual Casualty Company, Superior Court of Providence County, C.A. No. 05-0984;

[5] On or about September 18, 2006, ADP's cross-claims in the Subcontractor Cases were dismissed based upon a forum selection clause in the Agreement which requires such claims to be filed in Federal Court.

from counsel for ADP. (A true and correct copy of the Pretrial Order is attached hereto as Exhibit D.) At the conference, the parties agreed to engage in mediation with Magistrate Judge Robert W. Lovegreen. The mediation took place on November 14, 2007. However, in advance of the mediation, the parties agreed to engage in informal discovery. During that process, ADP sought numerous categories of documents from Noresco, which Noresco provided. However, ADP did not request a single document concerning its delay and/or change order claims. Rather, *all* of the documents requested relate to *Noresco's* damages disclosure.

The parties were unable to resolve their disputes at mediation. Knowing that its expert disclosures were due on March 3, 2008, ADP again chose not to pursue discovery on its claims. It was not until December 11th, after Noresco served ADP with discovery, that ADP first served interrogatories upon Noresco and not until more than two weeks later, on December 28th, that ADP first served document requests upon Noresco. Then days before its discovery responses were due to Noresco, ADP asked Noresco for a 30-day extension of time to respond to the discovery. Noresco agreed on the condition that it be granted a reciprocal 30-day extension to respond to discovery and the parties jointly moved to extend the time to respond to the outstanding written discovery. At no time during those discussions did ADP advise Noresco that, as a result, it would be seeking an extension of time on its expert disclosures.

## III. Argument

### A. ADP has had ample time and opportunity to investigate its claims and prepare any expert disclosures.

The fact that ADP has been dilatory in obtaining whatever information it thinks may be necessary to comply with its expert disclosure obligations is not a sufficient basis

for moving ADP's expert disclosure deadline. ADP has been asserting claims against the Defendants *for almost six (6) years*. The parties have been engaged in litigation in one forum or another *during much of the past four (4) years*. Notwithstanding, it is only within the past two months that ADP has elected to seek any type of formal, written discovery from the Defendants. Thus, ADP has had ample time and opportunity to investigate its claims and take whatever discovery it believes is necessary in order to fulfill its expert disclosure obligations.

**B. ADP's assertion that it requires factual information from Noresco in order to prepare its expert disclosure is specious.**

ADP has not identified a single piece of information it requires from Noresco in order for an expert to evaluate ADP's own claims. The reason for this (and possibly the reason ADP has been so dilatory in seeking any discovery from Noresco) is that ADP has, or should have, in its possession, custody, or control all of the factual information necessary for an expert to evaluate its claims. It is generally recognized that claims for increased costs due to construction delay or increased scope of work require the *plaintiff* to prove the following: (i) that his work was delayed or that extra work was required; (ii) that he suffered increased costs as a result of the delay or demand for extra work; (iii) the amount of the increased costs; and (iv) that the defendant caused the delay or requested the extra work. See Matthew Bender & Company, Inc., Construction Law, Ch. 11.02(2)(a)(ii), 2007. To the extent it exists, ADP should already be in possession of the factual information necessary to evaluate each of these elements.

With regard to purported delays, as the general contractor, ADP was responsible for overseeing the day-to-day work on the Project, maintaining the Project schedules and ensuring that the various Milestone Deadlines set forth in the Agreement were met.

Accordingly, ADP should have the information necessary for an expert to evaluate ADP's delay claim and to determine what damages, if any, ADP suffered as a result of any delays allegedly caused by Noresco. As to the purported additional work required of ADP, the Agreement itself sets forth the scope of work required to be performed by ADP and the change orders *submitted by ADP to Noresco* allegedly describe the out-of-scope work ADP claims it was required to do and the costs associated with that work. Thus, ADP should have all of the information necessary for an expert to analyze ADP's claims and ADP's contention that it requires factual information from Noresco before it can provide its expert disclosure is specious.

### C. The Defendants will be further prejudiced by an extension of the expert disclosure deadline.

ADP has been asserting claims against Noresco for nearly six (6) years and has been engaged in litigation with Noresco in one forum or another for the past four (4) years. Noresco has spent hundreds of thousands of dollars in legal fees defending against ADP's claims. During that time, Noresco has repeatedly requested that ADP provide it with some sort of expert report in support of its claims (as Noresco believes ADP is required to do in support of its claims) but to no avail. See Lenkin-N Limited Partnership v. Barry Nace, 568 A.2d 474, 477-478 (D.C. 1990) (finding that "[t]he fatal defect in plaintiff's case was its failure to adduce any evidence by experts in commercial office construction about the reasonableness of the [construction] delay.") See also, Beard v. Goodyear Tire & Rubber Co., 587 A.2d 195 (D.C. 1991) (quoting Lenkin-N Limited Partnership). With each additional day that passes, Noresco is prejudiced by continuing to incur substantial fees and expenses in defending against bogus claims which Noresco

believes cannot be supported by credible expert testimony. The time has finally come for ADP to make its disclosures and any further delay will prejudice the Defendants.

Additionally, it is clear from ADP's wholly inadequate responses to Noresco's discovery requests that ADP's dilatory conduct is not limited to the investigation of its claims and the identification of an expert. For example, in response to an interrogatory propounded by Noresco, ADP admits that "the location of the actual computers and other storage devices used on the project is unknown." (See Response No. 12 of ADP Marshall, Inc.'s Responses to Noresco, LLC's First Set of Interrogatories to Plaintiff, a true and correct copy of which is attached hereto as Exhibit E.) Notwithstanding, in response to numerous requests seeking documents concerning ADP's various claims, ADP refers Noresco to 20+ boxes of "project records" ADP intends to make available for inspection. (See ADP Marshall, Inc.'s Responses to Noresco, LLC's First Request for Production of Documents and Things at Exhibit F.) However, ADP's interrogatory response reveals that such records do not include relevant electronic data. Thus, ADP's ongoing delay in prosecuting its claims has already prejudiced the Defendants. An extension of the expert disclosure deadline would serve only to exacerbate that prejudice.

**D. The deadlines set forth in the Pretrial Order are clear.**

In addition to seeking an extension of time to make its own expert disclosures, ADP's Motion seeks "clarification" of whether the Defendants, as plaintiffs-in-counterclaim, are required to disclose their expert witnesses on March 3, 2008 as well. At the time the Pretrial Order was entered, the Defendants' counterclaims were on file. The Pretrial Order states that "*Plaintiff* shall make its expert witness disclosures as required by Fed.R.Civ.P. 26(a)(2) by March 3, 2008. *Defendant* shall make its expert

witness disclosures as required by Fed.R.Civ.P. 26(a)(2) by April 15, 2008." To interpret the Pretrial Order as ADP suggests would render the distinction between the plaintiff and the defendant, and the deadlines applicable to each, meaningless.

## IV. Conclusion

For the reasons set forth herein, this Honorable Court should deny Plaintiff's Motion to Extend the Deadline for Expert Witness Disclosure Required by Fed.R.Civ.P. 26(a)(2), and further order that "Plaintiff" for purposes of the Pretrial Order does not include the Defendants, as plaintiffs-in-counterclaim.

**NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,**
By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
wdolan@brownrudnick.com
Brian J. Lamoureux (#6211)
blamoureux@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS LLP**
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

Dated: February 25, 2008

*Pro Hac Vice*:
Cheryl B. Pinarchick
cpinarchick@brownrudnick.com
Matthew P. Sgro
msgro@brownrudnick.com
**BROWN RUDNICK BERLACK ISRAELS LLP**
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 Fax

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Andrew J. Tine, Esq.
atine@tinelaw.com
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Fl.
Bristol, RI 02809

/s/ Brian J. Lamoureux

# 1542492 - 080908/0004