**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ADP MARSHALL, INC., a Division of Fluor NE, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>NORESCO, LLC and LUMBERMEN'S MUTUAL CASUALTY COMPANY,<br><br>Defendants. | C.A. No. 07-129-ML |

**Defendants' Memorandum in Support of Motion to Compel the Production of Documents and for Additional Time to Complete Plaintiff's Rule 30(b)(6) Deposition**

Pursuant to Fed. R. Civ. P. 26, 30(d), 34 and 37, the Defendants, NORESCO, LLC ("NORESCO") and Lumbermens Mutual Casualty Company ("Lumbermen's"), hereby request that this Court order the Plaintiff, ADP Marshall, Inc. ("ADPM"), to (1) produce documents consistent with its agreement to do so, and consistent with its obligation under FRCP 34; (2) supplement its initial disclosure to provide the last known addresses of persons identified by ADPM to be persons who may have discoverable information that ADPM may use to support its claims or defenses and to accurately reflect ADPM'S damages claims; and (3) produce a witness to testify as to what efforts, if any, ADPM took to search for electronically stored information responsive to Defendants' document requests. The Defendants have been chasing ADPM for months

to provide these documents and information but to no avail. With the discovery deadline only weeks away, ADPM's refusals and failures cannot go unresolved.[1]

Additionally, pursuant to Fed. R. Civ. P. 26, 30 and 37, the Defendants request that this Court enter an order requiring ADPM to produce David Benoit, one of ADPM's Rule 30(b)(6) corporate designees, to give testimony in excess of seven hours. The Defendants require additional time to complete the deposition based upon (i) the complexity and sheer number of matters at issue for which Mr. Benoit has been designated to testify; and (ii) ADPM's impairment of the Defendants' ability to effectively complete ADPM's Rule 30(b)(6) deposition through its dilatory and incomplete document production and damages disclosures.

## I. FACTUAL BACKGROUND

### A. Underlying Facts

On or about September 25, 2000, NORESCO and the State of Rhode Island Department of Mental Health, Retardation and Hospitals (the "State") entered into a contract for the construction and renovation of an energy cogeneration facility at the Pastore Centre in Cranston, Rhode Island (the "Project").[2]

On or about April 12, 2002, NORESCO and ADPM executed an agreement pursuant to which ADPM became the Project's general contractor (the "Agreement").[3] At the time the Agreement was executed, the design drawings for the Project were 75% complete. Notwithstanding, based upon ADPM's extensive pre-contract review and

---

[1] The discovery deadline is September 15, 2008. However, by agreement, the parties will conduct expert depositions through September 19, 2008.
[2] Lumbermen's acted as NORESCO's surety on the Project and issued a payment bond with respect to the Project.
[3] A true and accurate copy of the Agreement is attached hereto as Exhibit A. Although the Agreement is dated March 22, 2002, upon information and belief, the Agreement was not signed until April 12, 2002.

estimation process, ADPM agreed to complete its work on the Project in accordance with certain milestone deadlines for a fixed price. ADPM further agreed that "[i]ncidental items which are essential for complete and operable [equipment], but which may not be specifically described in the specifications or not shown in the drawings, shall be included and shall be the best available quality at no addition cost to NORESCO or to the [State]." Exhibit A, Attachment I, ¶ 3.

During the course of the Project, ADPM improperly submitted numerous change order requests to NORESCO seeking additional moneys for work within ADPM's original scope of work under the Agreement. Accordingly, NORESCO rejected those change order requests. In this litigation, ADPM is seeking, *inter alia*, $1,442,877 for approximately 61 change order requests[4] properly rejected by NORESCO.[5] The change order requests for which ADPM is seeking damages include, but are not limited to, damages for delays on the Project as well as for electrical, mechanical and asbestos abatement work performed by ADPM's subcontractors. To succeed on its 62 change order claims, ADPM must prove for each one that (i) the additional scope of work described in the change order request is the result of changes to the design of the Project which materially differ from the 75% design documents; (ii) that some entity other than

---

[4] After months of requesting that ADPM update its damages disclosure to accurately reflect which change order requests are at issue and their amounts, on August 13, 2008 (and after ADPM's Rule 30(b)(6) deposition), ADPM provided the Defendants with Plaintiff's Amended Rule 26(a)(1)(C) Disclosures ("Amended Disclosure"). The Amended Disclosure references 62 change order requests as opposed to the 66 listed in the original disclosure. A true and accurate copy of the Amended Disclosure is attached hereto as Exhibit B. However, in response to questions posed by counsel for NORESCO regarding the Amended Disclosure, counsel for ADPM advised that ADPM would be further amending its damages disclosure. ADPM's Second Amended Damages Disclosure was served on August 25, 2008. The Second Amended Damages Disclosure removed yet another change order request from ADPM's claim. A true and accurate copy of the Second Amended Disclosure is attached hereto as Exhibit C. Only three weeks before the discovery deadline, it remains unclear whether ADPM will be further amending its damages claim.

[5] ADPM is seeking an additional $1,227,105 in damages for amounts ADPM claims it is owed under the Agreement as well as amounts for time extensions and general conditions "yet to be determined," legal fees and interest.

ADPM or its subcontractors caused the alleged delays; and/or (iii) that such delays fall within an exception to the no damages for delay clause of the Agreement. See Exhibit A, §§1.60, 7.3 and Attachment I. The Defendants have retained an expert on the issue of whether NORESCO properly rejected change order requests for additional scopes of work. ADPM has not.[6] Rather, it appears that ADPM intends to rely upon fact witnesses to support its claims.

ADPM did not meet the milestone deadlines set forth in the Agreement and, to this day, has not completed its scope of work under the Agreement. As a result, NORESCO has filed counterclaims against ADPM for damages due to NORESCO under the terms of the Agreement.

**B. Discovery Disputes**

*1. Document Requests*

NORESCO served its First Request for the Production of Documents and Things to Plaintiff on ADPM on October 11, 2007, over 10 months ago. Included in the First Request for the Production of Documents were requests for (a) copies of the document retention policy(ies) of ADP, Fluor NE, Inc., and Fluor Corporation[7]; and (b) "as-built" drawings for the Project. See Nos. 16 & 32 of NORESCO's First Request for the Production of Documents to Plaintiff, a true and accurate copy of which is attached hereto as Exhibit D. Although ADPM initially objected to the requests, it ultimately agreed to (i) determine whether such documents exist; (ii) produce the document retention policy(ies), if any; and (iii) provide the Defendants with list of the as-built drawings. However, months later, ADPM continues to fail or refuse to give a straight

[6] ADPM has offered an expert solely on the issue of delay damages and the deadline for expert disclosures has now passed.
[7] ADPM is an operating company of Fluor Corporation. Deposition of David Pereira, p. 15, ll. 7-25.

answer from ADPM as to whether the documents exist. To date, neither the policy(ies) nor the list have been produced.

a. Document Retention Policies

In response to NORESCO's request for the document retention policies, ADPM first claimed that these document retention policies were contained in ADPM's "project records," which were made available for review by NORESCO. See Response to Request 32 of Plaintiff's responses to Defendant's First Request for the Production of Documents, a true and accurate copy of which is attached as Exhibit E. When a thorough review of the project records revealed no document retention policies, NORESCO requested that ADPM determine the existence of these documents, which ADPM's counsel agreed to do. A true and accurate copy of the May 19, 2008 letter from M. Sgro to A. Tine is attached as Exhibit F. ADPM later responded by stating that document retention policies were "inapplicable" to the Project. A true and accurate copy of the May 21, 2008 letter from A. Tine to M. Sgro is attached as Exhibit G.

However, on May 30, 2008, one of ADPM's Rule 30(b)(6) designees testified that there was, in fact, a written document retention policy applicable to the Project files. Counsel for ADPM then agreed, on the record, to request a copy from ADPM. Exhibit H, Excerpts of Transcript of Deposition of David Pereira ("Pereira"), p. 154, ll. 10-21, p. 155, ll. 23-25, p. 156, ll. 1-2. Thereafter, the Defendants made repeated requests that the policy be provided. True and accurate copies of the June 4, 2008 and June 18, 2008 letters from M. Sgro to A. Tine are attached as Exhibit I and Exhibit J. On or about June 20, 2008, counsel for ADPM represented to the Defendants that they would be produced within a week. A true and accurate copy of the June 20, 2008 letter from A. Tine to M.

Sgro is attached as Exhibit K. More than sixty (60) days later, and with the discovery deadline of September 15, 2008 looming, ADPM has yet to produce the policy. A true and accurate copy of the August 11, 2008 letter from M. Sgro to A. Tine is attached as Exhibit L.

b. As-built Drawings

The Agreement between NORESCO and ADPM required ADPM to provide "record drawings," (also known as "as-built drawings") for the Project.[8] See Exhibit A, § 3.32. The Defendants contend that ADPM breached the Agreement by failing to provide the final as-built drawings. To the extent that ADPM does not have as-built drawings for the Project, then NORESCO may be forced to retain engineers to recreate the drawings at an estimated cost of $100,000. Thus, the extent to which ADPM has the final as-built drawings is directly at issue in this matter.

In response to NORESCO's specific request that as-built drawings be produced, ADPM claimed that these documents were located in the "project records." See Exhibit E, Response to Request 16. However, when representatives of NORESCO attempted to identify the as-builts among the dozens of sets of drawings, constituting hundreds of pages, haphazardly rolled together, it was impossible to do so. There is no reasonable method by which NORESCO could determine which of the drawings if any, are final as-built drawings. Accordingly, NORESCO requested that ADPM identify for NORESCO which of the drawings are final as-built drawings. On or about June 20, 2008, ADPM agreed to undertake this review. See Exhibit K. Over two months later, ADPM has still

[8] As-built drawings reflect the final, as-built systems of the Project. These drawings should have been provided to ADPM by each of its subcontractors as they completed their work on the Project. The as-built drawings are extremely important because they must be reviewed by the State before a Certificate of Occupancy can be issued for the Project.

given no indication as to which as-built drawings it has, if any. See Exhibit L. Simply put, ADPM should be compelled to either produce the as-built drawings or acknowledge that they do not exist.

*2. Initial Disclosure*

In its Rule 26(a)(1) Initial Disclosures, ADPM identified 19 persons who are likely to have discoverable information that ADPM may use to support its claims or defenses. Most of these persons are either current or former ADPM employees or ADPM subcontractors on the Project. A true and accurate copy of ADPM's Rule 26(a)(1) Initial Disclosures is attached as Exhibit M. Contrary to the Fed. R. Civ. P. 26 and despite repeated requests from the Defendants, ADPM has failed or refused to provide the last known address for any of these witnesses. See Exhibits F, J, and L.

*3. Testimony Regarding the Search for Electronically Stored Information*

NORESCO's first request for documents and first set of interrogatories to the Plaintiff seek documents and information concerning the current location of all computers, external hard drives, servers, and/or other electronic storage devices which contain or may contain information related to the Project[9]. See Exhibit D, Request 34; see also Defendants' First Set of Interrogatories, Interrogatory 12, a true and accurate copy of which is attached as Exhibit N. In response to those requests, ADPM claimed that "[t]he location of the actual computers and other storage devices used on the project is unknown," See Plaintiff's Responses to Defendants' First Set of Interrogatories, Answer to Interrogatory 12, a true and accurate copy of which is attached as Exhibit O, and that ADPM was undertaking efforts to locate this hardware. See Exhibit E, Response

[9] The location of such hardware is particularly relevant to this case because ADPM closed its Rhode Island office, where the hardware was previously stored, since the disputes between ADPM and NORESCO arose.

34. Upon review of ADPM's hard copy Project records, it became apparent that many of the thousands of pages of e-mails between NORESCO and ADPM personnel produced by NORESCO in this litigation were not contained in the documents produced by ADPM. NORESCO therefore asked ADPM to describe what search, if any, had been made to determine the whereabouts of electronic documents related to the Project. A true and accurate copy of the May 21, 2008 letter from M. Sgro to A. Tine is attached as Exhibit P; see also Exhibit F. ADPM failed or refused to respond to this request.

On May 30th, the Rule 30(b)(6) witness designated to testify as to ADPM's search for documents in response to NORESCO's document requests and the current location of electronically stored information generated or maintained by ADPM in connection with the Project testified that he had no knowledge of any search being conducted.[10] Exhibit H, pp. 152-153, ll. 24-25, 1-3.

Since the deposition in May, NORESCO has repeatedly requested that ADPM advise as to whether a search for electronically stored information was undertaken in accordance with ADPM's obligations under the Federal Rules of Civil Procedure. See Exhibit I and Exhibit J. Thereafter, ADPM produced three (3) disks of electronic files (many of which cannot be viewed by NORESCO without first obtaining additional software) without any clear indication what steps were taken by ADPM to locate this information or the source of these materials. As a result, the Defendants have no confidence that ADPM has fulfilled its obligations to conduct a reasonable search for

[10] David Pereira was specifically designated by ADPM to testify as to: (1) ADPM's search for documents in response to NORESCO's First Request for Production of Documents; (2) the current location(s) of all electronic documents generated or maintained by ADPM concerning the Project; (3) ADPM's document and retention policies; and (4) any steps taken by ADPM to identify, secure and avoid the spoliation of materials relevant to the long-standing disputes between the parties. A true and accurate copy of the May 29, 2008 letter from A. Tine to M. Sgro and C. Pinarchick is attached as Exhibit Q.

electronically filed information responsive to NORESCO's discovery requests and the Defendants seek to compel ADPM to designate and produce a witness to testify as to the search.

4. ADPM's Rule 30(b)(6) Deposition

The Defendants first served a notice for ADPM's Rule 30(b)(6) deposition on February 21, 2008, seeking to take the deposition on March 12, 2008.[11] ADPM subsequently advised that its designee was unavailable on that date and further advised that ADPM did not have a witness who could testify as to all of the topics set forth in the Categories of Testimony attached to the Notice of Deposition ("Categories of Testimony"). After repeated requests for a new date for the deposition, counsel for ADPM finally agreed to make the designee available for deposition on May 30, 2008.

On May 19, 2008, NORESCO sent a letter to ADPM requesting clarification as to which Categories of Testimony ADPM's designee would be unable to testify. See Exhibit F. NORESCO also repeated its request that ADPM supplement its answers to interrogatories as agreed in February by May 23rd so that NORESCO would have a reasonable opportunity to review the supplemental answers prior to the May 30th deposition. In response, ADPM confirmed that David Pereira would be ADPM's corporate designee for all Categories of Testimony and further stated that ADPM "hope[d]" to supplement its answers to interrogatories prior to the deposition. See Exhibit G.

Minutes before the Rule 30(b)(6) deposition was to begin on May 30th, ADPM served its Supplemental Answers to Interrogatories, leaving NORESCO no reasonable opportunity to review the responses prior to the deposition. Additionally,

[11] A true and accurate copy of the Notice of Deposition is attached hereto as Exhibit R.

notwithstanding its prior confirmation that Mr. Pereira was designated to testify to all of the Categories of Testimony, ADPM hand delivered a letter to the Defendants advising that, in fact, Mr. Pereira, would not be testifying for 18 of the 29 Categories of Testimony for which he was previously designated, including categories such as ADPM's scope of work on the Project, the change order requests for which ADPM seeks payment, the reasons why ADPM contends that the change order requests constitute material changes from the 75% design drawings, the terms and conditions of the Agreement, and delays on the Project.[12] See Exhibit Q. Mr. Pereira was, nonetheless, designated to testify as to ADPM's written discovery responses which address many of these same issues. As a result, it was impossible for the Defendants to have a clear understanding as to whom was designated for what topics. Counsel for ADPM himself admitted on the record at Mr. Pereira's deposition that, because the Categories of Testimony for which the witnesses have been designated to testify overlap in certain regards, "it's difficult to draw a bright line in terms of what is allocated to Dave Pereira in terms of testimony, as opposed to Dave Benoit (ADPM's other designee)." Exhibit H, pp. 82-83, ll. 7-25, 1-12. As a result, very few Categories of Testimony could be eliminated from Mr. Pereira's deposition. Through the course of the deposition, however, it became clear that Mr. Pereira had little to offer on many of the topics.

In response to questions regarding ADPM's answers to interrogatories, Mr. Pereira testified that certain change order requests sought by ADPM in this litigation appear duplicative of one another. Exhibit H, pp. 170-172, ll. 1-25, 1-25, 1. Thereafter, ADPM's counsel stated on the record that if the change orders were, in fact, duplicative,

[12] Plaintiff's counsel claims to have faxed this letter to Brown Rudnick's Providence office the day before, but Brown Rudnick has no record of receiving the fax.

ADPM would stipulate to the fact that it was not seeking to recover double damages and would modify its damages disclosure accordingly. Exhibit H, p. 172, ll. 6-17.

Following Mr. Pereira's deposition, NORESCO made repeated requests for a date for Mr. Benoit's deposition, and for ADPM to modify its damages disclosure to accurately reflect those change order requests for which ADPM is seeking damages in this matter. ADPM ultimately agreed to produce Mr. Benoit for deposition on July 25th and represented it would supplement its damages disclosures in advance of Mr. Benoit's deposition. See Exhibit K.

The Defendants deposed Mr. Benoit on July 25, 2008. Despite Plaintiff's counsel's previous representations, ADPM failed to supplement its damages disclosure prior to the deposition and refused to stipulate on the record those change order requests for which it was no longer seeking recovery. Consequently, in addition to trying to cover the eighteen categories of Testimony for which Mr. Benoit was designated, NORESCO was forced to expend a significant amount of time during the deposition trying to figure out which of the change order requests are still at issue and the deposition was not completed in seven hours.[13]

Of the fourteen change order requests about which he was questioned at the deposition, Mr. Benoit ultimately testified that ADPM was no longer seeking damages for three of those change order requests thereby reducing ADPM's damages by $187,434.[14] He further testified that the amount sought for a fourth change order request

[13] The change order requests listed on ADPM's damages disclosure are described only by deviation number. As a result, Mr. Benoit was unable to testify as to any specific change order request (including whether ADPM was still seeking damages for that change order) without being shown a copy of the change order request.

[14] Pursuant to a Protective Order issued by the Court at the joint request of the parties, NORESCO has not attached excerpts of the deposition transcript of David Benoit. At the Court's request, NORECO will submit the transcript of the referenced testimony under seal.

should be reduced by $44,245.[15] When ADPM finally modified its damages disclosure on August 13th (nearly three weeks after Mr. Benoit's deposition), ADPM deleted another change order request about which Mr. Benoit was questioned and added a previously undisclosed change order for which it is now claiming damages. Thus, of the fourteen change order requests discussed at the deposition, four are apparently not even at issue.[16] Given sufficient time to complete Mr. Benoit's testimony, it's possible that the Defendants may uncover more change order requests listed on the Amended Disclosures that are not, in fact, in dispute.

At the end of Mr. Benoit's deposition, counsel for the Defendants made a request that ADPM make Mr. Benoit available for another day of questioning. Despite ADPM's prior agreement to extend the Rule 30(b)(6) deposition by an amount of time "reasonable to accomplish the questioning that's necessary to cover the categories of testimony set forth in the Notice of Deposition," ADPM would not commit to bringing Mr. Benoit back. ADPM did, however, agree on the record to discuss an arrangement whereby each party would be allowed further examination of the other's Rule 30(b)(6) designee. On July 28th, NORESCO sent ADPM a letter confirming NORESCO's willingness to make its designee available for further examination in exchange for an opportunity to further examine Mr. Benoit. A true and accurate copy of the July 28, 2008 letter from M. Sgro to A. Tine is attached hereto as Exhibit S. Notwithstanding, by letter dated August 13th, Plaintiff's counsel advised that it would not bring Mr. Benoit back. A true and accurate

---

[15] Notwithstanding Mr. Benoit's testimony, the amount of damages for that change order request was not modified in either the Amended Damages Disclosure or the Second Amended Damages Disclosure. See Exhibit B and C, Deviation No. 161.

[16] On August 25, 2008, ADPM again amended its Damages Disclosure, removing yet another change order request from its claimed damages. See Exhibit C.

copy of the August 13, 2008 letter from A. Tine to M. Sgro, C. Pinarchick, and Brian Lamoureux is attached hereto as Exhibit T.

## II. ARGUMENT

### A. ADPM has failed to comply with its discovery obligations.

The Defendants have been chasing ADPM for months for discovery that ADPM should have produced and now should be compelled to produce. With the discovery deadline just three weeks away, the Defendants can chase no longer and the Defendants seek an order of the Court requiring ADPM to comply with its discovery obligations.

#### *1. Document Requests: Document Retention Policy and As-Built Drawings*

ADPM has expressly agreed to: (1) produce the document retention policy applicable to the Project; and (2) provide the Defendants with a list of the final as-built drawings in its possession. However, it appears that ADPM requires an order of the Court to compel ADPM to make good on its promises. Thus, the Defendants request that the Court enter an order compelling ADPM to produce the document retention policies and a list of the final as-built drawings within five (5) days of the entry of the order.

#### *2. Initial Disclosure: Last Known Addresses and Damages*

ADPM served its Initial Disclosure on July 27, 2007. Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires that each party provide in its Initial Disclosure the address, if known, of individuals who may have discoverable information that the party may use to support its claims or defenses. ADPM's Initial Disclosure plainly fails to comply with this obligation; no last known address is listed for any of these witnesses. The Defendants have repeatedly requested that ADPM provide this information but to no

avail.[17] See Exhibits F, J, and L. As a result, NORESCO's ability to locate persons with knowledge regarding ADPM's claims and defenses has been substantially impaired.

Additionally, on August 15th, ADPM advised the Defendants that its damages disclosure is still incorrect and would be amended again. This comes only two days after ADPM served its first Amended Disclosure and just weeks before the close of discovery. Ten days later, on August 25, 2008, ADPM again amended its damages disclosure, again removing a change order request from its claim. ADPM's continuing failure or refusal to provide the Defendants with an accurate damage disclosure is significantly hindering the Defendants' ability to effectively conduct discovery and prepare for trial. Therefore, the Defendants request that the Court order ADPM to supplement its Initial Disclosure to include (i) last known addresses for those persons listed in the disclosure; and (ii) a complete and accurate list of the change order requests for which it seeks damages in this action, within five (5) days of the entry of such order.

### *3. Testimony Regarding the Search for Electronically Stored Information*

ADPM's obligation to search for documents responsive to NORESCO's document requests includes an obligation to search for electronically stored information. Fed. R. Civ. P. 34. *See also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 90-91 (D.N.J. 2006) (ruling that the defendants had employed an "obstructionist approach to discovery" by failing to conduct a search of thousands of employees' e-mails). For months, the Defendants have been unable to get a straight answer from ADPM as to whether ADPM conducted a search for electronically stored information. On May 30, 2008, Mr. Pereira,

[17] Any attempt by ADPM to claim it does not know the addresses of its potential witnesses would be disingenuous. Most of the individuals listed in ADPM's Initial Disclosure are either a former or current employee of ADPM or one of its subcontractors on the Project. Therefore, ADPM has access to at least the last known addresses of these individuals.

who was designated by ADPM to testify as to what search was conducted, testified that he was not aware of any such search being conducted. Thereafter, the Defendants repeatedly requested that ADPM confirm that it intended to conduct such a search and to describe the search being conducted.

On the eve of the Defendants filing a motion to compel the search, ADPM produced three (3) disks of electronic files (many of which cannot be viewed by NORESCO without first obtaining additional software) without any clear indication what steps were taken by ADPM to locate this information or the source of these materials.[18] As a result, the Defendants have no confidence that ADPM has fulfilled its obligations to conduct a reasonable search for electronic documents responsive to NORESCO's discovery requests and the Defendants seek to compel ADPM to designate and produce a witness to testify as to ADPM's search for electronic documents within 10 days of the entry of such order.

### B. The Defendants have not been given a sufficient opportunity to fairly depose Mr. Benoit.

Fed. R. Civ. P. 30(d) provides that, unless otherwise authorized by the Court or stipulated by the parties, a deposition is limited to one day of seven hours. However, "[t]he court *must* allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d).[19] *See also Arista Records v.*

---

[18] ADPM's counsel has represented that Fluor's computer back-up tapes are erased every fifteen (15) days. However, this purported policy has yet to be confirmed, as no document retention policies have been produced. Nevertheless, the erasure of back-up tapes is a process separate and apart from a search for discoverable information stored on other electronic media.

[19] Fed. R. Civ. P. 26(b)(2) states that, "[b]y order, the court may alter the limits in these rules on...the length of depositions under Rule 30."

*Lime Group LLC*, 2008 U.S. Dist. LEXIS 31269 (S.D.N.Y. 2008), *1 (Rule 30 *requires* the court to permit additional time if necessary to fairly examine the witness or if the deponent, another person, or any other circumstance impedes or delays the examination). NORESCO has good cause to seek additional time to fairly examine the ADPM's Rule 30(b)(6) designees due to (i) the complexity and sheer number of issues presented in this matter; and (ii) ADPM's dilatory and incomplete document production and damages disclosures.

The construction disputes between the parties span at least five years. They are complex and voluminous. The parties have collectively produced hundreds of thousands of pages of hard copy documents and NORESCO has produced tens of thousands of additional pages of documents in electronic form. To determine whether NORESCO properly rejected the change order requests at issue requires an individual examination of each of the 61 change order requests in conjunction with various drawings, specifications, construction schedules and the Agreement itself. *See Stoker v. TXU Generation Company LP*, 2005 U.S. Dist. LEXIS 3581 (N.D. Tex. 2005), at *2-4 (granting additional time to depose the plaintiff to adequately address each allegation in the complaint, which occurred over a period of years). Mr. Benoit was designated by ADPM to testify to not only each of the change order requests, but also 17 other Categories of Testimony including the factual basis for each of the claims assert in ADPM's complaint, the terms and conditions of Agreement, ADPM's scope of work under the Agreement, any construction schedules for the Project and delays on the Project for which ADPM seeks significant damages. *See Tatum v. Schwartz*, 2008 U.S. Dist. LEXIS 10715 (E.D. Cal. 2008) (granting an additional day to depose a witness due to the large amount of

documentation to be covered during the deposition). Seven hours is simply not enough time to fairly depose Mr. Benoit on all of these key issues.[20]

Additionally, it appears that Mr. Benoit is going to be a key witness in this case. ADPM has, on numerous occasions, advised NORESCO that the persons most familiar with the Project have all left the employ of ADPM. Therefore, ADPM hired Mr. Benoit, a former ADPM employee[21] with little first hand experience with the Project, to familiarize himself with the Project documents in order to testify. Mr. Benoit testified that he has spent at least 60 hours over the course of about a month (at $250 an hour) reviewing documents in order to prepare himself to testify and that he had expected to continue reviewing documents post-deposition. Thus, Mr. Benoit very well may be a key trial witness for ADPM and the Defendants should have a fair opportunity to examine him. *See McBride v. Medicalodges, Inc.*, 2008 U.S. Dist. LEXIS 31550 (D. Kan. 2008) (permitting an additional five hours to depose a key witness); *Arista Records LLC v. Lime Group LLC*, supra (permitting an additional four hours to depose a key witness who had already been deposed for fourteen hours).

Furthermore, ADPM's refusal to supplement its damages disclosure (despite its representation that it would do so) or to stipulate that certain deviations were duplicative prior to Mr. Benoit's deposition, forced NORESCO to spend time during the deposition of Mr. Benoit on these issues at the expense of other topics and deviations. Given that the damages disclosure has materially changed twice following the Rule 30(b)(6) deposition, NORESCO should be afforded the opportunity to question ADPM about

[20] It is also important to note that, because the Defendants have designated an expert to testify as to the issue of whether the change order requests were properly rejected by NORESCO, ADPM is going to have a full seven hours to depose the Defendants' witness on this issue alone.
[21] Mr. Benoit left ADPM in or about June 2005 to start his own construction litigation support company.

these changes and any other changes that may arise by the time ADPM provides a final, accurate damages disclosure. *See SEC v. Aqua Vie Beverage Corp.*, 2006 U.S. Dist. LEXIS 59709, at *13 (D. Idaho 2006) (granting an additional day for a deposition of defendant where the request for a continued deposition was precipitated by the defendant's own failure to produce requested documents prior to the commencement of the deposition).

Although ADPM originally agreed that NORESCO could exceed the seven-hour time limitation in an amount of time "reasonable to accomplish the questioning that's necessary to cover the categories of testimony in the notice of deposition," Exhibit H, pp. 83-84, ll. 22-25, 1-5, ADPM has now refused to produce Mr. Benoit for another day of testimony. ADPM cites numerous reasons for its refusal, none of which are persuasive. First, ADPM cites time constraints and other pending depositions. ADPM's Rule 30(b)(6) deposition was originally noticed for March. Any current time constraints are the result of ADPM's own failure to make a key witness available until the end of July and is not sufficient grounds for denying the Defendants the opportunity to fairly examine Mr. Benoit.

Next, ADPM cites the fact that it has already produced two corporate designees for seven hours of testimony each. Ironically, it was ADPM's own last minute designation of two witnesses for the same or similar topics which impeded NORESCO's ability to efficiently conduct the Rule 30(b)(6) deposition.

Finally, ADPM cites as grounds for not bringing Mr. Benoit back ADPM's frustration with a series of questions lasting "half the morning hours" regarding other Fluor projects and litigation. ADPM mischaracterizes both the line of questioning and

the amount time spent on that line of questioning. In fact, NORESCO's line of questioning was in regard to other construction cases in which Mr. Benoit previously testified, all but one of which were on behalf of ADPM or its related Fluor entities. Given the breadth of Categories of Testimony for which Mr. Benoit was designated notwithstanding his limited first hand knowledge of the Project, this line of questioning was particularly important to understand Mr. Benoit's knowledge and experience regarding construction disputes as Mr. Benoit is expected to be a key witness for ADPM. Moreover, ADPM's contention that this line of questioning lasted "half the morning hours" is highly exaggerated. In fact, these questions accounted for only forty-one minutes of the deposition.

## III. CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court enter an order:

(1) compelling ADPM to produce the document retention policy applicable to the Project and the list of the final as-built drawings within five days of the entry of the order;

(2) compelling ADPM to supplement its Initial Disclosure to include (i) last known addresses for those persons who may have discoverable information that the party may use to support its claims or defenses; and (ii) a complete and accurate list of the change order requests for which it seeks damages in this action, within five days of the entry of such order;

(3) compelling ADPM to designate and produce a witness to testify as to ADPM's search for electronic documents within ten days of the entry of such order;

(4) granting the Defendants an additional seven hour day to depose David Benoit and compelling ADPM to make him available for deposition within ten days of the entry of such order; and

(5) all such further relief appropriate under the circumstances.

**NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,**
By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
wdolan@brownrudnick.com
Brian J. Lamoureux (#6211)
blamoureux@brownrudnick.com
**BROWN RUDNICK LLP**
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

Dated: August 26, 2008

*Pro Hac Vice*:
Cheryl B. Pinarchick
cpinarchick@brownrudnick.com
Matthew P. Sgro
msgro@brownrudnick.com
**BROWN RUDNICK LLP**
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Andrew J. Tine, Esq.
atine@tinelaw.com
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Fl.
Bristol, RI 02809

CharCretia V. DiBartolo, Esq.
cdibartolo@hinshawlaw.com
Hinshaw & Culbertson LLP
One International Place
Boston, MA 02110

/s/ Brian J. Lamoureux

# 1590018