# EXHIBIT J

BROWNRUDNICK

MATTHEW P. SGRO
Counselor at Law
direct dial: 617-856-8570
msgro@brownrudnick.com

One
Financial
Center
Boston
Massachusetts
02111
tel 617.856.8200
fax 617.856.8201

June 18, 2008

VIA E-MAIL AND FIRST-CLASS MAIL

Andrew J. Tine, Esq.
251 Thames Street
Bristol, RI 02809

**RE: ADP Marshall, Inc. v. NORESCO, et al**

Dear Andrew:

This letter follows-up our conversations of Friday, June 13, 2008 and Monday, June 16, 2008 regarding discovery issues.

With regard to the upcoming depositions, you have agreed to advise as soon as possible after you have heard from Bruce Iannuccillo regarding whether his deposition will go forward on Friday, June 20. We have agreed that, if the deposition does go forward that day, it will begin at 11:00 a.m. Please note that if you are unable to confirm this deposition before the end of the day Wednesday, June 18, we request that it be rescheduled to another date.

You indicated that you will be representing Ed McNaught for the purposes of his deposition, and will advise whether that deposition can go forward on June 27 after meeting with Mr. McNaught on Thursday, June 19. We will agree to conduct Mr. McNaught's deposition at Brown Rudnick's office in Providence. You will likewise represent Mr. Salamon at his deposition, which will take place on Friday, July 11. Mr. Salamon has agreed to be deposed in our office in Boston.

We have tentatively agreed that Theresa MacKinnon will be deposed on Thursday, July 24, 2008, pending your rescheduling of another deposition. You agreed to conduct Attorney MacKinnon's deposition in Brown Rudnick's Providence office. The continuation of ADPM's Rule 30(b)(6) deposition will take place on July 25. Mr. Benoit will be deposed in Brown Rudnick's Providence office.

We have agreed to jointly seek a 45-day extension of the discovery period. Please forward a draft joint motion for review as soon as possible.

The following represents my understanding of ADPM's responses to the issues raised in my letter of June 4, 2008:

1) You have agreed to inquire at Fluor regarding what search of Fluor's electronic records, if any, was performed in responding to Noresco's First Request for the Production of Documents and Things. As you know, it is Noresco's position that a full search of Fluor's electronic files is required by the Federal Rules of Civil Procedure, and that all responsive non-privileged electronically-stored documents, including e-mails, must be produced. You claim that David Benoit will have information regarding ADPM's document retention and electronic data policies and procedures. However, Mr. Periera was designated as ADPM's Rule 30(b)(6) witness with regard to ADPM's responses to Noresco's First Request for the Production of Documents and Things. Mr. Periera testified that he was not aware of any search of ADPM's electronic records.

If, as you assert, Fluor performed a diligent search of its electronic documents and the results of that search have been produced, please advise in writing what steps were taken to review Fluor's electronic files, and who performed the review. If e-mails and back-up tapes are routinely erased or overwritten by Fluor, please confirm in writing the frequency with which this takes place and set forth the time period from January 2001 to the present during which you claim that e-mails and electronic files and/or the back-up tapes related to the Project were erased or overwritten. Absent a definitive statement on the status of Fluor's search of its electronic files by the end of this week, Noresco intends to promptly file a motion to compel.

2) Related to the search of electronic records, you agreed to timely produce the document retention policies referred to by Mr. Pereira during his deposition; i.e., all document retention policies of ADPM, Fluor NE, Inc., Fluor Enterprises, and any other document retention policies applicable to employees of those entities (including those of Fluor Corporation) for the years 2001 to the present.

3) You agreed to provide full copies of the deviation files which Mr. Periera testified were incomplete when they were presented to him during his deposition.

4) You agreed to have the drawings in ADPM's possession reviewed to determine which, if any, of the drawings are As-Built Drawings, and to identify the As-Built Drawings that are in ADPM's possession.

BR



5) You agreed to supplement ADPM's Rule 26 damages disclosure within 30 days from June 13th to account for duplicative deviations claimed as "open." Accordingly, ADPM will serve its supplemental disclosure on or before Monday, July 14, 2008.

6) Finally, you have agreed to provide the last known addresses of Richard Lindsay, the former Fluor employee identified by Mr. Periera as the Pastore Project's "estimator," as well as for all individuals listed in ADPM's initial disclosure. Given the fact that we are unsure whether an extension of the discovery period will be allowed by the Court, we would appreciate this information as soon as possible.

With regard to ADPM's request for the supplementation of Noresco's Answers to ADPM's Interrogatories, you have indicated that ADPM would like supplementation of Noresco's answers to Interrogatories 8, 11, 12, 16, 18, 20 and 25. Noresco's position as to each of those Answers to Interrogatories is below.

Interrogatory 8: Noresco agrees to supplement this Answer to indicate Noresco's understanding of the current posture of the State of Rhode Island vis-à-vis the collection of liquidated damages from Noresco.

Interrogatory 11: ADPM seeks supplementation to indicate "the specific dollar amount approved for each deviation" listed on the Interrogatory. It is Noresco's understanding that the deviations listed in Interrogatory 11 constitute the deviations contained in Change Orders 6 and 7. It is Noresco's position that its response to Interrogatory 11 is sufficient. Noresco's response states that "Noresco approved for payment the Deviations listed above, with the exception of 489 and 480," and goes on to explain why payment was not made to ADPM with regard to these Deviations. ADPM is entirely capable of calculating the total amount of the listed deviations (less the two that were not approved). Moreover, Noresco's expert witness disclosure contains a detailed analysis of Change Orders 6 and 7. Accordingly, no supplementation of this answer is necessary.

Interrogatory 12: Despite the fact that the dates of payments made by Noresco to ADPM is readily ascertainable by ADPM through a review of its own records, Noresco will provide a supplemental response to this Interrogatory with the dates of each payment.

Interrogatory 16: ADPM seeks an "explanation of all delays experienced on the Project that are the fault of, as a result of, or for which the responsibility lies with the State of Rhode Island and/or its subdivisions and/or agents." Noresco objected to this Interrogatory because, *inter alia*, it calls for a legal conclusion and/or expert testimony. Noresco's position has not changed with regard to this Interrogatory. The term "delay" is inadequately defined in the

BR



Interrogatory, and the question of causation is a question of law and/or expert opinion. Moreover, Noresco is not claiming in this action that delays to construction were caused by the State of Rhode Island. If ADPM claims that the State caused delays to the critical path of the Project, it is incumbent upon ADPM to identify and offer an "explanation" of such alleged delays through the Project records.

Interrogatory 18: Similarly, Interrogatory 18 seeks a "full explanation of all delays experience on the Project that are the fault of, as a result of, or for which the responsibility lies with Noresco." Again, the term "delay" is inadequately defined in the Interrogatory, and the question of causation is a question of law and/or expert opinion. If ADPM claims that delays on the Project were caused by Noresco, ADPM must prove the same. In fact, Noresco sought this information from ADPM through Noresco's Interrogatory 15, which sought an explanation of the circumstances of construction delays ADPM claims were caused by Noresco. In response, ADPM incorporated by reference "[a] review of every single deviation which changed the scope of work, every single design change and every single late or unresponsive answer to requests for information..."

Interrogatory 20: This Interrogatory seeks a list of all "design errors or omissions on the Project." You explained that ADPM seeks a deviation-by-deviation analysis by Noresco as to which deviations, if any, were the result of design errors or omissions. First, as stated in Noresco's objection to this Interrogatory, design errors and omissions are questions of law and/or subjects for expert testimony. Second, ADPM is in possession of all the deviations and can undertake this analysis itself. Finally, Noresco responded to Interrogatory 20 to identify the design errors that it has identified in this action. A further analysis has not been conducted by Noresco nor does Noresco have an obligation to conduct such an analysis.

Interrogatory 25: Your letter of June 5, 2008 seeks a "'real' response" to Interrogatory 25. Noresco's objection to this Interrogatory, including the objection based upon the fact that ADPM's First Set of Interrogatories constituted well in excess of the number of Interrogatories provided by the Rules, is a "real" answer. Furthermore, this Interrogatory fails to adequately define "assess." Noresco refers ADPM to its 2004 mediation statement, which ADPM should be in possession of. To the extent further documents exist which "assess" liquidated damages, ADPM is referred to the Project records, which have been produced.

You further requested that Noresco produce the document, referred to by Wade Carleton during Noresco's Rule 30(b)(6) deposition, which indicates Noresco's financial position vis-à-vis the Project. We will discuss this request with Noresco and advise shortly.

BR



Finally, you requested that Noresco produce documentation between it and Arden, Commonwealth Dynamics, and/or R.P. Iannuccillo regarding the settlement of the actions brought against Noresco and Lumbermens due to ADPM's failure to pay its subcontractors. As you know, the settlement agreements between Noresco and the subcontractors have been produced, as have the Project records. If a diligent search by Noresco results in other non-privileged documents being located, such documents will be produced.

Please note that Noresco's overarching position with regard to ADPM's requests for supplementation is that the Project records of Noresco have been produced *in toto* for inspection. The information sought by ADPM is, for the most part, readily ascertainable through those records. This position is entirely consistent with ADPM's responses to Noresco's First Set of Interrogatories. ADPM's response to Noresco's Interrogatories 4, 5, 6, 8, 14, 15, 16, 18, 19, 20 and 23 each refers Noresco to the Project records as a whole.

We look forward to hearing from you regarding these issues.

Very truly yours,

**BROWN RUDNICK BERLACK ISRAELS LLP**

Matthew P. Sgro

cc: Cheryl B. Pinarchick, Esq.

# 1573493 - 080908/0004