# EXHIBIT L

BROWNRUDNICK

MATTHEW P. SGRO
Counselor at Law
direct dial: 617-856-8570
msgro@brownrudnick.com

One
Financial
Center
Boston
Massachusetts
02111
tel 617.856.8200
fax 617.856.8201

August 11, 2008

VIA E-MAIL AND OVERNIGHT MAIL

Andrew J. Tine, Esq.
251 Thames Street
Bristol, RI 02809

**RE: ADP Marshall, Inc. v. NORESCO, et al**

b r o w n r u d n i c k . c o m

Dear Andrew:

This responds to your letter dated August 6, 2008. Before addressing your specific requests, I note that you attempt to impose a deadline of Monday, August 11, 2008 for Noresco's supplemental production. Noresco finds such demand curious and somewhat incredible given that, throughout discovery in this action, ADPM has consistently ignored reasonable requests by Noresco for supplemental productions prior to scheduled depositions, often in direct contradiction to representations that materials would be timely provided.

On May 19, 2008, in anticipation of the Rule 30(b)(6) deposition of ADPM, I sent you a letter requesting clarification of which categories of testimony ADPM's designee, David Pereira, would be unable to testify to. I also reminded you that you agreed to review the personnel files of ADPM employees assigned to the Project for performance reviews, and to inquire of your client about the existence of ADPM/Fluor document retention policies. These documents were first requests over ten months ago in Noresco, LLC's First Request for the Production of Documents and Things to Plaintiff, which were served on ADPM on October 11, 2007. I further requested that ADPM provide supplemental Answers to Interrogatories by May 23, 2008 so that Noresco would have an opportunity to review them before the May 30, 2008 Rule 30(b)(6) deposition. Supplemental Answers to Interrogatories were first requested by Noresco and promised by ADPM in February, 2008. You responded on May 21, 2008, stating that David Pereira's designation for all categories of testimony would not change. You also stated that you "hope[d]" to supplement ADPM's Answers to Interrogatories prior to May 30, 2008 (ignoring Noresco's request for supplementation by May 23rd). You went on to state that ADPM did not have performance reviews "with respect to this Project," and that Fluor's document retention policy is "inapplicable" to this Project. Later that same day, I again specifically requested that

BR



you identify any categories of testimony that Mr. Pereira would be incapable of testifying to. In response to your semantic acrobatics regarding the document retention policies and performance reviews, I again specifically requested any performance evaluations for ADPM personnel, as well as the document retention policies of ADPM/Fluor. You have yet to produce any performance evaluations, and Noresco has subsequently requested the production of document retention policies numerous times in vain.

On the morning of May 30, 2008 – the day on which the Rule 30(b)(6) deposition of ADPM was to begin at 9:00 a.m. – we received a letter from you which, for the first time and contrary to your previous representations, stated that David Pereira would not be designated for nearly half of Noresco's categories of Rule 30(b)(6) inquiry, including the critical categories of open deviations, the terms and conditions of the agreement between ADPM and Noresco, and ADPM's damages generally. You claimed to have faxed this letter to Brown Rudnick's Providence office the day before, but no fax was received (nor could it have been timely received by either Cheryl Pinarchick or me because, as you know, neither of us is based in the Providence office). Also on May 30, 2008, mere minutes before the Rule 30(b)(6) deposition was to begin, you served ADPM's supplemental Answers to Interrogatories. Noresco was not provided an opportunity to carefully review these supplemental responses prior to the start of the deposition.

During his deposition testimony, Mr. Pereira testified that, in fact, there were document retention policies in place that would have applied to ADPM personnel on the Project, that ADPM was in possession of certain as-built drawings for the Project (which were requested in Noresco's First Request for the Production of Documents and Things to Plaintiff), and that it appeared that certain "open" deviations claimed by ADPM in this litigation sought duplicative damages. You stated on the record that if these deviations were in fact duplicative, ADPM would not maintain a claim for them. Mr. Pereira, who was designated to testify as to ADPM's response to Noresco's First Request for the Production of Documents and Things to Plaintiff, also testified that he was not aware of any search of ADPM's electronic files in connection with discovery in this matter. On June 4, 2008, I sent you a letter requesting, among other things, copies of the document retention policies Mr. Pereira testified to, identification of the as-built drawings in ADPM's possession, custody or control, and requesting that you confirm that ADPM would be supplementing its Rule 26 damages disclosure to remove duplicative deviations. I also asked whether Fluor would be conducting a review of its electronic files for discoverable material.

On June 18, 2008, I sent you a letter summarizing two telephone conversations regarding outstanding discovery issues. Among other things, you agreed to inquire at Fluor about any search of electronic records. You also agreed to produce the document retention policies Mr. Pereira testified to, to identify as-built drawings in ADPM's possession, and to supplement

ADPM's Rule 26 damages disclosure by July 14, 2008. In your response, dated June 20, 2008, you summarized the electronic files produced by ADPM, but did not explain the steps taken by Fluor to compile that material. You also indicated that you had requested the document retention policies and "hope[d] to produce same next week." While you refused to agree to the July 14 deadline for the supplementation of ADPM's Rule 26 damages disclosure (despite your previous statement to the contrary), you represented that it was your intention to supplement by that date. On June 24, 2008, Noresco again requested the production of Fluor's document retention policies, and requested that ADPM supplement its damages disclosure before the continuation of the Rule 30(b)(6) deposition on July 25, 2008.

Noresco's First Set of Interrogatories to Plaintiff, served in October, 2007, sought the location of the computers and other electronic storage devices that may contain information regarding the Project. ADPM responded that the location of the computers and other storage devices was unknown. Since receiving that response in February, 2008, Noresco has been seeking an explanation of what steps ADPM took to attempt to locate electronically-stored documents responsive to Noresco's First Request for the Production of Documents and Things. ADPM's supplemental responses to Noresco's First Set of Interrogatories, dated May 29, 2008, still stated that the location of the computers and electronic storage devices was unknown.

During the first day of ADPM's Rule 30(b)(6) deposition, Mr. Pereira testified that ADPM relied on its individual employees to print e-mails that the employee felt were relevant and place the hard copies in the paper file. On numerous occasions since Mr. Pereira's deposition, Noresco has expressed its position that this purported policy is unreliable and that a search of the electronic files for the Project is required to ensure complete production by ADPM. In June, 2008, four months after ADPM's Answers to Interrogatories were served, you informed me for the first time that Fluor's policy was to erase back-up tapes of e-mails every 15 days. Because no document retention policies have been produced by ADPM or Fluor, the existence of this policy has yet to be confirmed. Moreover, Fluor's policy vis-à-vis back-up tapes does not fully respond to Noresco's inquiry about the retention policy with regard to information archived on Fluor's servers or stored to individual pieces of hardware. On July 2, 2008, ADPM produced a smattering of electronic files, the majority of which cannot be opened by Noresco without it first acquiring additional software. No explanation has been offered as to how this information was located, or whether more will be forthcoming. Noresco has no confidence that ADPM has conducted a diligent search of its electronic files, as required by the Federal Rules of Civil Procedure. Noresco still awaits a description of what search of electronic files has been performed by ADPM, whether the computers and electronic storage devices for the Project have been located, and whether ADPM will be producing further electronic materials responsive to Noresco's First Request for the Production of Documents and Things to Plaintiff.

Many of the files produced on July 2nd were drafted or received by an individual named Arthur R. Caron, who is not identified in ADPM's Initial Disclosures. On July 8, 2008, I requested that you advise what Mr. Caron's role on the Project was, the time period during which he worked on the Project, whether he is still employed by Fluor, and his last known residential address. On that same day, you agreed to attempt to locate Mr. Caron. A month has passed without that information being provided.

On July 17, 2008, Noresco again reminded ADPM of its promise to produce the document retention policies and to supplement its Rule 26 damages disclosures to include the last known addresses of all potential witnesses (as required by the Federal Rules of Civil Procedure) and to account for duplicative deviations. Noresco requested that these materials be produced prior to the July 25, 2008 Rule 30(b)(6) deposition. On July 23, 2008, Noresco *again* requested supplementation of ADPM's damages disclosure prior to the July 25 deposition, or alternatively requested a stipulation on the record as to which deviations ADPM no longer considered part of its damages claim. Your response was simply that you had not prepared a supplementation yet. Now, forty-five days later, you have yet to produce any document retention policies and have yet to supplement ADPM's Rule 26 damages disclosure. ADPM's refusal to produce the document retention policies has prevented Noresco from fully examining ADPM's witnesses with regard to their compliance with the policies and, consequently, Noresco cannot accurately assess the completeness of ADPM's document production. Equally as important, with only weeks remaining before the discovery deadline, Noresco still does not have the last know addresses of potential ADPM trial witnesses, which severely impedes Noresco's ability to notice depositions.

David Benoit, ADPM's second Rule 30(b)(6) designee, was deposed on July 25, 2008. Because you refused to supplement ADPM's damages disclosure or stipulate to duplicative deviations (despite another request to do so that morning prior to commencing the deposition), Noresco was forced to waste a significant amount of time and expense questioning Mr. Benoit on that subject. Although Noresco did not have sufficient time to question Mr. Benoit regarding each of the 67 deviations for which ADPM originally contended it was seeking payment, Mr. Benoit ultimately testified that, in fact, ADPM was no longer seeking payment for at least $202,759 worth of those deviations. Given Mr. Benoit's testimony and ADPM's continued resistance to updating its damages disclosure to accurately reflect the damages sought by ADPM in this litigation, at the end of the day on July 25th, Noresco requested that it be provided further time to depose Mr. Benoit. You agreed to discuss with ADPM an arrangement whereby each party would be allowed further examination of the other's Rule 30(b)(6) designee. On July 28, 2008, I sent you a letter confirming Noresco's willingness to make its designee available for further examination in exchange for an opportunity to further examine Mr. Benoit. You did not respond. Given the short time remaining for discovery, I followed up my letter with an e-mail on

BR



August 1, requesting an answer regarding the continuation of the Rule 30(b)(6) depositions by Wednesday, August 6. You still have not responded. If necessary, Noresco will seek Court intervention to secure additional time with Mr. Benoit and to require ADPM to verify what damages it is, in fact, seeking from Noresco.

Given ADPM's persistent failure to fulfill its discovery obligations, to respond to repeated requests for documents and information by Noresco and to deliver on its promises, it is rather audacious to suggest a deadline for a Noresco production and to suggest prejudice if Noresco fails to abide by that deadline. During the past several months, ADPM has repeatedly ignored Noresco's requests that information be produced timely before depositions. Nevertheless, because Noresco does not share ADPM's cavalier view of its discovery obligations, the materials you requested will be produced.

1) A copy of the disk containing Wade Carleton's e-mails is enclosed. Our vendor charges $50.00 for copying. An invoice is enclosed herewith. Kindly make payment promptly.

2) Notwithstanding that Noresco has produced tens of thousands of pages of e-mails and electronic files to date, in order to ensure that its production is complete, Noresco is in the process of reviewing additional electronic materials for privilege. A disk containing any additional non-privileged electronic documents concerning the Project will be produced before the end of August.

3) Enclosed are documents bearing Bates-stamp numbers NORESCO-080366 through NORESCO-080368, which represent the dates on which Noresco made payments to ADPM. These documents are responsive to your request for a supplementation of ADPM Interrogatory 12.

4) Wade Carleton testified that documents existed that described Noresco's financial position vis-à-vis this Project. He did not testify that a single profit and loss report for this specific Project exists, as presumed in your letter. Noresco has performed a reasonable search and has confirmed that such a document is not maintained.

5) The documentary support of Noresco's internal labor management claim constitutes voluminous time records submitted by Noresco personnel. These materials are being compiled and will be produced by the end of August.

6) Notwithstanding that the documents sent from Wade Carleton to Veritas were previously produced in hard copy form, Noresco will also make these files available in electronic form. Noresco has begun this process and will produce the files shortly.

BR



Please ensure that ADPM produces the document retention policies, performance evaluations, and supplemental Rule 26 damages disclosure on or before Wednesday, August 13, 2008 so that these materials can be reviewed prior to Ed McNaught's deposition on August 15th.

I have been informed by Mass. Electric Construction Company that documents responsive to our subpoena have been compiled. There are approximately 200 pages of documents and a disk of e-mails. When I receive these materials, a copy will be forwarded to you, as you requested, at your expense. Finally, we are in receipt of your subpoena to Paul Stoller of Camp Dresser & McKee. Neither Cheryl nor I is able to attend this deposition on Monday, August 18, and request that alternative dates be proposed.

Very truly yours,

**BROWN RUDNICK LLP**

Matthew P. Sgro

cc: CharCretia Di Bartolo, Esq.
Cheryl B. Pinarchick, Esq.

# 1585082 - 080908/0004

Document Name: untitled

042003 Supplier Ledger Inquiry

Address Number . . .
Parent Number. . . .
Document Number. . .
P.O. Number. . . . . 36206
Invoice Number . . .
Skip To Page . . . .

Date From. .
Date Through
Ledger Inq Sequence. 6
Paid . . . . . . . . . 2
Company. . . . .

| O P | Ty | . . . .Document. . . . Number | Itm | Date | Payee Number | Gross Amount | Open Amount | P C | P S | P I |
|---|---|---|---|---|---|---|---|---|---|---|
| | PV | 992515 | 001 | 12/31/01 | 46394 | 678,127.10 | | D | P | Z |
| | PV | 1023980 | 001 | 03/31/02 | 46394 | 707,128.00 | | D | P | Z |
| | PV | 1087741 | 001 | 05/31/02 | 46394 | 480,373.00 | | D | P | Z |
| | PV | 1087742 | 001 | 07/24/02 | 46394 | 368,132.00 | | D | P | Z |
| | PV | 1140927 | 001 | 09/04/02 | 46394 | 143,439.00 | | D | P | Z |
| | PV | 1179085 | 001 | 10/28/02 | 46394 | 1,308,509.00 | | D | P | Z |
| | PV | 1184033 | 001 | 11/01/02 | 46394 | 166,639.00 | | D | P | Z |
| | PV | 1207729 | 001 | 12/01/02 | 46394 | 332,755.00 | | D | P | Z |
| | PV | 1221659 | 001 | 01/01/03 | 46394 | 614,641.00 | | D | P | Z |
| | PV | 1241479 | 001 | 02/01/03 | 46394 | 530,616.00 | | D | P | Z |
| | PV | 1252545 | 001 | 03/01/03 | 46394 | 533,294.00 | | D | P | Z |

Page: 1

Opt: 1=Vouch 2=JE 3=Pmts 5=Detail F10=Pmt Ledger F21=Print F24=More

Document Name: untitled

042003 Supplier Ledger Inquiry

Address Number . . .
Parent Number. . . .
Document Number. . .
P.O. Number. . . . . 36206
Invoice Number . . .
Skip To Page . . . .

Date From. .
Date Through
Ledger Inq Sequence. 6
Paid . . . . . . . . . 2
Company. . . . .

| O P | Ty | . . . .Document. . . . Number | Itm | Date | Payee Number | Gross Amount | Open Amount | P C | P S | P I |
|---|---|---|---|---|---|---|---|---|---|---|
| | PV | 1278989 | 001 | 05/19/03 | 46394 | 334,290.00 | | D | P | Z |
| | PV | 1303438 | 001 | 05/31/03 | 46394 | 940,546.00 | | D | P | Z |
| | PV | 1304849 | 001 | 05/01/03 | 46394 | 200,453.00 | | D | P | Z |
| | PV | 1323784 | 001 | 06/30/03 | 46394 | 1,325,437.00 | | D | P | Z |
| | PV | 1348071 | 001 | 07/30/03 | 46394 | 1,164,752.00 | | D | P | Z |
| | PV | 1348072 | 001 | 08/31/03 | 46394 | 666,125.00 | | D | P | Z |
| | PV | 1410988 | 001 | 09/29/03 | 46394 | | | D | P | Z |
| | PE | 1410988 | 001 | 09/29/03 | 46394 | 690,374.00 | | D | P | Z |
| | PV | 1422127 | 001 | 12/04/03 | 46394 | 1,449,223.00 | | D | P | Z |
| | | | | | TOTAL | 11,944,479.10 | | | | |

Page: 2

Opt: 1=Vouch 2=JE 3=Pmts 5=Detail F10=Pmt Ledger F21=Print F24=More

Bank of America
Fluor Corporation
Previous Day Wire Report

As of 10/07/2002
USD Accounts
Bank of America Accounts

*Bank of America, Customer Connection ABA: 111000012*

3751524926 ADP Marshall Concentration Acct — Last Updated: 10/08/2002 05:39 CDT

Detail Credits

| Amount | Customer Reference | Bank Reference | Immediate Availability | 1 Day Float | 2+ Day Float |
|---|---|---|---|---|---|
| INCOMING MONEY TRANSFER CREDIT | | | | | |
| 470,972.00 | 0000000000 | 00370035423 | 470,972.00 | 0.00 | 0.00 |

*WIRE TYPE:WIRE IN DATE: 100702 TIME:1313 CT*
*TRN:021007035423 FDREF/SEQ:7381/003587*
*ORIG:NORESCO LLC ID:322860 SND BK:MELLON BANK N.A*
*. ID:043000261 PMT DET:INVOICE #PAYMENT APPLICATIO*
*NS*

| | | | | | | |
|---|---|---|---|---|---|---|
| *TOTAL* | 470,972.00 | # of Items: | 1 | 470,972.00 | 0.00 | 0.00 |

*TOTAL CREDITS*

| | | | | | |
|---|---|---|---|---|---|
| 470,972.00 | # of Items: | 1 | 470,972.00 | 0.00 | 0.00 |

3751927170 Fluor Daniel Caribbean Inc — Last Updated: 10/08/2002 05:39 CDT

Detail Debits

| Amount | Customer Reference | Bank Reference | Immediate Availability | 1 Day Float | 2+ Day Float |
|---|---|---|---|---|---|
| OUTGOING MONEY TRANSFER DEBIT | | | | | |
| 100,000.00 | 0000000000 | 00370007926 | | | |

*WIRE TYPE:WIRE OUT DATE:100702 TIME:0735 CT*
*TRN:021007007926 FDREF/SEQ:021007007926/000368*
*BNF:FLUOR DANIEL CARIBBEAN IN ID:5070-16 BNF BK:S*
*COTIABANK BAHAMAS LT ID:1042940*

| | | | |
|---|---|---|---|
| *TOTAL* | 100,000.00 | # of Items: | 1 |

*TOTAL DEBITS*

| | | |
|---|---|---|
| 100,000.00 | # of Items: | 1 |