**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ADP MARSHALL, INC., a division of Fluor NE, Inc.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>NORESCO, LLC and LUMBERMEN'S MUTUAL CASUALTY COMPANY,<br><br>Defendants/Counterclaim-Plaintiffs/ Third-Party Plaintiffs,<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Third-Party Defendants. | C.A. No.: 07-129 ML |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND FOR ADDITIONAL TIME TO COMPLETE PLAINTIFF'S RULE 30(b)(6) DEPOSITION**

Plaintiff, ADP Marshall, Inc. ("ADPM"), hereby opposes Defendants' motion to compel the production of documents and for additional time to complete the deposition of Plaintiff's Rule 30(b)(6) designee.

**A. Documents Sought By NORESCO**

*1. Document Retention Policies*

NORESCO misconstrues the testimony of David Pereira, the communications between the parties, and the relevance of the requested document retention policies. As set forth at page 153, Mr. Pereira was questioned about "Fluor's" document retention

policy, not ADPM's.[1] When Mr. Pereira was asked about ADPM's document retention policy, he testified that there would have been a separate policy and that ADPM was not merged into the Fluor policy until August 2007. He was never questioned as to whether the ADPM policy existed in writing, but he was able to describe the policy in general.

Oddly enough, NORESCO ignores David Benoit's testimony, the second ADP Marshall 30(b)(6) designee, who indicated in response to direct questioning, that he was not aware of a written document retention policy for ADP Marshall. Nonetheless, ADP Marshall has produced Fluor's policies, that were not utilized on this project, per the Rule 30(b)(6) deponents' testimony. See Exhibit A hereto. These policies are not relevant to this litigation.

It should be noted that NORESCO claims to have no written document retention policy.

*2. As-Built Drawings*

Noresco attempts to put the burden on ADPM to sort through the plans and catalog the plans to determine if "as-built" drawings exist. "As-built" drawings are known as record drawings of the work as constructed. It is customary and typical that these drawings are provided by a subcontractor upon close-out of its work and after receipt of final payment. In turn, a general contractor or in this case as a subcontractor, ADPM would turn over said drawings upstream if contractually required to do so. The normal project close-out on this project did not occur because of NORESCO's refusal to make payment to ADPM for work performed. As such, there was a disconnect with respect to the compilation and transmission of as-builts. In fact, NORESCO took up

[1] ADP Marshall, Inc. is now known as Fluor, NE, Inc. "Fluor" is commonly understood to be Fluor Enterprises, Inc. or Fluor Corporation, which are separate entities from ADP Marshall, Inc.

direct negotiations with ADPM's subcontractors and may have failed to obtain possession of the as-builts prior to making final payments to various subcontractors.

Now, during this litigation, in good faith, ADPM's counsel agreed to try and obtain the assistance of a former ADPM employee to help sort out this "as-built" situation so that both parties could understand what as-builts, if any, were in storage. This undertaking has not gone forward because the former ADPM personnel have limited accessibility – being no longer employed by APDM. ADPM is at the whim of these former employees in terms of allotting time for this litigation.

It should be noted that ADPM was never obligated or bound to review the plans and determine which as-builts exist for purposes of this litigation. Noresco did not ask for such a listing in discovery and thus no formal obligation should be imposed upon ADPM. ADPM has provided access on two occasions to Noresco to view and determine what plans are in ADPM's possession. On one occasion, Noresco opened every single plan roll in ADPM's possession, we assume to create a log, which has not been provided to ADPM. Noresco itself has not provided a catalogue of the as-builts in its own possession and provided said information to ADPM.

**B. Initial Disclosures – Last Known Addresses**

On May 21, 2008, ADPM provided Noresco with the last known addresses of Ed McNaught, Kris Salamon, Jim Maguire and Michael Amalfitano. Thereafter, Noresco requested the address of Richard Lindsay. Mr. Linsday's work address was provided and it was stated that he would be made available for deposition without the need for a subpoena in South Carolina, his state of residence. Noresco did not purse this deposition. The only last known address of an employee of ADPM that was not provided in response

to a specific request was that of Art Caron, purely through oversight. Noresco has never claimed the inability to depose or locate a person it wished to depose for lack of an address. On September 2, 2008, the last known addresses of all other former employees of ADPM were provided to Noresco. See Exhibit B hereto. Noresco has not asserted that it intends on deposing any of these individuals. Noresco has not suffered any prejudice by this late disclosure.

**C. Electronically Stored Documents**

ADPM produced its electronic records on July 2, 2008, in the original electronic file folders, without manipulation into new document formats. Certain emails were produced in PDF format for purposes of production.

Although requested in its first request for production to Noresco dated December 28, 2007, Noresco did not produce its electronic records to ADPM until August 30, 2008, about two weeks prior to the close of discovery. Noresco's production is in a TIF format, in a blanket production, with original file folder designations nonexistent, and in an unsearchable format. Noresco's production is very difficult to work with, unlike ADPM's production, which was in the original format, in labeled file folders and searchable where supported by the original software.[2]

Noresco brings the current motion to complain, for the sake of complaining, that not enough information has been provided as to where the electronic production came from. As previously stated and as Noresco has been informed, ADPM's electronic production was obtained from servers onto which were downloaded files and other electronic information as the project was closed out and people left the company.

---

[2] On September 10, 2008, ADPM requested Noresco's electronic production be reproduced in original file folders, in their original format.

Noresco has provided no explanation as to where its electronic production came from or why it took until the waning days of discovery to produce same.

ADPM should not be made to jump through any more hoops with respect to electronic discovery, especially since it is ADPM and not Noresco that has been prejudiced by the late production of electronic discovery. To the extent ADPM is ordered to take any further steps with respect to electronic discovery, it believes Noresco should also be ordered to undertake said steps.

**D. Rule 30(b)(6) Designee Deposition**

Noresco moves this Court for a third full day with an ADPM Rule 30(b)(6) designee. Having already deposed ADPM designees, Mr. David Pereira for seven hours and Mr. David Benoit for seven hours, they now seek to depose Mr. Benoit for an additional seven hours. Noresco claims that this additional time is justified because: 1) "The construction disputes between the parties span at least five years. They are complex and voluminous."; 2) there was an agreement to exceed seven hours of Rule 30(b)(6) inquiry; 3) "ADPM's refusal to supplement its damages disclosure . . . forced Noresco to spend time . . . on these issues . . ."; and 4) the damages disclosure has "materially changed" twice following the Rule 30(b)(6) deposition.

ADPM produced its first Rule 30(b)(6) designee, Mr. Pereira, on May 30, 2008. In preparing for Mr. Pereira's deposition, it was learned that he was not sufficiently knowledgeable on certain areas of testimony given his prior role in the company as a financial officer and not a construction operations person. As such, a letter was prepared and faxed to Noresco's counsel at 1:10 PM on May 29, 2008 as to the areas of testimony that Mr. Pereira was adequately prepared to testify with respect to on May 30, 2008. In

that letter, Mr. David Benoit, a former employee of ADPM, was designated as to the remaining areas of designated 30(b)(6) testimony. This designation of a second Rule 30(b)(6) designee for ADPM could not have prejudiced Noresco with regard to the deposition of Mr. Pereira because it scaled down the scope of inquiry that Noresco's attorney had to make with Mr. Pereria in the allowable seven (7) hours. Furthermore, this additional designation made less work for Noresco's attorneys on May 30, 2008 and gave them an additional seven (7) hours to inquire into the real substance of the dispute, the monetary claims and delays, with an additional witness, Mr. Benoit. Noresco was informed during Mr. Pereira's deposition that ADPM would afford Noresco additional time with Mr. Benoit – so as to allow Noresco more than ample time for its selected areas of 30(b)(6) inquiry.

Noresco had nearly <u>two months</u> to prepare for the subsequent 30(b)(6) deposition of David Benoit. Mr. Benoit's Rule 30(b)(6) deposition went forward on July 25, 2008. Noresco does not seek to depose Mr. Pereira once again, instead they seek to depose David Benoit, because he was designated with respect to the issues which are the substance of this dispute – monetary claims and delays. There are about sixty-five (65) hotly contested monetary claims that total roughly $1.5 million. Each of these sixty-five (65) line item claims is called a "Deviation" and is assigned a distinct tracking number. Noresco's counsel spent about half the deposition of Mr. Benoit, measured in pages of questioning, inquiring about specific Deviations.

Noresco now claims that this is a dispute spanning five years and a complex matter that justifies expanding the limitations of discovery, specifically it desires to have a third seven hour day of Rule 30(b)(6) inquiry. Oddly enough, when ADPM made this

same argument in its Motion to Extend the Deadline for Expert Witness Disclosures, Noresco argued in opposition that "These same claims were also asserted by ADP in cases filed in the Superior Court of Providence County beginning in 2004" and "ADP had more than ample time and opportunity to take any discovery." In sum, Noresco took the position in February 2008, that ADPM should have had the retained knowledge necessary to understand the disputes between the parties. We think this retained knowledge argument is equally applicable to Noresco who was the general contractor upstream from ADPM, who managed ADPM's work, received all of ADPM's requests for money, the same requests being pursued here.

It is specious for Noresco to argue that the parties are treading new ground with respect to the numerous Deviations in dispute. The same Deviations currently in dispute were all submitted prior to ADPM leaving the job in 2004. Noresco and ADPM went back and forth in numerous detailed reviews pre and post 2004 in an attempt to resolve these Deviations. ADPM's reproduction of this information in 2008 and its refinement of its claims *downward* has not added any level of complexity to this matter.

As to the Deviations that Noresco argues unnecessarily consumed Rule 30(b)(6) deposition time with Mr. Benoit, the first Deviation which Noresco made inquiry with respect to is Deviation #24. However, during Mr. Pereira's deposition, counsel to ADPM stipulated that if Deviations #24 and #186 were rolled up into #498, which they appeared to be, they are not being claimed separately. See Depo of Pereira at P. 172:6. During Mr. Benoit's deposition, in addition to ADPM's counsel noting that it was previously stipulated that Deviations #24 and #186 were rolled into #498, Mr. Benoit succinctly stated at P. 91:16 of his deposition that "it's ADP Marshall's position that two of these

are included in the third." Noresco's reliance upon a assertion that ADPM's failure to supplement its damages disclosure cost Noresco a material amount of time in the deposition of Mr. Benoit is unfounded.

Lastly, Noresco argues that ADPM's damages disclosures have "materially" changed twice following the Rule 30(b)(6) deposition. This is a great exaggeration by Noresco. ADPM's original damages disclosure totaled $2,874,919. ADPM's Second Amended Rule 26(a)(1)(C) Disclosure totaled $2,670,582. See Exhibit C hereto. Of the $204,337 *reduction* in ADPM's claim, $114,215 was attributable to the previously discussed roll up of Deviation #24 and #186 into #498. This was known to Noresco prior to Mr. Pereira's Rule 30(b)(6) deposition and confirmed at same by stipulation. The only other significant reduction was ADPM's dropping of its subcontractor's delay claim, that of Arden Engineering, which totaled $73,220. This was resolved in one question during Mr. Benoit's deposition at Page 180 wherein he was asked, "Is it still ADPM's position that it is then entitled to recovery of those amounts from Noresco?" – to which Mr. Benoit responded, "No. It's my position that this is one of them that ADPM should be withdrawing. Noresco's counsel went on to ask ADPM's Rule 30(b)(6) designee, "So ADP Marshall is not pursing this particular deviation in this litigation?" wherein Mr. Benoit responded, "That's correct." The dropping of this Deviation is a non-issue and is not justification for an additional seven (7) hours of questioning of Mr. Benoit.

Additionally, ADPM dropped Deviation #490 in the amount of $720 and #556 in the amount of $16,201, learning that it was duplicative of #544, which is still being pursued. The minor adjustments to ADPM's damages disclosures did not cause any

prejudice to Noresco and are not justification for an additional day of questioning of ADPM's Rule 30(b)(6) designee.

In sum, Noresco has now spent fourteen (14) hours deposing ADPM's 30(b)(6) witnesses – twice that allowed under the applicable rules. Noresco now wants yet another seven (7) hours to cover areas which it has had more than ample time to address. The imposition of this additional time imposes a substantial burden on ADPM for Noresco's inability to manage its time judiciously during the prior depositions and should not be allowed.

WHEREFORE, the Plaintiff, ADP Marshall, Inc., hereby moves this Honorable Court to deny Defendant's motion to compel.

Respectfully submitted,

Andrew J. Tine (RI Bar # 6756)
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Floor
Bristol, RI 02809
(401) 396-9002 – Tel.
(401) 396-9479 - Fax

**CERTIFICATE OF SERVICE/FILING**

I, Andrew J. Tine, hereby certify that a true and correct copy of the foregoing has been filed via the Court's electronic filing system on this 10 day of September, 2008:

LAW OFFICES OF
ANDREW J. TINE
ATTORNEY AT LAW

Via US Mail

September 3, 2008

Matt Sgro, Esq.
Cheryl Pinarchick, Esq.
Brian Lamoureux, Esq.
Brown Rudnick
One Financial Center
Boston, MA 02111

Re: ADP Marshall, Inc. n/k/a Fluor NE, Inc. v. NORESCO, LLC et al.

Dear Counsel:

This letter responds to your request for ADP Marshall, Inc.'s written document retention policy. As you learned during David Benoit's deposition, the most senior person at ADP Marshall's Rumford, RI office during the relevant time period, **he was unaware of any written ADP Marshall or Fluor NE document retention policy**. See Exhibit A hereto. David Pereira testified that "Fluor" has a document retention policy and that he was not sure if ADP Marshall/Fluor NE was ever required to comply with same. David Pereira went on to indicate that he thought ADP Marshall had its own document retention policy and that the policy was generally to print out hard copies, incorporate same into the file and to store them in permanent storage. I have not located, nor been advised of a written ADP Marshall document retention policy. David Pereira indicated that in April 2007 operations were ceased in Rumford, RI and Fluor commenced aligning the record retention policies of ADP Marshall with Fluor. You should know that prior to the closure of the RI office, I took control of the records in storage in Pawtucket and subsequently transferred same to Barrington.

From David Benoit's and David Pereira's testimony there is no indication of the applicability of Fluor's document retention policies to this ADP Marshall/Fluor NE project. Even though the Fluor document retention policies are inapplicable to this project and this dispute, I am producing the Fluor policies, which should be treated as confidential materials and only disseminated within the confines of the protective order.

Very truly yours,

Andrew J. Tine

Ex. A

Enc.

251 THAMES STREET - BRISTOL, RHODE ISLAND 02809 - 401.396.9002 FAX 401.396.9479
484 MAIN STREET - WORCESTER, MASSACHUSETTS 01608 - 508.799.7400
DIRECT CORRESPONDENCE TO RHODE ISLAND ADDRESS

LICENSED - MASSACHUSETTS AND RHODE ISLAND

Q. Tell me what your understanding of that language in that contract are no damages for delay clauses.
A. Well, under section 12 there are multiple sections, but a portion of it says that the subcontractor agrees that they will have no claim for damages in the event that they are delayed, whether the delay is caused by the owner, the architect or otherwise.
Q. Is Deviation 500 a deviation for delay that was submitted to ADP Marshall by Arden and then passed through to Noresco?
A. I wouldn't characterize it necessarily as a delay claim. They are not asking for extended general conditions. What they are saying is that their work was pushed into a period of time that they didn't contemplate in performing that work, and in that period of time they experienced escalation costs for labor rates, and they believe that that escalation cost is a scope change to their original bid, and I agree with that.
Q. So you agree that the no damages for delay clause set forth in your contract with Arden would not preclude Arden from recovering against ADP Marshall for escalations and costs due to the fact that they had to do work beyond their anticipated schedule



date? I don't understand how that's not a delay claim.
A. I think it's different. I understand the argument, the defense to this change order based on a no damage for delay claim, but I don't necessarily agree or believe that it completely survives and voids this claim or this request for compensation. Arden is not saying, My project managers were out there longer, My trailer was out there longer, I spent more for telephone. What Arden is saying is, I had an impact cost because I had an escalation due to union wage rates increasing. You changed my scope. My scope was to perform this work within a certain period of time contemplated in the contract schedules. You now move me outside of that, and because I have this escalation cost I'm entitled to compensation. I'm not asking you because my project has been out there longer. I think there is a difference.
Q. Did ADP ever take the position that Arden -- that it was not entitled to a change order based on the no damages for delay provision of its contract?
A. Not that I saw in the records I reviewed.
Q. So as you sit here today based on what you reviewed



you didn't come across any indication that they took that position with Arden, correct?
A. Not in the records I reviewed, no.
Q. Did you review correspondence between ADP and Arden in connection with your review of documents in this case?
A. Some, but I wasn't going -- I didn't go through files looking for all Arden versus ADP correspondence.
Q. Did you review the documents that were produced by Noresco in this case?
A. I may have looked at some. I didn't -- I don't remember looking at a majority of documents that were isolated, so-called produced by Noresco.
Q. Do you recall looking at documents that had a Bates stamp on the bottom that started with Noresco?
A. Some, yes.
Q. Which ones?
A. Off the top of my head I don't recall.
Q. Do you recall was a couple of boxes of Noresco stuff, was it a document here or there; do you call?
A. It was a document here or there. I didn't sit down and review boxes of documents.
Q. So would you say that you haven't reviewed the



majority of Noresco's document production?
A. I would say yes to that, not knowing what they produced, but assuming what they may have produced, I would say yes to that.
Q. Let's pick a time period. From January 1, 2001 until the time that you left Fluor, did the entity or entities that were responsible for this project, either ADP Marshall or if at some point it became Fluor New England, Inc., have a document retention policy that you are aware of?
A. I do not know of any ADPM or Fluor -- I think it was Northeast, not New England. The NE stood for Northeast -- having a specific document retention policy.
Q. Was there any type of procedure that was used by persons who worked on this particular project with respect to maintaining or saving their project files that you are aware of?
A. A specific written procedure? Not that I'm aware of.
Q. Did you have any files related to this project?
A. Not necessarily personal files, but my department would have had a copy of the contract, a copy of the insurance, I think. Once it got into litigation.



Ex. A

LAW OFFICES OF
ANDREW J. TINE
ATTORNEY AT LAW

Via Email and US Mail

September 2, 2008

Matt Sgro, Esq.
Cheryl Pinarchick, Esq.
Brian Lamoureux, Esq.
Brown Rudnick
One Financial Center
Boston, MA 02111

Re: ADP Marshall, Inc. n/k/a Fluor NE, Inc. v. NORESCO, LLC et al.

Dear Counsel:

You have moved to compel ADP Marshall, Inc. ("ADPM") to provide the last known addresses of a number of individuals identified in its initial disclosures. On May 21, 2008, the last known addresses of Ed McNaught, Kris Salamon, Jim Maguire and Michael Amalfitano were provided. The only other individuals that you specifically followed up on to request addresses were Richard Lindsay and Art Caron. I provided you with Richard Lindsay's work address and informed you that Richard Lindsay would be made available for deposition in South Carolina, his place of residency, without the need for a subpoena. I failed to provide you with Art Caron's address and I apologize. As follows are the last known addresses and phone numbers for former Fluor and/or ADPM personnel identified in ADPM's initial disclosures.

1. S. James Busam
   2 Karen Ann Drive
   Smithfield, RI 02917
   401-232-5716

2. Brian Metcalf
   HC 63 Box 39
   Eufaula, OK 74432
   918-689-5955

3. Janice Narowski
   11 South Cedar St
   Milford, MA 01757
   860-302-8032

Ex. B

251 THAMES STREET - BRISTOL, RHODE ISLAND 02809 - 401.396.9002 FAX 401.396.9479
484 MAIN STREET - WORCESTER, MASSACHUSETTS 01608 - 508.799.7400
DIRECT CORRESPONDENCE TO RHODE ISLAND ADDRESS
LICENSED - MASSACHUSETTS AND RHODE ISLAND

4. John Pignataro
30 Parkside Dr.
West Greenwich, RI 02817
401-397-9102

5. Art Caron
15 Mawney Brook Rd
East Greenwich, RI 02818
401-886-0883

Very truly yours,

Andrew J. Tine

Enc.

Ex. B

**Via Email Without Attachments/Hand Delivery with Attachments on May 22, 2008**

May 21, 2008

Matt Sgro, Esq.
Brown Rudnick
One Financial Center
Boston, MA 02111

Re: ADP Marshall, Inc. v. NORESCO, et al.

Dear Matt:

This letter responds in part to your letter of May 19, 2008. I hope to respond to the balance of the other issues raised in your letter by your deadline of May 23, 2008, but such may run into early next week.

The protective order as modified, motion and memorandum are acceptable to me and may be filed.

Steven Bosland is at 80 Valentine Road, Northborough and a subpoena has issued for his deposition on June 11, 2008.

David Pereira is ADP Marshall, Inc.'s 30(b)6 designee. I have not had the opportunity to thoroughly test his knowledge on the numerous subjects you seek a 30(b)6 deponent with knowledge. Hopefully such can be accomplished by early next week, however, such will not change his designation since as you know there are no personnel currently employed by ADP Marshall, Inc. with in-depth knowledge of this project.

As to a review of the employee personnel files, such was requested and the information as follows was derived from same. The respective employees reasons for leaving are as noted. The project records seem to set forth Ed McNaught's tenor on the project, as NORESCO duly documented same. None of these employees were discharged for performance reasons. They all left on their own accord. No performance evaluations have been located with respect to this project.

Ex. B

1. Ed McNaught - Separated 3-6-04 Voluntary (Seek/Accept other Employment)
266 Waseca Ave
Barrington, RI 02806

2. Kris Salamon - Separated 4-3-04 Voluntary (Seek/Accept other Employment)
8 Winter Street
Taunton, MA 02780

3. Jim Maguire - Separated 12-27-03 Voluntary (Personal Reasons)
164 Beechwood Dr.
Cranston, RI 02921

4. Michael Amalfitano - Separated 8-13-05 Voluntary (Seek/Accept other Employment)
717 Chopmist Hill Rd
North Scituate, RI 02857

As to electronic files, I questioned Ed McNaught on this topic. He indicated that he used a computer on the project and did not know where the computer ended up. Mr. McNaught further indicated to me that the practice was to print project related emails and other documents and file same accordingly. I note that the project files contain numerous emails throughout. Separately, I was able to obtain a copy of electronic files which appear to be Mr. McNaught's and/or other project manager's electronic files for the project. A CD is provided herewith with those electronic files as part of ADP Marshall's supplemental production.

As to hard copy documents, an additional box of financial related documents are being produced. You may review same at Anoka Avenue tomorrow and/or schedule a subsequent date to review and/or copy same.

As to a document retention policy, since this project was never formerly closed, the project records never entered the usual document storage retention stream, instead the project records were boxed in Pawtucket and stored in Pawtucket, prior to transfer to my office and/or back to Anoka Avenue. The document retention policy is inapplicable in this unusual set of circumstances.

Ex. B

We intend on supplementing answers to interrogatories and hope to do so prior to May 30, 2008. On this same note, I have not received a response to or supplemental answers to discovery as sought in my February 22, 2008 letter to you. I again request same in advance of tomorrow's deposition.

Lastly, on the topic of insurance, attached hereto are records obtained from Marsh relevant to payments made by ADP Marshall, Inc. for extended insurance.

Sincerely,

Andrew J. Tine

Enc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ADP MARSHALL, INC., a division of Fluor NE, Inc.,
Plaintiff,

v.

NORESCO, LLC and LUMBERMEN'S MUTUAL CASUALTY COMPANY,
Defendants.

C.A. No.: 07-129-ML

**PLAINTIFF'S SECOND AMENDED RULE 26(a)(1)(C) DISCLOSURES**

NOW COMES the Plaintiff, ADP Marshall, Inc., and makes its F.R.C.P. 26(a)(1)(C) disclosures. Attached hereto as Exhibit A is a computation of the damages claimed by Plaintiff, based upon the information available to it as of this date, for the claims asserted by way of its Complaint. Plaintiff reserves its right to supplement these disclosures in accordance with F.R.C.P. 26(e). The backup documentation to support these claims was previously furnished to Defendant NORESCO, LLC during the normal course of the construction project. Further, said backup documentation has been made available for inspection and copying throughout this litigation pursuant to F.R.C.P. 26 and 34.

Plaintiff,
By its attorneys,

Andrew J. Tine (#6756)
Law Offices of Andrew J. Tine
251 Thames Street, 2nd Floor
Bristol, RI 02809
(401) 396-9002 – Tel.
(401) 396-9479 - Fax



Ex C

# CERTIFICATE OF SERVICE

I, Andrew J. Tine, hereby certify that on August 25, 2008 a copy of the foregoing was served by email and mail on Matt Sgro, Brian J. Lamoureux and Cheryl Pinarchick, Brown Rudnick, One Financial Center, Boston, MA 02111.



Ex. C

**Computation of Damages**

| | | |
|---|---|---|
| Contract Value | | $13,479,024.00 |
| Change Order 6 | | $130,110.00 |
| Change Order 7 | | $34,122.00 |
| Open Deviations | | $1,442,877.00 |
| Time Extension and GC's Pursuant to Dev.#378 | | Not Yet Quantified |
| Paid | | -$12,415,451.00 |
| Total | | $2,670,682.00 |
| Interest | (@12%) | To Be Determined |
| Legal Fees | | Accruing |

**Listing of Open Deviations**

| Deviation # | Amount | Withdrawn Deviation # | Amount | Reason |
|---|---|---|---|---|
| | | 24 | $21,579.00 | Rolled into Dev. #498 |
| 32 | $8,400.00 | | | |
| 37 | $22,900.00 | | | |
| 44 | $50,014.00 | | | |
| 81 | $21,608.00 | | | |
| 97 | $13,643.00 | | | |
| 106 | $15,861.00 | | | |
| 147 | $1,072.00 | | | |
| 152 | -$829.00 | | | |
| 160 | $132,122.00 | | | |
| 161 | $373,607.00 | | | |
| 173 | $18,541.00 | | | |
| | $0.00 | 186 | $92,635.00 | Rolled into Dev. #498 |
| 191 | $13,529.00 | | | |
| 201 | $1,271.00 | | | |
| 227 | $3,961.00 | | | |
| 246 | $1,980.00 | | | |
| 247 | $8,599.00 | | | |
| 269 | $1,543.00 | | | |
| 273 | $30,410.00 | | | |
| 336 | $48,156.00 | | | |
| 349 | $11,884.00 | | | |
| 351 | $37,592.00 | | | |
| 361 | $2,327.00 | | | |
| 382 | $16,286.00 | | | |
| 391 | $2,611.00 | | | |
| 398 | $48,153.00 | | | |
| 400 | $18,401.00 | | | |
| 407 | $794.00 | | | |
| 409 | $4,307.00 | | | |
| 420 | $5,207.00 | | | |
| 422 | $7,900.00 | | | |
| 429 | $3,112.00 | | | |
| 439 | $700.00 | | | |
| 444 | $24,357.00 | | | |
| 445 | $7,290.00 | | | |
| 461 | $90,274.00 | | | |
| 462 | $2,900.00 | | | |
| 465 | $121,603.00 | | | |
| 468 | $3,028.00 | | | |
| 472 | $5,560.00 | | | |
| 474 | $5,684.00 | | | |
| 482 | $2,359.00 | | | |
| 483 | $8,649.00 | | | |
| | $0.00 | 490 | $720.00 | Converted to LOA |
| 496 | $7,644.00 | | | |
| 498 | $123,060.00 | | | |
| 499 | $25,747.00 | | | |
| 500 | $27,344.00 | | | |
| 501 | $19,488.00 | | | |
| | $0.00 | 504 | $73,220.00 | Not being pursued |
| 507 | $7,840.00 | | | |
| 512 | $8,526.00 | | | |
| 530 | $6,614.00 | | | |
| 532 | $3,343.00 | | | |
| 536 | $88,400.00 | | | |
| 544 | $7,981.00 | | | |
| 545 | -$10,400.00 | | | |
| 546 | -$104,000.00 | | | |
| 547 | -$26,749.00 | | | |
| 548 | -$2,080.00 | | | |
| 551 | $56,160.00 | | | |
| 552 | $1,547.00 | | | |
| 554 | $4,383.00 | | | |
| 555 | $2,643.00 | | | |
| | $0.00 | 556 | $16,201.00 | Duplicate of 544 |
| | $1,442,877.00 | | | |

Ex. C