UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADP MARSHALL, INC., n/k/a Fluor NE, Inc., <br><br>    Plaintiff/Counterclaim-Defendant,<br>v.<br><br>NORESCO, LLC and LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>    Defendants/Counterclaim-Plaintiffs/<br>    Third-Party Plaintiffs,<br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>    Third-Party Defendants. | C.A. No. 07-129-ML |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE PURSUANT TO FED. R. CIV. P. 37 TO EXCLUDE EXPERT OPINION TESTIMONY OF DAVID BENOIT AND EDWARD MCNAUGHT**

Defendants, NORESCO, LLC ("Noresco") and Lumbermens Mutual Casualty Company ("Lumbermens") (collectively, "Defendants"), hereby submit this Memorandum of Law in support of their Motion *in Limine* to Exclude Expert Opinion Testimony of two of Plaintiff's witnesses, David Benoit ("Benoit") and Edward McNaught ("McNaught").

**I.    Introduction**

Since at least 2003, when the facts giving rise to this lawsuit first emerged, both parties have known that the central issue in the case is the scope of the Plaintiff's obligations under a March 22, 2002 fixed price contract for the performance of certain work on the Pastore Center cogeneration power plant in Cranston, Rhode Island. Plaintiff agreed to the fixed price contract

even though it was aware that the design drawings for the project were only 75% complete. Plaintiff further agreed that its contracted scope of work included all items to be depicted on the final drawings, except to the extent the final design materially differed from the design documents. Consistent with the core issue in the case and the deadlines for expert disclosure mandated by the prevailing rules of civil procedure and this Court's prior orders, Defendants sought, retained, disclosed and produced for deposition an expert on the proper scope of work under the agreement.[1] Curiously, Plaintiff did not. Perhaps realizing its omission, on June 18, 2009, some fourteen (14) months after the Court-imposed deadline for expert witness disclosure and nine (9) months after close of discovery, Plaintiff disclosed and designated for the first time both Benoit and McNaught as "expert" witnesses for the September 2009 trial of this case.

Plaintiff has no legitimate excuse for these eleventh hour disclosures as it has been aware of the central issues in this case <u>for years</u>. Furthermore, Defendants are substantially prejudiced by Plaintiff's belated attempt to designate and disclose experts on the eve of trial. Accordingly, these two witnesses should be precluded from offering expert opinions at trial in accordance with Fed. R. Civ. P. 37(c).

II. **Background**

This is a construction dispute involving a cogeneration power plant located at the Pastore Center in Cranston, Rhode Island (the "Project"). Noresco contracted with the State of Rhode Island Department of Mental Health, Retardation and Hospitals (the "State") for the Project in 2000.[2] The Plaintiff, ADP Marshall, Inc., n/k/a Fluor NE, Inc. ("Fluor"), acted as Noresco's general contractor/construction manager for the Project under a fixed-price agreement dated

---

[1] Defendants' expert on this and other issues is Bradford Bright.
[2] Lumbermens was Noresco's surety on the Project.

2

March 22, 2002 (the "Agreement"). The Agreement required Fluor to perform the scope of work defined therein for a fixed priced of $12,365,105.

During the course of construction on the Project Fluor submitted hundreds of change order requests, or "deviations,"[3] for work items Fluor claimed were beyond its contractual scope of work under the Agreement. Noresco properly refused to issue change orders for work Fluor was already contractually obligated to perform under the Agreement. Despite directing its subcontractors to perform the very work Fluor maintained was outside its scope of work under the Agreement, Fluor refused to pay its subcontractors for that work[4] The propriety of approximately 60 change orders are at the core of this lawsuit, and the central question in this dispute is and has been, for years, whether the work reflected on these change orders was in the original scope of the contract under the Agreement.

On September 10, 2007, this Court issued a Pretrial Order providing that "Plaintiff shall make its expert witness disclosures as required by F.R.Civ.P. 26(a)(2) by March 3, 2008." See Exhibit 1, Pretrial Order, Docket Entry No. 17. Upon a motion by Fluor, the Court extended the date for Plaintiff's expert witness disclosures to April 3, 2008. See Exhibit 2, Court's Order Dated February 27, 2008, Docket Entry No. 41. On that date, Fluor produced an expert report from Douglas F. Coppi of Coppi & Associates LLP. In accordance with the Pretrial Order, on May 5, 2008[5] the Defendants served their expert report on the Plaintiff, responding to Plaintiff's expert report. Plaintiff then served a rebuttal expert report on June 13, 2008. In September 2009, the Plaintiff deposed the Defendants' experts and the Defendants deposed the only expert

---

[3] Fluor refers to change order requests as "deviations." Accordingly, the term "deviation" has been used by the parties throughout this litigation and will be used herein.

[4] Beginning in the spring of 2004, many of Fluor's subcontractors filed actions against Noresco and/or Lumbermens in Rhode Island Superior Court as a result of Fluor's refusal to pay them for their work. Fluor filed counterclaims against the Defendants in all but one of those cases. Between 2005 and 2007, Noresco settled all of these subcontractor actions, paying Fluor's subcontractors a total of $840,000.

[5] Pursuant to Federal Rule of Civil Procedure 26(e), the Defendants supplemented their expert report on May 8, 2008 and May 13, 2009.

witness who had then been designated by the Plaintiff, Douglas Coppi. Discovery closed on September 15, 2008, and this case is set for trial beginning September 21, 2009. Defendants' expert disclosure and report addressed, among other issues, the scope of work under the Agreement. None of Plaintiff's disclosures or expert reports even addressed these issues.

Now, on June 18, 2009, fourteen months after the deadline for designating experts, nine months after the close of discovery, and approximately 90 days before trial, Fluor has identified Benoit and McNaught as "witnesses [who] may be used to present evidence under Rule 702, 703, and 705." See Exhibit 3, Plaintiff's Rule 26(a)(2)(A) Disclosures. A footnote to the disclosure further provides that Fluor "believes [Benoit and McNaught's] testimony is that of fact witnesses." See Exhibit 3, fn.1. Although the disclosure does not explain the nature and basis of Benoit and McNaught's opinion testimony, it is believed that Plaintiff will attempt to offer their opinions on the proper scope of work under the Agreement ("Deviation Testimony"). Given that there have been no prior designations or disclosures with respect to McNaught or Benoit, such an attempt is completely improper and should be disallowed.

**III.    Argument**

    A.    <u>Exclusion of All Opinion Testimony by Benoit and McNaught is the Appropriate Sanction for Fluor's Untimely Expert Designation.</u>

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." In accordance with Rule 37(c)(1), Benoit and McNaught should be precluded from offering expert testimony at trial.

"Since an important object of [the Rules of Civil Procedure] is to avoid trial by ambush, the district court typically sets temporal parameters for the production of [Rule 26 disclosures]."

4

Macauley v. Anas, 321 F.3d 45, 50 (1st Cir. 2003). Here, the Court set a clear deadline of April 3, 2008 for Fluor's expert disclosures. Fluor's designation of Benoit and McNaught as experts came more than fourteen months later, after the Court set a firm trial date. When faced with this type of failure to comply with the Court's deadlines, "the district court has the authority to impose a condign sanction (including the authority to preclude late-disclosed expert testimony)." Id., quoting Thibeault v. Square D Co., 960 F.2d 239, 245 (1st Cir. 1992). See also, Compania Administradora de Recuperacion de Activos de Fondos de Inversion Sociedad Anonima v. Titan Int'l Inc., 533 F.3d 555, 561 (7th Cir. 2008) ("Because [defendant] failed to disclose [witness] as an expert witness prior to the disclosure deadline, the district court did not abuse its discretion when it excluded his testimony."); Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este, et al, 456 F.3d 272 (1st Cir. 2006) (excluding expert witness testimony that was disclosed approximately one year late); Peterson v. Scotia Prince Cruise, Ltd., 222 F.R.D. 216, 217-218 (D. Me. 2004) (excluding expert testimony from a witness who was timely identified as a fact witness, but who was not disclosed as an expert until three months before trial); St. Joseph Hosp. v. INA Underwriters Ins. Co., 117 F.R.D. 19, 20-24 (D. Me. 1987) (refusing to allow expert trial testimony from a fact witness who was designated five months late, despite the fact that a month remained before discovery closed).

In determining whether exclusion of untimely disclosed expert testimony is the appropriate sanction, courts examine a number of factors, including "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosures, and the opponent's ability to overcome its adverse effects." Macauley, 321 F.3d at 51, citing Thibeault, 960 F.2d at 244; Johnson v. H.K. Webster, Inc., 775 F.2d 1, 7-8 & n.7 (1st Cir. 1985). Important considerations include surprise and prejudice, as well as "an assessment of

what the late disclosure portends for the court's docket." Id. All of these factors weigh heavily in favor of precluding Benoit and McNaught from offering expert Deviation Testimony at trial.

Fluor filed this action in April 2007, more than three years after first filing claims against the Defendants in Rhode Island state court. See Footnote 4 above. Fluor has known about the issues on contractual scope for years. Fluor first identified Benoit and McNaught as fact witnesses in its Initial Disclosures on July 27, 2007 – nearly two years ago. More than eight months later, the Court's April 3, 2008 expert designation deadline passed without Fluor identifying Benoit and McNaught as experts. Now, fourteen months after the Court's expert disclosure deadline, more than nine months after the close of discovery, and scarcely 90 days before trial, Fluor proposes to offer expert opinions through these witnesses. There is no justification for this untimely disclosure, nor has Fluor attempted to offer one.

Moreover, the Defendants conducted all of its discovery, including the depositions of McNaught and Benoit (as Fluor's Rule 30(b)(6) designee on damages) without the benefit of knowing that either of these witnesses would offer expert opinions, and the Defendants' duly-designated expert witnesses performed a full analysis of the disputed deviations without any hint that Benoit and McNaught would offer countering opinions on that subject. If Fluor had timely designated Benoit and McNaught as experts, it would have been required to disclose to the Defendants, *inter alia*, a complete statement of all opinions Benoit and McNaught will express and the basis and reasons for them, the data or other information considered in forming the opinions, and any exhibits that will be used to summarize or support them. See Fed. R. Civ. P. 26(a)(2)(B). None of this information was provided to the Defendants either in the form of an expert disclosure under Rule 26(a)(2)(B) or in response to Noresco's expert interrogatories which were served on the Plaintiff on October 10, 2007. As a result, the Defendants do not

know what expert opinions Benoit and McNaught intend to offer at trial, nor have the Defendants had an opportunity to fully test the basis of whatever those opinions might be through discovery and Benoit and McNaught should be precluded from offering opinion testimony. See, Storage Tech. Corp. v. Custom Hardware Eng'g Consulting, Ltd., 2006 U.S. Dist. LEXIS 43690, *115-116 (D. Mass., June 28, 2006) (requiring a party's employee who would be offering expert opinions to produce an expert report because "to require employee experts to provide written reports 'is entirely within the spirit of [Rule 26(a)(2)(B)],' since it 'will undoubtedly serve to minimize the elements of surprise.'" Quoting 3M v. Signtech USA, 177 F.R.D. 459, 461 (D. Minn. 1998)); see also, Thibeault, 960 F.2d at 244 (noting that disclosure of expert opinions during discovery "is consonant with the federal courts' desire to 'make a trial less a game of blindman's buff [sic] and more of a fair contest with the basis issues and facts disclosed to the fullest practical extent.'" Quoting United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958)). See also, Blue Coast, Inc. v. Suarez Corp. Indust., 870 A.2d 997, 1007 (R.I. 2005) ("failure to notify an opposing party of the identity of an expert pursuant to a properly phrased interrogatory propounded in reliance upon Rule 26(b)(4)(A) may bar the expert from testifying at trial.") (citations omitted).

The prejudice to the Defendants of allowing these surprise experts to offer Deviation Testimony at trial far outweighs any importance their testimony may have for Fluor. Additionally, the Court recently scheduled this case for trial in late-September of this year. The Defendants cannot overcome the adverse effects of Fluor's late expert disclosures without re-opening discovery and postponing the trial. Fluor should not be permitted to further delay the final adjudication of the parties' long-standing disputes.

      B.      Fluor Cannot Avoid Its Obligations Under Fed. R. Civ. P. 26(a)(2) by Identifying Alleged Experts as Fact Witnesses.

Both Benoit and McNaught were identified by Fluor as fact witnesses from the outset of this action. It is abundantly clear, however, that Fluor intends to offer testimony "based upon their special skill sets or knowledge." See Exhibit 3, fn.1. This testimony falls squarely outside the plain language of Fed. R. Evid. 701, which permits lay witness opinion testimony only if, *inter alia*, that testimony is "*not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added). Rule 701 was amended in 2000 to add Section (c) to ensure "that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26…by simply calling an expert witness in the guise of a layperson." See Fed. R. Evid. 701, official commentary to 2000 Amendments; see also, e.g., Hirst v. Inverness Hotel Corp., 544 F.3d 221, 227 (3d Cir. 2008) (opinion testimony necessarily depended on technical or specialized knowledge of various security measures, and thus lay person could not provide such opinion testimony under Rule 701, and was barred from offering such testimony as an expert under Rule 702 because defendant failed to disclose him as an expert); U.S. v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997) (lay opinion testimony on subject requiring specialized knowledge not permitted where it would allow subversion of the disclosures required by expert witnesses); Storage Tech. Corp, 2006 U.S. Dist. LEXIS 43690, *116-117 (holding that expert testimony "should not 'evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26' simply because the testimony is proffered through a fact witness." Quoting Fed. R. Evid. 701, Advisory Committee note (2000)).

"[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by an ordinary person." Lifewise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004) (citation omitted). Rule 701 "makes

8

clear that any part of a witness' testimony that is based on scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702." Fed. R. Evid. 701, advisory notes to 2000 Amendments. Here, the question of whether the disputed deviations fall in or out of the scope of the Agreement involves complex construction issues.[6] As Plaintiff concedes in its Motion to Exclude Testimony, opinions whether work falls in or out of the scope of the Agreement require specialized knowledge. See Plaintiff's Memorandum in Support of Its Motion to Exclude and/or in Limine as to Certain Expert Testimony of Noresco's Expert, Bradley [sic] Bright, Docket Entry No. 114, at 16 ("Mr. Bright…intends on opining as to what scopes of work ADP Marshall, Inc. should have anticipated were part of the design….This type of *expert inference* cannot be given by someone with Mr. Bright's lacking qualifications.") (emphasis added).[7] Given Plaintiff's concession that questions about the disputed deviations require specialized knowledge, Plaintiff should be precluded from ignoring its expert witness disclosure obligation through the guise of purported fact witnesses.

---

[6] Even if the anticipated Deviation Testimony did not require technical or specialized knowledge, which it does, David Benoit lacks the personal knowledge required to offer a lay opinion under Rule 701. With regard to opinion testimony arising out of documentary evidence, such testimony must come from some particularized knowledge of the information contained in the documents. See, e.g., Eichorn v. AT&T Corp., 484 F.3d 644, 650 (3d Cir. 2007) (lay witness opinion testimony on damages properly excluded where witness had no personal knowledge of underlying facts and lacked relevant experience); DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685-86 (5th Cir. 2003) (lay witness should have been precluded from offering opinion on lost profits derived from financial data where witness's opinion was not based on his own independent knowledge and observations). Benoit's anticipated Deviation Testimony is not based on his own perceptions, but rather his review of documents provided to him by Fluor for the express purpose of preparing him for his testimony in this case. Indeed, Benoit testified at deposition that he has no personal knowledge of the events or facts that give rise to any of the deviations in this case. Thus, based on his own deposition testimony, Benoit does "not have the requisite first-hand, personal knowledge about [the Project] necessary to qualify as a Rule 701 opinion witness." DIJO, Inc., 351 F.3d at 686.

[7] For all the reasons set forth in Defendants' Opposition to Fluor's motion in limine, Mr. Bright – who was timely designated as an expert as required by the Court – is eminently qualified to offer his opinions at trial. See Defendants' Opposition to Plaintiff's Motion to Exclude and/or Limit Certain Expert Testimony by Noresco's Expert, Bradford Bright, Docket Entry No. 115.

IV. **Conclusion**

During the more than two years this action was pending prior to June 18, 2009, Fluor failed to identify Benoit or McNaught as witnesses who would offer expert testimony at trial. Now, fourteen months after the Court's expert disclosure deadline, more than nine months after the close of discovery, and scarcely 90 days before trial, Fluor has disclosed that it intends to offer expert opinions through these witnesses, without ever making any of the requisite disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B). Fluor has no excuse for this untimely disclosure, and to allow either Benoit or McNaught to offer expert opinions at trial would unduly prejudice the Defendants. Accordingly, any opinions from these two witnesses should be precluded pursuant to Fed. R. Civ. P. 37(c).

NORESCO, LLC and LUMBERMENS
MUTUAL CASUALTY COMPANY,
By their Attorneys,

/s/ William M. Dolan III
William M. Dolan III (#4524)
wdolan@brownrudnick.com
**BROWN RUDNICK** LLP
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

Dated: July 8, 2009

*Pro Hac Vice*:
Cheryl B. Pinarchick
cpinarchick@brownrudnick.com
Matthew P. Sgro
msgro@brownrudnick.com
**BROWN RUDNICK** LLP
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

| | |
|---|---|
| Andrew J. Tine, Esq. | CharCretia V. DiBartolo, Esq. |
| atine@tinelaw.com | cdibartolo@hinshawlaw.com |
| Law Offices of Andrew J. Tine | Hinshaw & Culbertson LLP |
| 251 Thames Street, 2nd Fl. | One International Place |
| Bristol, RI  02809 | Boston, MA  02110 |

/s/ William M. Dolan III

# 1665939 v5 - 080908/0004