UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADP MARSHALL, INC., n/k/a Fluor NE, Inc., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> NORESCO, LLC and LUMBERMEN'S MUTUAL CASUALTY COMPANY, <br><br> Defendants/Counterclaim-Plaintiffs/ Third-Party Plaintiffs, <br><br> ST. PAUL FIRE AND MARINE INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, <br><br> Third-Party Defendants. | C.A. No.: 07-129 ML |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NORESCO, LLC'S MOTION IN LIMINE PURSUANT TO F.R.C.P. 37 TO EXCLUDE EXPERT OPINION TESTIMONY OF DAVID BENOIT AND EDWARD MCNAUGHT**

Now comes the Plaintiff, ADP Marshall, Inc. ("ADPM"), and submits this Response in Opposition to Noresco, LLC's ("NORESCO") Motion in Limine Pursuant to F.R.C.P. 37(c) to Exclude Expert Opinion Testimony of David Benoit and Edward McNaught.

This dispute involves issues surrounding the responsibility for delays experienced during the design and construction of a power plant in Cranston, RI. The dispute also involves issues concerning payment for work performed by ADPM, specifically, whether that work was compensable work outside the scope of ADPM's contract with NORESCO.

1

The most knowledgeable person to this dispute, from ADPM's perspective, is its former project manager, Edward McNaught. Edward McNaught has extensive personal knowledge concerning this project. The most knowledgeable person to this dispute, from NORESCO's perspective, is its current employee, Wade Carleton. Wade Carlton also has extensive personal knowledge concerning the project. Both individuals were designated as fact witnesses in the parties' initial disclosures. Neither Edward McNaught nor Wade Carleton were ever designated as expert witnesses pursuant to Rule 26(a)(2)(B). From ADPM's perspective, Edward McNaught was never designated as an expert witness because he is a former employee with personal knowledge as a fact witness and not "retained or specially employed to provide expert testimony." ADPM only assumes NORESCO drew the same conclusion with respect to Wade Carleton.

The Pretrial Order in this matter required ADPM to "make its **expert witness** disclosures as required by F.R.Civ.P. 26(a)(2) by March 3, 2008," with said deadline being extended to April 3, 2008. The only "expert witness" ADPM had retained under F.R.Civ.P. 26(a)(2) was Doug Coppi. As such, Doug Coppi was disclosed as APDM's only "expert witness" in accordance with F.R.Civ.P. 26(a)(2). A report prepared by Mr. Coppi was timely furnished in accordance with F.R.Civ.P. 26(a)(2)(B).

F.R.Civ.P. 26(a)(2)(A) concerns "persons," presumably fact witnesses, that are not specially retained expert witnesses, who may be used at trial to present evidence under Rules 702, 703, or 705. Since these "persons," are not "expert witnesses," ADPM did not understand a requirement, imposed by the Pretrial Order, to disclose Edward McNaught or any other fact witness as an expert witness. Again, Edward McNaught and David Benoit were not disclosed as

2

"expert witnesses" by April 3, 2008 simply because they are fact witnesses with particularized knowledge in the industry and they are not specially retained expert witnesses.

Given that Edward McNaught and David Benoit are not "expert witnesses," but instead fact witnesses with personal knowledge specific to ADPM's performance and entitlement, no expert report was required pursuant to F.R.Civ.P. 26(a)(2)(B). The only obligation imposed by rule was disclosure of their identities. ADPM disclosed these individuals as fact witnesses as part of its initial disclosures. Thereafter, pursuant to F.R.Civ.P. 26(a)(2)(A), they were identified as "persons who may be used at trial to present evidence under Rules 702, 703, or 705." This disclosure was made 90 days in advance of trial pursuant to F.R.Civ.P. 26(a)(2)(C).

The F.R.Civ.P. 26(a)(2)(C) disclosure was made even though ADPM believes the testimony of Edward McNaught and David Benoit is allowable under Rule 701 as fact witnesses.

> "Rule 701 permits a witness to testify to his opinion to the extent it is "rationally based" on his perceptions, helpful to clear understanding of the determination of facts in issue, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed.R.Evid. 701. The latter portion of the rule was added in a 2000 amendment to make clear that, if an opinion is based on such knowledge, it must meet the reliability requirements in Rule 702. The amendments to Rule 701 were designed to prevent the proponent of the witness from "proffering an expert in lay witness clothing." See Fed.R.Evid. 701 advisory committee notes.
> . . .
> It is not always easy to draw a clear distinction between lay and expert testimony. *United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir.2005); *Falconer v. Penn Mar., Inc.* 421 F.Supp.2d 190, 208 (D.Me.2006). By way of illustration, however, the advisory committee has offered a pertinent example: [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert . . . **Such opinion testimony** is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the *particularized knowledge that the witness has by virtue of his or her position in the business*. The amendment does not purport to change this analysis. Fed.R.Evid.701 advisory committee notes (emphasis added). The First Circuit recently noted that Rule 701 is "meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." *United States v. Maher*, 454 F.3d 13, 24 (1st

3

>Cir.2006); see also *Texas A & M Research Found. V. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir.2003) (Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert."); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir.2003) (affirming a decision of the district court to allow officers and employees of plaintiff corporation to give lay opinion testimony of the reasonableness of charges and time to complete repairs, due to their particularized knowledge garnered from years of experience within the field)." See *Downeast Ventures, Ltd. v. Washington County*, 450 F.Supp.2d 106, 109-111 (D Me.2006) (finding testimony on equipment valuation by a witness within a construction business responsible for buying and selling construction equipment is allowable lay expertise under Rule 701 because it is rationally based on his particularized knowledge relating to his position in the business).  See also, *Falconer v. Penn Maritime, Inc.*, 41 F.Supp.2d 190, 208 (D Me.2006) (finding engineer's experience in the engineering business allowed him to testify as to matters within his personal and particularized knowledge: engineering responsibilities and that such knowledge did not establish him an expert).

NORESCO claims that an expert report should have issued from David Benoit and Edward McNaught.  Since their testimony as fact witnesses falls squarely within matters within their personal and particularized knowledge, no expert report is required.  Mr. McNaught's job required him to track changes in scope, evaluate those changes, price those changes, and obtain payment from NORESCO for those changes.  Mr. McNaught was also involved with reviewing the schedules, editing the schedules, scheduling work activities, recognizing and evaluating work delays, and working and scheduling around said delays.  Mr. McNaught's anticipated testimony is based upon his personal knowledge and work experience.  Mr. Benoit will also testify from his personal involvement with issues relating to the project.  ADPM understands that Mr. Benoit was involved in insurance issues, subcontractor claims, bond claims and subcontractor close-out and payment issues.

The Eighth Circuit has allowed employees to offer lay opinion testimony, based on experience in the industry.  See *Wactor v. Spartan Trans. Corp.*, 27 F.3d 347, 350 (8th Cir.1994). Similarly, the Second Circuit has held that a witness with specialized knowledge is not precluded

from testifying pursuant to Rule 701, so long as the testimony was based on his work as an employee. See *Bank of China, New York Branch v. NBM, LLC*, 359 F. 3d 171, 181 (2nd Cir. 2004). The Court did note that opinions regarding "typical situations in the industry" that were not a product of his work were admissible pursuant to Rule 702 and not Rule 701. *Id*. at 182.

To the extent Mr. McNaught or Mr. Benoit's testimony crosses the fuzzy line between Rule 701 testimony and Rule 702, 703 or 705 testimony, both individuals have been disclosed 90 days in advance of trial as witnesses who may present Rule 702, 703 or 705 testimony. Since both Mr. McNaught and Mr. Benoit's testimony is derived from personal involvement in the project and work performed and opinions formed as part of their normal work activities, they are not "specially retained" experts and therefore no written expert report is required from them.

Further, with respect to determining if an expert report is required from a witness disclosed pursuant to Rule 26(a)(2)(A), the Sixth Circuit has considered when the opinions were actually formed. In *Fielden v. CSX Transp. Inc.*, 482 F.3d 866 (6th Cir.2007), the Court allowed a treating physician to testify as to causation where the physician was not retained for purposes of providing expert testimony and because the opinions were formed as to causation at the time that he treated the patient. In *Fielden*, no expert report was required under Rule 26(a)(2)(B).

If this Court finds that Mr. Benoit and Mr. McNaught cannot properly offer any opinions under Rule 701 and that they were untimely disclosed pursuant to Rule 26(a)(2)(A) as potential witnesses as to Rule 702, 703 or 705 evidence, the Court may consider sanctions under Fed.R.Civ.P. 37(c)(1).

"If a party fails to [timely] provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P.

37(c)(1). The court has "broad discretion" to determine whether an untimely disclosure is substantially justified or harmless. See, e.g., S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir.2003). In determining whether to exclude untimely expert disclosures, courts examine a number of factors, including "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosures, and the opponent's ability to overcome its adverse effects." Macauley v. Anas, 321 F.3d 45, 50 (1st Cir.2003), citing Thibeault, 960 F.2d at 244; John v H.K. Webster, Inc., 775 F.2d 1, 7-8 & N.7 (1st Cir.1985).

First, the timing of the disclosure pursuant to Rule 26(a)(2)(A) (90 days prior to trial), *if such is required in light of the testimony allowable pursuant to Rule 701*, is substantially justified because the Pretrial Order speaks to a deadline to disclose "Expert Witness" and not other witnesses who are not typically considered experts. As to whether NORESCO has suffered any harm as a result of the timing of the disclosure, the answer is clearly no.

NORESCO deposed Edward McNaught for a full 7 hours and David Benoit for a full 7 hours, and after seeking leave on the grounds that there was so much information concerning the disputed deviations (changes in scope) to be covered, for a subsequent full day. David Benoit was questioned for two full days on nearly every single claim asserted by ADPM. NORESCO is prepared to counter the testimony of these two witnesses with their own fact witness, Mr. Wade Carleton, and with two experts, that have seemingly adopted every opinion advanced by NORESCO during the project. NORESCO had its "experts" prepare a report countering every single claim advanced by ADPM during the project. There is no rock left unturned.

If NORESCO claims "surprise" as a result of ADPM's intention to call Edward McNaught as its primary witness and David Benoit as a secondary witness, as a sanction, ADPM

offers either of these witnesses for additional deposition questioning to cure the alleged surprise. The paperwork to back up every single one of ADPM's claims has been produced during discovery. Further, the parties have exchanged all anticipated exhibits, which includes this same information again, in an effort to agree on joint exhibits.

The evidence that ADPM seeks to admit through its fact witnesses is crucial to its case. Again, no expert report was produced because these witnesses are not Rule 26(a)(2)(B) retained experts, they are former employees who are most knowledgeable on the topics they will offer testimony. Even so, in addition to disclosing these witnesses as fact witnesses through ADPM's initial disclosures, both witnesses were designated as Rule 26(a)(2)(A) witnesses 90 days in advance of trial. See Exhibit A hereto.

If a sanction is imposed, ADPM requests that this Court follow the sanction imposed in Storage Tech. Corp. v. Custom Hardware Eng'g Consulting, Ltd, 2006 U.S. Dist. LEXIS 43690 (D. Mass, June 28, 2006) *cited* by NORESCO in its motion, wherein the Court required an expert report be provided within 20 days to the extent the witnesses' testimony will be based upon "scientific, technical, or other specialized knowledge." ADPM again maintains that this would be burdensome and not required by Rule 701 for a fact witness who is not a retained expert and who will testify from lay expertise. If such a sanction were imposed, ADPM may not be able to even comply with such an order because the fact witnesses are not employed by ADPM and they are not employees of litigation consulting firms, like NORESCO's experts.[1]

WHEREFORE, ADPM requests that this Honorable Court 1) deny NORESCO's motion in limine; 2) admit opinion testimony based on lay expertise under Rule 701, consistent with

---

[1] Edward McNaught is employed by Gilbane Building Company. David Benoit is now employed by his own company, Benco Services, a construction services related company.

7

*United States v. Maher*, 454 F.3d 13, 24 (1st Cir.2006) and the cases *supra*; and 3) find that the Rule 26(a)(2)(A) disclosure was timely and/or was substantially justified or harmless.

                                                  Respectfully submitted,

                                                  *Andrew J. Tine*
                                                  Andrew J. Tine (RI Bar # 6756)
                                                  Law Offices of Andrew J. Tine
                                                  251 Thames Street, 2nd Floor
                                                  Bristol, RI 02809
                                                  (401) 396-9002 - OFFICE
                                                  (401) 396-9479 – FACSIMILE

## **CERTIFICATE OF SERVICE/FILING**

      I, Andrew J. Tine, hereby certify that a true and correct copy of the foregoing was filed via the Court's electronic filing system on this 14th day of July, 2009.

                                                  Andrew J. Tine